Michael W. Malter (SBN 96522)
Julie H. Rome-Banks (SBN 142364)
Wendy W. Smith (SBN 133887)
Kristina A. Parson (SBN 257840)
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
Tel: (408) 295-1700
Fax: (408) 295-1531
Email: Michael@bindermalter.com
Email: Julie@bindermalter.com
Email: Wendy@bindermalter.com
Email: Kristina@bindermalter.com

Proposed Attorneys for Debtors and Debtors-in-Possession
PACIFIC STEEL CASTING COMPANY
and BERKELEY PROPERTIES, LLC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFONRIA, OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>PACIFIC STEEL CASTING COMPANY,<br>a California corporation,<br><br>Debtor. | Case No. 14-41045-RLE<br><br>Chapter 11<br><br>(Motion for Joint Administration Pending) |
| In re<br><br>BERKELEY PROPERTIES, LLC, a<br>California limited liability company,<br><br>Debtor. | Case No. 14-41048-WJL<br><br>Chapter 11<br><br>Date:<br>Time:<br>Courtroom |

## MOTION AUTHORIZING DEBTORS TO
## CONTINUE PRE-PETITION CASH MANAGEMENT PRACTICES

Pacific Steel Casting Company ("PSC"), the debtor-in-possession in the above-captioned bankruptcy case, moves for an order for an order authorizing PSC to continue its pre-petition cash management system, including the use of its existing bank accounts. This Cash Management Motion is based on the Memorandum of Points and Authorities set forth herein,

MOTION FOR ORDER AUTHORIZING DEBTORS TO CONTINUE PRE-PETITION CASH MANANAGEMENT PRACTICES

and is supported by the accompanying declaration of Charles Bridges Jr. By separate application, PSC requested a hearing on this matter on shortened notice to parties in interest. In support of the Cash Management Motion, PSC respectfully represents the following:

1. This Court has jurisdiction over this Chapter 11 case pursuant to 28 U.S.C. §§ 157 and 1334. This Motion constitutes a core proceedings under 28 U.S.C. §157(b) (2). Venue of this case is proper in this District under 28 U.S.C. §§ 1408 and 1409.

I. FACTUAL BACKGROUND

A. History

2. On March 10, 2014, Pacific Steel Casting Company (hereinafter "Debtor" or "PSC") filed a voluntary Chapter 11 case in the United States Bankruptcy Court for the Northern District of California and was assigned to the Honorable Roger L. Efremsky as case number 14-41045-RLE (the "PSC Bankruptcy Case"). No trustee has been appointed and PSC remains a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. On March 10, 2014, Berkeley Properties, LLC (hereinafter "BP") filed a voluntary petition under Chapter 11 in the United States Bankruptcy Court for the Northern District of California and was assigned to the Honorable William J. Lafferty as case number 14-41048-WJL (the "BP Bankruptcy Case"). No trustee has been appointed and BP remains a debtor-in-possession.

4. BP is a wholly owned subsidiary of PSC. The BP Bankruptcy Case was filed as a related case to the PSC Bankruptcy Case pursuant to BLR 1015-1. Notices of related cases were promptly filed in both bankruptcy cases on March 10, 2014 and a motion for joint administration has been filed. PSC and BP are collectively referred to as the "Debtors."

5. PSC is a fourth-generation family-owned steel foundry that manufactures carbon, low-alloy and stainless steel castings for U. S. and international customers. PSC operates three

MOTION FOR ORDER AUTHORIZING DEBTORS TO CONTINUE PRE-PETITION CASH MANANAGEMENT PRACTICES    Page 2

separate plants that are located on an eight-acre industrial complex located in Berkeley, California. Since its founding in 1934 at the end of the Great Depression, PSC has grown into one of the largest independent steel-casting companies in the U.S. PSC supplies numerous industries with a wide variety of castings which include oil and gas drilling equipment, heavy-duty truck parts, valves and fittings, and mining and construction equipment. PSC's plants incorporate some of the latest manufacturing technology, production capabilities and emissions controls. This has allowed PSC to remain competitive with domestic and international suppliers, and maintain compliance with environmental regulations. PSC presently employs 365 hourly employees and 45 salaried employees. The majority of the hourly employees are represented by the Glass, Molders, Potter, Plastics and Allied Workers International Union (the "Union"). PSC currently enjoys a good working relationship with the Union. The current collective bargaining agreement will not expire until 2015.

6. In early 2011, agents of the Immigration and Customs Enforcement, U.S. Department of Homeland Security (DHS) began an audit of Pacific Steel's Employment Eligibility Verification Forms (commonly known as I-9 Forms). The DHS audit resulted in PSC terminating nearly 200 of its front-line manufacturing employees. Many of the terminated employees immediately filed workers' compensation claims against the company, which resulted in a four-fold increase in the company's workers compensation insurance premium. PSC has worked diligently to replace the employees lost as a result of the DHS audit and train the new workers but the loss of such a significant numbers of experienced workers severely affected productivity. The DHS audit also precipitated the filing of a wage-and-hour class action lawsuit against PSC that required significant time and resources. The wage-and-hour class action lawsuit was settled in January, 2014 during mediation on the eve of trial. The company, however, was not in a financial position to immediately fund the settlement.

7. PSC has only one large secured creditor, Wells Fargo Bank, N.A. ("Wells Fargo"). Historically, Wells Fargo provided PSC with a line of credit to finance its day-to-day operations. Wells Fargo also provided a term loan secured on the Berkeley real estate owned by BP which loan was guaranteed by PSC and PSC's majority shareholder, Tri-Pacific, Inc. More recently, due to failure to meet certain performance covenants, Wells Fargo informed PSC that it would need to find an alternative source of financing. By agreement, Wells Fargo reduced the funds available to PSC under the line of credit the second half of in 2013 and eventually froze the line of credit in February, 2014. The line of credit and the term loan with Wells Fargo both currently have a maturity date of April 1, 2014 and are described in greater detail in a Stipulation for Use of Cash Collateral being filed concurrently herewith.

8. Given all the challenges noted above, PSC sought protection under Chapter 11 of the Bankruptcy Code.

9. PSC is currently negotiating debtor-in-possession financing that will satisfy Wells Fargo and fund PSC's operation during the pendency of the bankruptcy case. PSC has also been vigorously marketing its assets and expects to either enter into a sale of substantially all its assets, or to confirm a conventional plan of reorganization that will allow it to continue its business.

**B.     The Cash Management System**

10. In the ordinary course of business, PSC maintains an integrated cash-management system that provides well-established processes for the collection, concentration, management, monitoring, and disbursement of funds generated and used in its operations (the "Cash Management System").

11. The Cash Management System enables PSC to effectively manage and monitor the inflow of receipts from customers and outflow of disbursements to employees, suppliers and payment of Wells Fargo. It is critical that the Cash Management System remain intact to ensure seamless operation of PCS's business.

12. The Cash Management System consists of four bank accounts of PSC and one bank account of BP (collectively, the "Bank Accounts"). Included in the Bank Accounts is the PSC primary account (with the account number ending in "302") (the "Main Account") at Wells Fargo where cash is generally concentrated, and which is used to receive incoming payments, deposit checks and make certain electronic and other disbursements in the ordinary course of PSC's business.

13. PSC maintains an account it references as the "Salary ZBA Account" (with the account number ending in "603") to receive funds deposited for salaried payroll. This account is funded by the Main Account as needed to cover payroll and payroll tax related disbursements.

14. PSC also maintains an account referenced as the "Payables Account" (with an account number ending in "844"). This is a zero balance account solely for the payment of trade payables by check (EFT payments to suppliers are drawn directly from the Main Account). Funds for payment of amounts drawn upon the Payables Account are transferred from the Main Account when required.

15. There is also an account maintained at Wells Fargo called the "Pension Plan Account" (with an account number ending in "513"). The sole purpose of this account is to receive and distribute monthly pension distributions from a non-union defined benefit plan for certain retired employees. This benefit plan was frozen in March 2006. PSC makes no deposits into the Pension Plan Account. All money received into this account comes from the pension plan's investment account maintained at Morgan Stanley. Each month funds are transferred from Morgan Stanley to the Pension Plan Account at Wells Fargo then and immediately transferred to ADP for distribution to the beneficiaries. At no time does the Pension Plan Account hold money belonging to PSC. This information is provided for complete disclosure and clarity.

16. A lockbox is also maintained with Wells Fargo for collection of checks received by PSC's customers who deliver payment on outstanding invoices by check. The receipts that are collected in the lockbox are deposited into the Main Account.

17. BP maintains a single checking account with Wells Fargo (with an account number ending in "414").

18. Wells Fargo has also allowed PSC to utilize certain credit cards for its officers to charge routine expenses incurred for the benefit of PSC. These credit cards (the "P Cards") are subject to security deposits held by Wells Fargo. The P Cards were cancelled on March 7, 2014.

19. As consideration for the services which Wells Fargo provides to PSC and BP to maintain the integrated Cash Management System, the Bank Accounts and providing PSC and BP with a full range of banking services, PSC pays account analysis and related banking fees each month to Wells Fargo (the "Treasury Management Fees").

20. As of the Petition Date, Wells Fargo is designated as an authorized depository by the Office of the United States Trustee for the Northern District of California pursuant to the U.S. Trustee Chapter 11 Guidelines for the Northern District of California.

21. PSC maintains detailed and accurate records of all disbursements and transfers flowing within and outside of the Cash Management System, including all checks that are written on its accounts. The electronic, Web-based services offered by Wells Fargo allow PSC to easily monitor its account balances and activity, and to generate reports, hold and release checks, to place stop payments, transfer funds and send wires and ACH payments and receive wire transfer payments from PSC's customers.

22. Cash Management Systems are complicated and require skill and training in their use and administration. Maintaining the Cash Management System in its current state is crucial to PSC's operations. Any disruption to the Cash Management System would unnecessarily disrupt PSC's day-to-day operations and thereby cause unnecessary harm to the estate. PSC therefore requests that it be allowed to continue the Cash Management System and related historical practices and that its banks be ordered to honor checks and disbursements from the Bank Accounts.

**C.    Use of Business Forms**

23. As part of PSC's ordinary business, PSC uses a range of business forms, including letterheads, purchase orders, invoices, and checks (collectively, the "Business Forms"),

without reference to its debtor-in-possession status. Creditors and vendors doing business with PSC will be aware that PSC has filed bankruptcy because of the notice of the case commencement that will be disseminated in this case in addition to potential press releases issued by PSC.

24. PSC must protect and preserve the goodwill with its customers and vendors by maintaining the use of the current Business Forms. In addition, PSC already possesses a st1ock supply of Business Forms which do not state that it is a debtor-in-possession. Revising PSC's existing Business Forms would create an unnecessary and expensive burden to the estate. Moreover, the time and expense for such revisions would be disruptive to PSC's business operations and would not confer any benefit on those dealing with the company. PSC, therefore, requests that it be authorized to continue to use its Business Forms without placing a "debtor-in-possession" label on them.

**D.  Transition to New Lending and Banking Relationships**

25. The Debtors have located a new lender who has agreed to provide a secured line of credit to repay the Wells Fargo line of credit and term loan, as well as provide additional operating capital to the Debtors. By separate motion, the Debtors will seek approval of that new post-petition loan.

26. As a result of the anticipated approval of the new post-petition loan and payoff of Wells Fargo's existing secured loans, the Debtors will be transitioning their banking relationships with Wells Fargo to another banking institution on the approved list of depositories, including establishing new bank accounts and a new lock box facility. However, the Debtors do not anticipate that transition will be accomplished immediately upon payoff of Wells Fargo, but rather may take up to two months to establish the new bank accounts and implement related systems so as not to adversely affect the Debtors' operations. The Debtors expect to work closely with Wells Fargo as well as their new lender during that transition phase.

**E.  Honoring or Replacing Checks**

27. Upon the filing of the voluntary petition by PSC, there may be certain outstanding checks that have been presented for payment to Wells Fargo. The Debtors anticipate that it may

MOTION FOR ORDER AUTHORIZING DEBTORS TO CONTINUE PRE-PETITION CASH MANANAGEMENT PRACTICES — Page 7

be necessary to direct Wells Fargo to honor certain of those checks (subject to Court approval of the particular payment). The Debtors also anticipate that it may be necessary to issue replacement checks.

## II. MEMORANDUM OF POINTS AND AUTHORITIES

Bankruptcy courts treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). While few opinions focus on this issue, some do reference the granting of authority to continue cash management systems. In *In re Charter Co.*, 778 F.2d 617 (11th Cir. 1985), for example, the Eleventh Circuit Court of Appeals affirmed a district court decision denying a creditor's motion for leave to appeal the bankruptcy court's cash management order, holding that authorizing PSCs to utilize their pre-petition "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code. *Id.* at 621. *See also In re Voyager Express, Inc.*, 2009 Bankr. LEXIS 4598 (Bankr. D. Colo. 2009) (authorizing debtor to continue to use its existing bank account, in connection with a debtor in possession financing motion).

Section 345(a) of the Bankruptcy Code authorizes deposits of money "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment" and further provides that "[e]xcept with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States" a bond or deposit of securities is required from the institution where funds are deposited. 11 U.S.C. § 345(b). PSC's Bank Accounts are at Wells Fargo which is a federally-insured banking institution and is a depository approved by the United States Trustee. [*See* Federal Deposit Insurance Corporation website and searchable database at: http://www2.fdic.gov/IDASP/main.asp; United States Trustee Region 17, List of Authorized Depositories, Northern District of California, First Quarter 2013].

The Region 17 United States Trustee Guidelines (the "UST Guidelines") generally require that a debtor open a general account, a payroll account and a tax account, and other such

accounts necessary for its operations. UST Guidelines, Sec. 4.4.6.(2). PSC currently has, and seeks to maintain, a general account (i.e. the Main Account), the Salary ZBA Account for payroll and related taxes, the Payables Account and the Pension Plan Account.. BP currently has a single checking account which is sufficient to manage its needs. Through the use of these integrated Bank Accounts, the Debtors are able to control cash and disbursements and are able to prevent the unintended payment of any pre-petition obligations. Accordingly, the Debtors believe that its Bank Accounts are in compliance with Section 345.

The Debtors respectfully submit that closing the existing accounts and opening new ones would result in needless costs in both time and money with no discernible benefit to the estate. For example, closing the payroll account and opening another will provide no benefit and only be an additional burden to PSC. Likewise, adding "debtor-in-possession" to the name of the accounts would serve no purpose.

In addition, PSC does not presently maintain an account for tax purposes. Instead, PSC monitors and processes funds for payment of taxes through its Cash Management System to assure that taxes are paid appropriately.[1] Requiring PSC to open an additional tax account would require PSC to revise its Cash Management System and compel it to devote more personnel time to maintaining the new account.

Similarly, PSC contends that it should be permitted to pay the Treasury Management Fees regularly owing to Wells Fargo for the continued operation of the Bank Accounts and the Cash Management System. These expenses are incurred in the ordinary course of business and would otherwise constitute an expense of administration pursuant to 11 U.S.C. §§503(b)(1)(A) and 507(a)(2).

In other large chapter 11 cases, bankruptcy courts have recognized that strictly applying the provisions of Section 4.4.6 of the U.S. Trustee Guidelines that require a debtor-in-possession to close all of its bank accounts, open new accounts and print new checks with the "debtor-in-

---

[1] Separately PSC will file its Motion for Order Authorizing Payment of Sales, Use and Other Taxes Accruing Pre-Petition in the Ordinary Course of Business seeking *inter alia,* authorization to pay outstanding sales, use and similar taxes which accrued pre-petition but were not yet due and owing or were not paid in full as of the Petition Date, to certain taxing authorities in the ordinary course of business.

MOTION FOR ORDER AUTHORIZING DEBTORS TO CONTINUE PRE-PETITION CASH MANANAGEMENT PRACTICES
Page 9

possession" designation does not serve the rehabilitative process of chapter 11 and is not in the best interest of the estate and its constituents. According, bankruptcy courts routinely have waived such guidelines. *See, e.g., In re Tri-Valley Growers*, *Bankruptcy* Case No. 00-44089 j-11. (Jellen, J.)(order dated July 13, 2000 allowing the debtor to maintain existing bank accounts when changing account would be too burdensome.)

As described above, the use of the Bank Accounts and Cash Management System allows PSC to manage its cash effectively. Closing the current accounts and opening new ones would be extremely burdensome, especially at a time when PSC's accounting personnel are already addressing the numerous matters related to the commencement of the Bankruptcy Case. It would also create additional costs to the estate with no benefit to the creditors.

In PSC's business judgment, continuing to use its present Business Forms will reduce costs to the estate by eliminating the unnecessary and expensive burden of reproducing the Business Forms, especially since the company already has a stock of the forms. Moreover, keeping the current Business Forms will allow PSC to protect and preserve goodwill with its customers and vendors. As set forth above, customers and vendors will be aware of PSC's bankruptcy as a result of general publicity. As such PSC submits that it should be allowed to continue to use its current Business Forms without reference to "debtor-in-possession."

**A.  The Requested Relief Is In the Ordinary Course of Business.**

Section 363 of the Bankruptcy Code provides that only transactions outside the ordinary course of business require court approval, while transactions within the ordinary course of business may be entered into by debtors without notice or court approval. 11 U.S.C. § 363(b)(1).

Through this Cash Management Motion, PSC requests authority to continue to employ its Cash Management System. The practices encompassed by these systems are well established. PSC has maintained a relationship with its banks and used the Cash Management System for many years. Moreover, PSC believes that practices similar to its Cash Management System are standard within its industry, and that they are essential to the successful operation of its business. Consequently, the relief requested herein is in the ordinary course of PSC's business, and is therefore authorized pursuant to Section 363(c).

### B. The Relief Requested Is Within PSC's Reasonable Business Judgment.

To the extent any practices within the Cash Management System constitute transactions outside of the "ordinary course of business," they may be approved as being within the reasonable business judgment of PSC. 11 U.S.C. §§1107 and 1108 authorize a debtor in possession to operate its business as a trustee in a chapter 11 case, and Courts afford broad deference to the reasonable business judgment of debtor in possession. *Bennett v. Williams*, 892 F.2d. 822, 824 (9th Cir. 1989).

Here, PSC seeks to maintain its established Cash Management System. These systems will enable PSC to operate and monitor its finances, disbursements, receipts and tax obligations accurately. As a result, PSC has determined in its business judgment that it is in the best interests of the estate to continue its Cash Management System.

### C. Related Relief and Bankruptcy Rules 6003 and 6004

In addition, PSC submits that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to PSC for the reasons set forth herein, Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") has been satisfied.

To successfully implement the foregoing, PSC seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay under Bankruptcy Rule 6004(h).

Without the Cash Management System, disbursements, customer sales and post-petition payroll payments will be delayed, and PSC will be unable to track receipts and transactions effectively. Late payments may cause suppliers to withhold necessary goods and services.

Moreover, PSC will need to pay necessary and reasonable expenses for its continued operations, including, but not limited to, payroll, utilities and payments to vendors. Failure to make these payments will result in immediate and irreparable harm to PSC. PSC must be able to pay its employees and vendors in the ordinary course of business to continue operations and maintain the going concern value of its business in order to maximize its assets for the benefit of its creditors. By a separate motion, PSC has filed a motion to approve a stipulation for use of cash collateral of Wells Fargo to allow use of cash collateral for payment of agreed operating

expenses. The relief requested by this Motion will further help to ensure continuity of operations of PSC..

**WHEREFORE**, PSC prays that this Court enter an order as follows:

1. Authorizing, but not directing, PSC to continue to utilize its pre-petition Cash Management System, including the use of its existing Bank Accounts, in the ordinary course of its business;

2. Authorizing Wells Fargo to continue to honor checks and disbursements from the Bank Accounts as directed by PSC;

3. Authorizing PSC to continue to use its existing Business Forms without reference to its debtor-in-possession status;

4. Authorizing PSC to pay the Treasury Management Fees to Wells Fargo in the ordinary course of business;

5. Finding that notice is adequate under the circumstances under the case under Bankruptcy Rule 6004(a);

6. Waiving the fourteen-day stay requirement, to the extent applicable, under Bankruptcy Rule 6004(h); and

7. For such other and further relief as the Court deems just and proper.


Dated: March 10, 2014           BINDER & MALTER, LLP

                          By:   /s/ Julie H. Rome-Banks
                                Julie H. Rome-Banks
                                Proposed attorneys for Debtors and Debtors-in-Possession