MICHAEL W. MALTER, #96533
JULIE H. ROME-BANKS, #142364
WENDY W. SMITH, #133887
KRISTINA A. PARSON, #257840
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050
Telephone: (408)295-1700
Facsimile: (408) 295-1531
Email: michael@bindermalter.com
Email: julie@bindermalter.com
Email: wendy@bindermalter.com
Email: kristina@bindermalter.com

Proposed Attorneys for Debtors and Debtor-in-Possession
PACIFIC STEEL CASTING COMPANY and
BERKELEY PROPERTIES, LLC

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| In re<br><br>PACIFIC STEEL CASTING COMPANY,<br>a California corporation,<br><br>            Debtor. | Case No. 14-41045-RLE<br><br>Chapter 11<br><br>(Motion for Joint Administration Pending) |
| In re<br><br>BERKELEY PROPERTIES, LLC, a<br>California limited liability company,<br><br>            Debtor. | Case No. 14-41048-WJL<br><br>Chapter 11<br><br>Date:<br>Time:<br>Courtroom |

**STIPULATION FOR USE OF CASH COLLATERAL OF WELLS FARGO BANK, N.A.**

**I.  INTRODUCTORY STATEMENT**

    The following statement is made for purposes of compliance with Guideline B of this District's Guidelines for Cash Collateral & Financing Motions & Stipulations:

    1.   <u>Name of Each Entity With an Interest in the Cash Collateral</u>

Wells Fargo Bank, N.A. ("WFB") has an interest in Cash Collateral of Debtor Pacific Steel Casting Company, a California corporation ("PSC") in this case and in the related case of Berkeley Properties, LLC ("BP"). PSC and BP are collectively referred to as the "Debtors".

2.    Purposes for the Use of the Cash Collateral

Cash collateral is to be used in the ordinary course for operations of the businesses of PSC and BP.  PSC is steel foundry that manufactures carbon, low-alloy and stainless steel castings for U.S. and international customers. PSC operates three separate plants that are located on an eight-acre industrial complex located in Berkeley, California (the "Berkeley Campus").  BP is a wholly owned subsidiary of PSC.  BP owns the real property underlying the Berkeley Campus (consisting of multiple parcels)[1] and leases said real property to PSC pursuant to a written lease agreement.

3.    Terms, Including Duration, of the Use of Cash Collateral

Cash collateral is to be used to pay operating expenses in the ordinary course so long as monthly adequate protection payments are made to WFB.  Use of cash collateral may continue for a period of 2 months duration, until plans of reorganization have been confirmed in the bankruptcy cases, the cases are dismissed or the cases are converted to chapter 7, whichever occurs first.   The Debtors have received a loan commitment from Siena Lending Group ("Siena") dated February 21, 2014 which provides for replacement debtor-in-possession ("DIP") financing.  It is anticipated that following approval after a final hearing, Siena's initial advance to the Debtors under the new DIP credit facility will be to payoff the outstanding loans which the Debtors currently

_____

1  A small portion of the Berkeley Campus, consisting of the yard of Plant 2, is leased by PSC from Howard Robinson, an unaffiliated party, pursuant to a written lease originally dated May 1, 2003, as

STIPULATION FOR USE OF CASH COLLATERAL OF WELLS FARGO BANK, N.A.                              PAGE 2

owe to WFB and which loans from WFB are described in this Stipulation.  Accordingly, although this Stipulation is for a term of 2 months, the parties reasonably anticipate that the actual duration of use of Cash Collateral will be considerably shorter with WFB being paid in full shortly after final approval of the DIP financing being provided to the Debtors by Siena.

4.      <u>Liens, Cash Payments, Or Other Adequate Protection</u>

WFB shall receive monthly adequate protection payments of approximately $40,000.00  per month in immediately available funds and a replacement lien on collateral with a back-up super-priority claim to the extent that adequate protection proves inadequate as measured by a decline from liquidation value of WFB's collateral as of the filing date.  The replacement lien shall attach only to the collateral of the kind and character to which WFB's liens would have attached pre-petition.  Until such time as WFB is paid in full, WFB shall also continue to retain its (a) Deeds of Trust recorded against BP's real property interests, and (b) a Continuing Guaranty executed in favor of WFB by Tri-Pacific, Inc.  Tri-Pacific, Inc. is the majority shareholder of PSC.

## II.  <u>RECITALS</u>

5.      The Debtors and WFB hereby agree that the Debtors may use WFB's cash collateral on the terms and conditions set forth herein.

6.      BP is obligated to WFB for a term loan made pursuant to a Real Estate Term Note in the original amount of $4,161,624.00 dated December 1, 2007 executed by BP in favor of WFB (hereinafter as amended and modified, the "Term Loan").  The Term Loan is secured by certain Deeds of Trust recorded against the Berkeley Campus real property owned by BP and more particularly described in the respective Deeds of amended and extended.

Trust. The Term Loan had an initial maturity date of November 1, 2012 and has a current maturity date of April 1, 2014. The Term Loan is also evidenced by or secured and supported by the following documents:

(a) Continuing Guaranty executed by PSC on December 1, 2008;

(b) Continuing Guaranty executed by Tri-Pacific, Inc. on December 1, 2008;

(c) First Modification to Promissory Note entered into as of December 1, 2008 which changed certain financial covenants of BP and guarantor PSC;

(d) Second Modification to Promissory Note entered into as of December 1, 2009 which changed certain financial covenants of guarantor PSC;

(e) Third Modification to Promissory Note entered into as of October 1, 2011 which changed certain financial covenants of guarantor PSC;

(f) Fourth Modification to Promissory Note entered into as of October 1, 2013 which changed certain financial covenants of guarantor PSC, acknowledged certain breach of financial covenants by guarantor PSC, and extended the maturity date of the Promissory Note to January 2, 2014;

(g) Fifth Modification to Promissory Note entered into as of December 20, 2013 which acknowledged certain breach of financial covenants by guarantor PSC and extended the maturity date of the Term Note to April 1, 2014;

(h) Letter dated December 1, 2012 whereby WFB extended the maturity date of the Term Loan to March 1, 2013;

(i) Letter dated March 1, 2013 whereby WFB extended the maturity date of the Term Loan to June 1, 2013;

(j) Letter dated June 1, 2013 whereby WFB extended the maturity date of

Case: 14-41045    Doc# 8    Filed: 03/10/14    Entered: 03/10/14 19:48:19    Page 4 of 21

the Term Loan to August 1, 2013;

(k) Agreement and Acknowledgement of Security Interest (Landlord Waiver) entered into as of December 20, 2013 whereby BP acknowledged WFB's security interest in the assets of PSC for the benefit of WFB, which was recorded in Alameda County on January 23, 2014, as document number 2014020278 of the Official Records;

(l) Third Party Security Agreement regarding rights to payment and inventory executed by PSC on October 1, 2008;

(m) Third Party Security Agreement regarding equipment and fixtures executed by PSC on October 1, 2009; and,

(n) Third Party Security Agreement regarding equipment executed by PSC on December 1, 2008;

7.     The security interest granted to WFB by BP in connection with the Term Loan was perfected by the following documents:

(a) as to the real property of BP, by the recording of multiple deeds of trust with assignments of rent in Alameda County including (i) that certain Deed of Trust and Assignment of Rents and Leases dated as of March 1, 2003, executed by PSC, as original trustor, to American Securities Company, as Trustee, in favor of WFB, as beneficiary, and recorded on February 28, 2003, as Instrument No. 2003117631 of the Official Records of Alameda County, California (the "Official Records"); (ii) that certain First Modification of Deed of Trust and Assignment of Rents and Leases dated as of December 1, 2007, executed by BP, as Trustor, and WFB, as beneficiary, and recorded on January 15, 2008, as Instrument No. 2008010029 of the Official Records; (iii) that certain Second Modification of Deed of Trust and Assignment of Rents and Leases

Case: 14-41045    Doc# 8    Filed: 03/10/14    Entered: 03/10/14 19:48:19    Page 5 of 21

dated as of October 1, 2013, executed by BP, as Trustor, and WFB, as beneficiary, and recorded on November 14, 2013, as Instrument No. 2013360607 of the Official Records; (iv) that certain Third Modification of Deed of Trust and Assignment of Rents and Leases dated as of December 20, 2013, executed by BP, as Trustor, and WFB, as beneficiary, and recorded on January 23, 2014, as Instrument No. 2014020277 of the Official Records; and (v) that certain Deed of Trust and Assignment of Rents and Leases, dated as of December 20, 2013, by BP, as Trustor, to American Securities Company, as Trustee, for the benefit of WFB, as beneficiary, and recorded on January 23, 2014, as Instrument No. 2014020279 of the Official Records.;

(b) as to all other property pledged to WFB by BP and PSC, by the filing of a UCC-1 Financing Statements filed with the California Secretary of State on May 3, 1993, as Document Nos. 93089750 and 93089751, together with continuation statements filed on December 4, 1997, November 13, 2002, November 8, 2007, and November 8, 2012;

8.     In addition, pursuant to a written agreement dated as of November 4, 2009, WFB agreed to provide PSC with a revolving line of credit in the original principal amount of $8,000,000 for operating capital.  The funds advanced by WFB pursuant to the revolving line of credit are secured against all assets of PSC including but not limited to all inventory, chattel paper, accounts and other rights to payment, general intangibles, equipment and proceeds (hereinafter as amended and modified, the "Revolving Line of Credit").  WFB froze PSC's ability to initiate further draws upon the Revolving Letter of Credit on or about February 20, 2014.  The Revolving Line of Credit has a current maturity date of April 21, 2014.  The Revolving Line of Credit is evidenced by the following documents:

(a)  Revolving Line of Credit agreement dated October 1, 2009 which provides for a maturity date of October 1, 2010;

(b) Amendment reflected in a letter agreement dated October 1, 2010 which extended the maturity date to October 1, 2012 and made certain other modifications;

(c)  Amendment reflected in a letter agreement dated October 1, 2011 which extended the maturity date to October 1, 2013, increased the amount of the loan to $10,000,000.00 and modified certain financial covenants;

(d)  Third Amendment to Letter Agreement and Limited Waiver entered into as of October 1, 2013 whereby WFB agreed to waive the Debtors' failure to comply with certain required financial covenants for the fiscal quarters ending December 31, 2012, March 31, 2013 and June 30, 2013, and the parties agreed to certain other modifications of the Revolving Line of Credit;

(e)  Fourth Amendment to Letter Agreement and Limited Waiver entered into as of December 20, 2013 whereby WFB agreed to waive the Debtors' failure to comply with certain required financial covenants for the fiscal quarter ending September 30, 2013, and the parties agreed to certain other modifications of the Revolving Line of Credit;

(f) First Modification of Promissory Note entered into on October 1, 2013 which reduced the amount of the Revolving Line of Credit to $7,200,000.00 and provided that any default in the Term Loan was also a default in the Revolving Line of Credit;

(g)  Second Modification of Promissory Note entered into December 20, 2013 by PSC which reduced the amount of the Revolving Line of Credit to

1  $3,500,000.00 and modified other provisions of the loan including setting April 1, 2014

2  as the last day for advances under the Revolving Line of Credit;

3  (h)  Continuing Security Agreement Rights to Payment and Inventory

4  whereby PSC granted security interests in PSC's accounts and other rights to payment,

5  inventory and various other personal property all as more particularly described therein;

6
7  (i)  Security Agreement Equipment and Fixtures whereby PSC granted

8  security interests to WFB in all of PSC's equipment and fixtures all as more particularly

9  described therein.

10  (j)  Security Agreement executed by PSC and WFB on December 20,

11  2013 whereby PSC pledged and assigned to WFB all of its right, title and interest in a

12  certain deposit account at WFB; and,

13  (g)  Agreement and Acknowledgement of Security Interest (Landlord

14  Waiver) entered into as of December 20, 2013 whereby BP acknowledged WFB's

15  security interest in the assets of PSC for the benefit of WFB, which was recorded in

16
17  Alameda County on January 23, 2014, as document number 2014020278 of the Official

18  Records.

19  9.  The security interest granted to WFB by PSC in connection with the

20  Revolving Line of Credit was perfected by:

21  (a)  filing of a UCC-1 Financing Statement with the California Secretary

22  of States on May 3, 1993, as Document Nos. 93089750 and 93089751, together with

23  continuation statements filed on December 4, 1997, November 13, 2002, November 8,

24  2007, and November 8, 2012;

25
26  (b)  recording of certain deeds of trust and assignment of rents, together

27  with modifications thereof, in Alameda County including (i) that certain Deed of Trust

28  STIPULATION FOR USE OF CASH COLLATERAL OF WELLS FARGO BANK, N.A.                                    PAGE 8

and Assignment of Rents and Leases dated as of March 1, 2003, executed by PSC, as original trustor, to American Securities Company, as Trustee, in favor of WFB, as beneficiary, and recorded on February 28, 2003, as Instrument No. 2003117631 of the Official Records; (ii) that certain First Modification of Deed of Trust and Assignment of Rents and Leases dated as of December 1, 2007, executed by BP, as Trustor, and WFB, as beneficiary, and recorded on January 15, 2008, as Instrument No. 2008010029 of the Official Records; (iii) that certain Second Modification of Deed of Trust and Assignment of Rents and Leases dated as of October 1, 2013, executed by BP, as Trustor, and WFB, as beneficiary, and recorded on November 14, 2013, as Instrument No. 2013360607 of the Official Records; (iv) that certain Third Modification of Deed of Trust and Assignment of Rents and Leases dated as of December 20, 2013, executed by BP, as Trustor, and WFB, as beneficiary, and recorded on January 23, 2014, as Instrument No. 2014020277 of the Official Records; and (v) that certain Deed of Trust and Assignment of Rents and Leases, dated as of December 20, 2013, by BP, as Trustor, to American Securities Company, as Trustee, for the benefit of WFB, as beneficiary, and recorded on January 23, 2014, as Instrument No. 2014020279 of the Official Records.

10.    The cash available in the bankruptcy cases of PSC and BP on the petition date, together with the proceeds received from the ongoing collection of accounts receivable and rents are the "cash collateral" of WFB pursuant to 11 U.S.C. § 363(a).

11.    No trustee has been appointed and Debtors remain as debtors-in-possession of their respective bankruptcy cases.

12.    As of the petition date, PSC and BP owed WFB the sum of (a) approximately $2,671,510.00 on the Term Loan; and (b) approximately $1,450,000.00

Case: 14-41045    Doc# 8    Filed: 03/10/14    Entered: 03/10/14 19:48:19    Page 9 of 21

1 on the Revolving Line of Credit, plus accrued but unpaid interest as well as certain fees

2 and expenses incurred by WFB and reimbursable under the Term Loan and Revolving

3 Line of Credit.

4        13.     The Debtors require the expenditure of cash to pay the operating costs of

5 PSC, including payroll and related benefits to PSC's employees, post-petition purchases

6 of goods and services in the ordinary course of business, post-petition rents, post-

7 petition utilities, and the like, as well as payments to required professionals. The

8 Debtors have requested and WFB has agreed and hereby consents to the use of its

9 Cash Collateral to continue to operate the Debtors' businesses in the ordinary course

10 and to preserve and maintain WFB's collateral as outlined in a revised rolling 13 week

11 budget attached hereto as Exhibit "A" (the "Budget"). Included within the Budget are

12 line items for payment of the Debtors' professionals. These professional fees shall be

13 paid initially from pre-petition retainers (upon approval of the Court), and at such time as

14 pre-petition retainers have been exhausted, WFB consents to a carve out for such

15 professional fees up to the amounts identified in the Budget (the "Carve Out"). WFB

16 also consents to the use of Cash Collateral for payment of U.S. Trustee fees. Should a

17 committee of unsecured creditors be appointed in these bankruptcy cases and a

18 request for a reasonable carve out by Committee Counsel is made of WFB, WFB shall

19 agree to the further use of Cash Collateral for such purpose. All professional fees

20 remain subject to Court approval.

21                 III.      <u>TERMS FOR USE OF CASH COLLATERAL</u>

22        14.     The Debtors shall deposit WFB's Cash Collateral into their respective

23 debtor-in-possession bank accounts[2].

---

2 By separate motion, the Debtors are requesting Court authorization to continue to use their pre-petition

15. PSC and BP may use WFB's Cash Collateral in the operation of their businesses in the ordinary course, to make Adequate Protection Payments to WFB and to pay the Carve Out for professional fees described above and as provided in the Budget.

16. WFB's consent to the use of Cash Collateral is conditioned on there being no Termination Event (as defined below), nor an event or condition which after notice, or lapse of time, or both, would constitute a Termination Event.

17. As and for adequate protection, the Debtors shall continue to make regular ongoing monthly payments of approximately $40,000.00 (the "Adequate Protection Payments") pursuant to the terms of the Term Loan and Revolving Line of Credit to WFB. Payment is due on the first day of each month and late on the tenth day thereafter. Said Adequate Protection Payments shall continue to be applied by WFB in the same manner as they were applied before the bankruptcy cases were filed, including payment of interest as provided for under the Term Loan and Revolving Line of Credit and amortization of the remaining principal balance of the Term Loan.

18. The Debtors have WFB's consent to disburse WFB's Cash Collateral from their respective bank accounts for business operations in the ordinary course and to pay the Carve Out as provided in the Budget so long as the Adequate Protection Payment specified herein for each month covered by this Stipulation has been made.

19. The Debtors have agreed to provide WFB with adequate protection in the form of a replacement lien on the proceeds of the collateral to the extent that adequate protection proves inadequate as measured by a decline from liquidation value of WFB's

bank accounts and other cash management services provided by WFB to the Debtors. As will be discussed in further detail in the separate motion, the Debtors will be moving their cash management services to a separate financial institution within a reasonable time following the Petition Date and will

collateral as of the filing date.  The replacement lien shall attach only to the collateral of the kind and character to which WFB's liens would have attached pre-petition and shall attach to such assets only to the extent that Cash Collateral is used.  This replacement lien shall be subordinate to the compensation and expenses (excluding professional fees), of any subsequently-appointed trustee in the bankruptcy cases.  To the extent that this replacement lien proves to be inadequate, WFB shall be granted a super priority claim under 11 U.S.C. §507(b) to the extent that adequate protection proves inadequate as defined by shortfall in payment of WFB's claims against PSC and BP capped by a decline in the liquidation value of WFB's collateral from the date of commencement of the bankruptcy cases to the date of payment.  WFB's lien upon, and security interest in, the replacement collateral granted by this Stipulation shall be deemed perfected without any other act or filing, upon entry of the Court Order approving this Stipulation.  However, WFB may, at its option and without any additional authorization from the Court, file additional UCC-1 financing statements or take such other actions it deems appropriate to evidence and perfect such liens and security interests.

20.    The Debtors will provide bi-weekly reports to WFB of actual versus budgeted cash flows.   The Debtors shall also furnish to WFB copies of each monthly operating statement and other financial report that they file with the Bankruptcy Court until such time as WFB is paid in full under the Term Loan and the Revolving Line of Credit by emailing a copy of such reports to counsel for WFB at the following address:

> Todd J. Dressel
> Chapman and Cutler LLP
> 595 Market Street, 26th Floor
> San Francisco, CA  94105-2839

request authority from the Court for WFB to discontinue such services.

STIPULATION FOR USE OF CASH COLLATERAL OF WELLS FARGO BANK, N.A.                    PAGE 12

1                             Email: Dressel@chapman.com

2        21.     The Debtors shall give immediate written notice to WFB of the following:

3           (a)     Any Termination Event or the occurrence of any event, which, upon
4
5 the giving of notice of passage of time, or both, would constitute a Termination Event; or

6           (b)     Any matter which has resulted, or might result, in a material

7 adverse change in the financial condition or result of the operations or business of either

8 of the Debtors.

9        22.     Each of the following is herein called a "Termination Event":

10           (a) Until such time as the Debtors either (i) pay all amounts due under the

11 Term Loan and the Revolving Line of Credit to WFB in full, (ii) the Debtors confirm

12 chapter 11 plans; or (ii) the cases are dismissed or converted to chapter 7, it shall be a

13 Termination Event if WFB does not timely receive all Adequate Protection Payments

14 required under this Stipulation, provided that WFB gives notice of default based on any

15 missed Adequate Protection Payments to the Debtors under the terms of this Stipulation

16 and which default remains uncured for a period of 10 calendar days after such notice.

17

18           (b)     The Debtors default in the performance or observance of any

19 material term, covenant or agreement contained in this Stipulation.

20           (c)     The conversion of the bankruptcy cases of PSC and BP for any

21 reason to a case under Chapter 7 of the Bankruptcy Code;

22

23           (d)     The appointment of a bankruptcy trustee in the bankruptcy cases of

24 PSC or BP;

25           (e)     The dismissal of the bankruptcy cases of PSC and BP;

26           (f)     WFB obtains an order for relief from the automatic stay to foreclose

27 upon its collateral (whether entered into on the basis of this Stipulation or otherwise).

28

Case: 14-41045    Doc# 8    Filed: 03/10/14    Entered: 03/10/14 19:48:19    Page 13 of 21

23.     Upon the occurrence of any Termination Event, WFB may, at its sole option upon five days' written notice to the Debtors and their undersigned counsel move the Bankruptcy Court for authority to execute on WFB's security interests and to recover its collateral.

24.     This Stipulation is entered into for the sole protection and benefit of the parties hereto, and no other person or entity shall have a direct or indirect cause of action or claim in connection with this Stipulation.

25.     Time is of the essence in every provision of this Stipulation.

26.     If any party to this Stipulation shall prevail in any legal action or proceeding to enforce, defend or construe such party's rights or obligations under any provision of this Stipulation, then that prevailing party shall recover from the other party to such action or proceeding all reasonable legal expenses and costs (including attorneys' fees) which such prevailing party may incur in connection with such action or proceeding.

27.     This Stipulation contains (or incorporates) the entire agreement of the parties hereto with respect to the matters discussed herein.  This Stipulation may not be modified or amended in any respect except by a written instrument executed by the Debtors and WFB.

28.     All notices given under this Stipulation shall be transmitted to the addresses below or to such other address as a party may designate by written notice to the other party:

    To Debtors
    Pacific Steel Casting Company
    Atten: Charles Bridges, Responsible Individual
    1333 Second Street
    Berkeley, CA 94710

Case: 14-41045   Doc# 8   Filed: 03/10/14   Entered: 03/10/14 19:48:19   Page 14 of 21

Email: cbridges@pacificsteel.com

Berkeley Properties, LLC
Atten: Catherine Delsol, Managing Member
85 Lakeside Drive
Corte Madera, CA 94925
Email: kdelsol@sbcglobal.net

Attorneys for Debtors
Michael W. Malter, Esq.
Julie H. Rome-Banks, Esq.
Binder & Malter, LLP
2775 Park Avenue,
Santa Clara, CA 95050
Fax: (408) 295-1531
Email: michael@bindermalter.com
Email: julie@bindermalter.com

To WFB
Kim Mai, Vice President
Wells Fargo Bank, N.A.
333 Market Street, 3rd Floor
San Francisco, CA 94105
Fax: (415) 371-3007
Email: kim.t.mai@wellsfargo.com

Attorneys for WFB
Todd J. Dressel, Esq.
Chapman and Cutler LLP
595 Market Street, 26th Floor
San Francisco, CA  94105-2839
Fax:  (415) 541-0506
Email: Dressel@chapman.com

All such notices shall be deemed to have been given at the time of actual delivery if sent

by facsimile or electronic mail, or on the first business day after date of mailing, when

sent by any other method.

       29.    This Stipulation will inure to the benefit of and bind PSC, BP and WFB and

their respective successors and assigns, including any trustee appointed in the

Chapter 11 bankruptcy cases.

1    30.    Nothing contained in this Stipulation shall be deemed to constitute a

2  waiver of any of WFB's rights.  Without limiting the generality of the foregoing, this

3  Stipulation is without prejudice to any party's rights under (and subject to) the

4  Bankruptcy Code and applicable non-bankruptcy law, including, but not limited to,

5  WFB's right to (a) request additional adequate  protection of his interest in his collateral;

6  (b) request relief from the automatic stay of Bankruptcy Code Section 362; (c) request a

7  conversion of the PSC and/or the BP Chapter 11 cases to a case under Chapter 7 of

8  the Bankruptcy code; (d) request dismissal of the PSC and/or BP Chapter 11 cases;

9  (e) request the appointment of a trustee or examiner; or (e) seek from the Bankruptcy

10  Court any other relief whatsoever.

11

12    31.    Upon 15-days' written notice to WFB, PSC or BP may terminate the

13  continued effectiveness of this Stipulation.  Neither such notice of termination nor actual

14  termination pursuant thereto shall limit, restrict or otherwise amend or modify in any way

15  any of the terms of this Stipulation.  WFB may (in its sole discretion) choose (and is

16  hereby authorized) to declare a "Termination Event" immediately upon its receipt of any

17  termination notice from PSC or BP.

18

19  Dated:  March 10, 2014                    BINDER & MALTER, LLP

20

21                                          By:    /s/ Julie H. Rome-Banks
                                                  Julie H. Rome-Banks
22                                                Attorneys for Debtors-in-possession
                                                  PACIFC STEEL CASTING COMPANY
23                                                BERKELEY PROPERTIES, LLC

24

25

26

27

28

| | |
|---|---|
| 1 | Dated: March 10, 2014          CHAPMAN AND CUTLER LLP |
| 2 | |
| 3 | By:     /s/ Todd J. Dressel |
| 4 | Todd J. Dressel<br>Attorneys for Secured Creditor |
| 5 | WELLS FARGO BANK, N.A. |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |



# Pacific Steel Casting Company

*Short Term Cash Flow Analysis*

**Burr Pilger Mayer**

*March 10, 2014*



| Starting Week: | 3/10/2014 |
| --- | --- |

**KEY SUMMARY RESULTS**



### Key Assumptions

| | | |
| --- | --- | --- |
| Collection as % of Revenues | 98.1% | |
| Beginning Cash | 2,720.9 | 3/10/2014 |
| Beginning A/R | 14,725.0 | 3/7/2014 |
| Revolving Credit | 1,450.0 | 3/10/2014 |
| Term Loan | 2,700.0 | 3/10/2014 |
| Unused Siena Loan | 4,350.0 | |
| Bank Fees / Mo. | 4.0 | |
| Prime Rate | 3.25% | |

Interest on Siena Loan

| | Limit | Per Year | Per Week |
| --- | --- | --- | --- |
| First Tier at | 1,400.0 | 9.25% | 0.178% |
| Additional Amounts | | 7.75% | 0.149% |
| Unused Loan | | 1.00% | 0.019% |

Cost of Sales (% Sales)

| | |
| --- | --- |
| Materials | 25.0% |
| Import | 4.7% |
| Service | 9.2% |
| Other | 5.8% |

### 13 Week Financial Summary

| | | |
| --- | --- | --- |
| Collections | 23,650 | |
| Disbursements | | |
| Payroll | 6,112 | 27.3% |
| Insurance | 3,099 | 13.8% |
| Union Pension | 291 | 1.3% |
| Utilities | 1,805 | 8.0% |
| Import Casting | 1,133 | 5.1% |
| Rent | 66 | 0.3% |
| Taxes | 200 | 0.9% |
| Materials/Services | 9,639 | 43.0% |
| Other Expenses | 85 | 0.4% |
| | 22,429 | 100.0% |
| Operating Cas Flow | 1,221 | |

Balances at the End of Week 13

| | |
| --- | --- |
| Cash | 3,753 |
| A/R | 15,175 |
| Debt | 4,150 |

### Disbursement Assumptions

**Payroll**

| | |
| --- | --- |
| Salary (Semi-monthly) | 180.0 |
| Union (weekly) | 410.0 |
| Non-Union (bi-weekly) | 32.0 |

**Insurance (Monthly)**

| | |
| --- | --- |
| Worker's Comp | 410.0 |
| FCI Insurance | 26.3 |
| General | 60.0 |
| Sal-Anthem, Dental, Life-LTD | 24.0 |
| Sal-Kaiser | 41.0 |

**Rent (Monthly)**

| | |
| --- | --- |
| BP | 87.0 |
| Oakland Warehouse | 13.5 |
| Plant 2 Yard | 8.5 |

**Taxes**

| | |
| --- | --- |
| Berkeley License (Annual) | 80.0 |
| Real Property (bi-annual) | 200.0 |
| Equip. Prop Tax | 165.4 |

**Pension**

| | |
| --- | --- |
| $ / Hour | 1.43 |
| # Union Workers | 358 |
| Hours Worked / Week | 180 |

**Utilities (Monthly)**

| | |
| --- | --- |
| PG&E | 410.0 |
| Occidental | 60.0 |

### Professional Service Fees Paid

| | |
| --- | --- |
| Cleary Gull | (38) |
| Binder & Malter | (275) |
| Littler Mendelson | (30) |
| BPM | (75) |
| Blank Rome | (30) |
| Epiq | (44) |
| Creditor's Committee | - |
| US Trustee | (13) |
| Other | - |
| | (505) |

PSCC Cash Flow Analysis
Exhibit B1
Weekly Cash Flows

Financials in '000 USD
Client Analysis Document - Privileged and Confidential

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chapter 11 Week Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| Month | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 6 | |
| Week Beginning | 03/10/14 | 03/17/14 | 03/24/14 | 03/31/14 | 04/07/14 | 04/14/14 | 04/21/14 | 04/28/14 | 05/05/14 | 05/12/14 | 05/19/14 | 05/26/14 | 06/02/14 | 13 Wk Sum |
| **1. Operating Cash Flow** | | | | | | | | | | | | | | |
| Revenues | 1,650 | 1,650 | 1,700 | 1,700 | 1,700 | 1,900 | 1,900 | 2,000 | 2,000 | 1,900 | 1,900 | 2,000 | 2,100 | 24,100 |
| COLLECTIONS | 1,619 | 1,619 | 1,668 | 1,668 | 1,668 | 1,865 | 1,865 | 1,963 | 1,963 | 1,865 | 1,865 | 1,963 | 2,061 | 23,650 |
| CASH DISBURSEMENTS: | | | | | | | | | | | | | | |
| Payroll | 100 | 442 | 590 | 442 | 410 | 622 | 410 | 622 | 410 | 622 | 410 | 622 | 410 | 6,112 |
| Insurance | 439 | - | 410 | 91 | 120 | 439 | 60 | 475 | - | 439 | 60 | 565 | - | 3,099 |
| Union Pension | 92 | - | - | - | - | 99 | - | - | - | 100 | - | - | - | 291 |
| Utilities | 395 | - | 60 | - | 410 | - | 60 | - | 410 | - | 60 | - | 410 | 1,805 |
| Import Casting | 78 | 78 | 80 | 80 | 80 | 89 | 89 | 94 | 94 | 89 | 89 | 94 | 99 | 1,133 |
| Rent | - | - | - | 22 | - | - | - | 22 | - | - | - | 22 | - | 66 |
| Taxes | - | 200 | - | - | - | - | - | - | - | - | - | - | - | 200 |
| Materials/Services | 660 | 660 | 680 | 680 | 680 | 760 | 760 | 800 | 800 | 760 | 760 | 800 | 840 | 9,639 |
| Other Expenses | - | - | 1 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 85 |
| Total Disbursements | 1,763 | 1,379 | 1,821 | 1,324 | 1,708 | 2,018 | 1,388 | 2,021 | 1,722 | 2,018 | 1,388 | 2,111 | 1,767 | 22,429 |
| OPERATING CASH GENERATION | (144) | 240 | (153) | 345 | (40) | (153) | 477 | (59) | 240 | (153) | 477 | (149) | 294 | 1,221 |
| **2. Cash Flow Adjustments** | | | | | | | | | | | | | | |
| **Cash Collateral Payments** | | | | | | | | | | | | | | |
| Wells Fargo | - | | | (40) | | | | | | | | | | (40) |
| Siena | - | | | (133) | | | | (8) | | | | (8) | | (149) |
| | - | - | - | (173) | - | - | - | (8) | - | - | - | (8) | - | (189) |
| **Cash Position before Financing** | | | | | | | | | | | | | | |
| Beginning Cash | 2,721 | 2,577 | 2,816 | 2,664 | 2,836 | 2,796 | 2,642 | 3,119 | 3,052 | 3,293 | 3,139 | 3,616 | 3,459 | 2,721 |
| +- Net Cash Generation | (144) | 240 | (153) | 172 | (40) | (153) | 477 | (67) | 240 | (153) | 477 | (157) | 294 | 1,032 |
| Ending Cash | 2,577 | 2,816 | 2,664 | 2,836 | 2,796 | 2,642 | 3,119 | 3,052 | 3,293 | 3,139 | 3,616 | 3,459 | 3,753 | 3,753 |
| **Professional Fees (Carve-out)** | | | | | | | | | | | | | | |
| 1 Cleary Gull | | | | (38) | | | | | | | | | | (38) |
| 2 Binder & Malter | | | | (100) | | | | (75) | | | | (100) | | (275) |
| 3 Littler Mendelson | | | | (15) | | | | (15) | | | | | | (30) |
| 4 BPM | | | | (25) | | | | (25) | | | | (25) | | (75) |
| 5 Blank Rome | | | | (10) | | | | (10) | | | | (10) | | (30) |
| 6 Epiq | | | | (13) | | | | (14) | | | | (17) | | (44) |
| 7 Creditor's Committee | | | | | | | | | | | | | | |
| 8 US Trustee | | | | | | | | (13) | | | | | | (13) |
| 9 Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Professional Fees | - | - | - | (201) | - | - | - | (152) | - | - | - | (152) | - | (505) |
| **Debt Balance** | | | | | | | | | | | | | | |
| Revolving Credit | 1,450 | 1,450 | 1,450 | 1,450 | 1,450 | 1,450 | 1,450 | 1,450 | 1,450 | 1,450 | 1,450 | 1,450 | 1,450 | 1,450 |
| Term Loan | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 |
| Total | 4,150 | 4,150 | 4,150 | 4,150 | 4,150 | 4,150 | 4,150 | 4,150 | 4,150 | 4,150 | 4,150 | 4,150 | 4,150 | 4,150 |

| Month | 2 | 3 | 4 | 5 | 6 | |
|---|---|---|---|---|---|---|
| Month | February | March | April | May | June | 13 Wk Sum |
| **1.  Operating Cash Flow** | | | | | | |
| *Revenues* | - | *6,700* | *7,500* | *7,800* | *2,100* | *24,100* |
| COLLECTIONS: | - | 6,575 | 7,360 | 7,654 | 2,061 | 23,650 |
| CASH DISBURSEMENTS: | | | | | | |
| Payroll | - | 1,574 | 2,064 | 2,064 | 410 | 6,112 |
| Insurance | - | 940 | 1,094 | 1,064 | - | 3,099 |
| Union Pension | - | 92 | 99 | 99 | - | 291 |
| Utilities | - | 455 | 470 | 470 | 410 | 1,805 |
| Import Casting | - | 315 | 353 | 367 | 99 | 1,133 |
| Rent | - | 22 | 22 | 22 | - | 66 |
| Taxes | - | 200 | - | - | - | 200 |
| Other Expenses | - | 9 | 34 | 34 | 8 | 85 |
| Materials/Services | - | 2,680 | 3,000 | 3,120 | 840 | 9,639 |
| Total Disbursements | - | 6,287 | 7,135 | 7,239 | 1,767 | 22,429 |
| OPERATING CASH GENERATION | - | 288 | 225 | 415 | 294 | 1,221 |
| **2.  Cash Flow Adjustments** | | | | | | |
| **One Time Events** | | | | | | - |
| Wells Fargo | | (40) | - | - | | (40) |
| Siena | | (133) | (8) | (8) | | (149) |
| | | (173) | (8) | (8) | | (189) |
| **Professional Fees (Receivables)** | | | | | | |
| Cleary Gull | | (38) | - | - | | (38) |
| Binder & Malter | | (100) | (75) | (100) | | (275) |
| Littler Mendelson | | (15) | (15) | - | | (30) |
| BPM | | (25) | (25) | (25) | | (75) |
| Blank Rome | | (10) | (10) | (10) | | (30) |
| Epiq | | (13) | (14) | (17) | | (44) |
| Creditor's Committee | | - | - | - | | - |
| US Trustee | | - | (13) | - | | (13) |
| Other | | - | - | - | | - |
| Total Professional Fees | | (201) | (152) | (152) | | (505) |
| **2.  Debt Balance** | | | | | | |
| Revolving Credit | | 1,450 | 1,450 | 1,450 | 1,450 | - |
| Term Loan | | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 |
| Total | | 4,150 | 4,150 | 4,150 | 4,150 | 2,700 |