1  Michael W. Malter (SBN 96522)
   Julie H. Rome-Banks (SBN 142364)
2  Wendy W.  Smith (SBN 133887)
   Kristina A. Parson (SBN 257840)
3  BINDER & MALTER, LLP
   2775 Park Avenue
4  Santa Clara, CA 95050
   Tel: (408) 295-1700
5  Fax: (408) 295-1531
   Email: Michael@bindermalter.com
6  Email: Julie@bindermalter.com
   Email: Wendy@bindermalter.com
7  Email: Kristina@bindermalter.com

8  Proposed Attorneys for Debtors and Debtor-in-Possession
   PACIFIC STEEL CASTING COMPANY
9  and BERKELEY PROPERTIES, LLC

10
                    **UNITED STATES BANKRUPTCY COURT**
11
            **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**
12

13 | In re                                    | Case No. 14-41045-RLE
14 | PACIFIC STEEL CASTING COMPANY,           | Chapter 11
   | a California corporation,                |
15 |                                          | (Motion for Joint Administration Pending)
   |                 Debtor.                  |
16 |                                          |

17 | In re                                    | Case No. 14-41048-WJL
18 | BERKELEY PROPERTIES, LLC, a              | Chapter 11
   | California limited liability company,    |
19 |                                          | Date:
   |                 Debtor.                  | Time:
20 |                                          | Courtroom

21

22       **MOTION FOR ORDER AUTHORIZING DEBTOR TO PAYPRE-PETITION**
         **EMPLOYEE COMPENSATION, BENEFITS AND UNION OBLIGATIONS**
23

24       The Motion of the Debtor and Debtor-in-Possession Pacific Steel Casting Company

25 ("PSC") respectfully represents:

26

27

28
MOTION FOR ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION EMPLOYEE
COMPENSATION, BENEFITS AND UNION OBLIGATIONS

1.     The Debtor moves for an order (i) authorizing, but not requiring, PSC to pay accrued, prepetition employee wages and expense reimbursements and all related taxes (collectively, the "Prepetition Wages" not to exceed $12,475 to each employee earned in the 180 days before the petition was filed); (ii) authorizing, but not requiring, PSC to pay ordinary contributions accrued pre-petition to the Glass, Molders, Potter, Plastics and Allied Workers International Union, which represents many of its workers(the "Union"); and (iii) authorizing, but not requiring, PSC to allow its employees to take personal time off ("PTO") that was earned pre-petition in the ordinary course of business.

2.     As described below, PSC has made a substantial effort to pay all of its employees' compensation and related obligations through the date of the petition filing, but there remain several pre-petition employee obligations that must be addressed. PSC is also working with its bank, Wells Fargo Bank, to continue PSC's banking practices without interruption, including honoring checks and transfers made for the payment of the obligations described in this motion. PSC has filed a Motion for Order Authorizing Debtor to Continue Pre-Petition Cash Management System.  These motions are brought so that, should there be any delay or difficulty in the payment of pre-petition compensation (such as un-cashed checks), PSC and Wells Fargo may address it without further application to the Court, thereby avoiding any delay of compensation to its employees.

3.     This motion (the "Employee Compensation Motion") is based on the Memorandum of Points and Authorities set forth below, the Notice, the supporting declaration of Charles H. Bridges, Jr. filed concurrently, incorporated here by this reference, and the pleadings, and upon such oral and documentary evidence as may be presented at the hearing.  By separate application, PSC requested a hearing on this matter on shortened time and with limited notice.

4.     The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.　　　The statutory bases for the relief requested are §§ 105(a)[1], 363(b), 507(a)(4), 1107 and 1108 of the Bankruptcy Code.

**I.　　FACTUAL BACKGROUND**

**　A.　　HISTORY AND RELEVANT FACTS**

6.　　　On March 10, 2014, Pacific Steel Casting Company (hereinafter "Debtor" or "PSC") filed a voluntary Chapter 11 case in the United States Bankruptcy Court for the Northern District of California and was assigned to the Honorable Roger Efremsky as case number 14-41045-RLE  (the "PSC Bankruptcy Case").  No trustee has been appointed and PSC remains a debtor-in-possession.

7.　　　On March 10, 2014 Berkeley  Properties, LLC (hereinafter "BP") filed a voluntary petition under Chapter 11 in the United States Bankruptcy Court for the Northern District of California and was assigned to the Honorable William J. Lafferty as case number 14-41048-WJL (the "BP Bankruptcy Case").  No trustee has been appointed and BP remains a debtor-in-possession.

8.　　　BP is a wholly owned subsidiary of PSC.  The BP Bankruptcy Case was filed as a related case to the PSC Bankruptcy Case pursuant to BLR 1015-1.  Notices of related cases were promptly filed in both bankruptcy cases on March 10, 2014.  PSC and BP are collectively referred to as the "Debtors."

9.　　　Pacific Steel Casting Company ("PSC") is a fourth-generation family-owned steel foundry that manufactures carbon, low-alloy and stainless steel castings for U. S. and international customers.  PSC operates three separate plants that are located on an eight-acre industrial complex located in Berkeley, California. Since its founding in 1934 at the end of the Great Depression, PSC has grown into one of the largest independent steel-casting companies in the U.S.  PSC supplies numerous industries with a wide variety of castings which include oil and gas drilling equipment, heavy-duty truck parts, valves and fittings, and mining and construction

---

[1] Unless otherwise stated, all statutory references are to title 11 of the United States Code (the "Code" or the "Bankruptcy Code") unless otherwise specified herein.

equipment. PSC's plants incorporate some of the latest manufacturing technology, production capabilities and emissions controls. This has allowed PSC to remain competitive with domestic and international suppliers, and maintain compliance with environmental regulations. PSC presently employs 365 hourly employees and 45 salaried employees. The majority of the hourly employees are represented by the Union (the "Union Employees"). PSC currently enjoys a good working relationship with the Union. PSC is a party to a collective-bargaining-agreement (the "Union Agreement"), which governs its relationship with the Union Employees. The Union Agreement will not expire until 2015.

10. In early 2011, agents of the Immigration and Customs Enforcement, U.S. Department of Homeland Security (DHS) began an audit of Pacific Steel's Employment Eligibility Verification Forms (commonly known as I-9 Forms). The DHS audit resulted in PSC terminating nearly 200 of its front-line manufacturing employees. Many of the terminated employees immediately filed workers' compensation claims against the company, which resulted in a four-fold increase in the company's workers compensation insurance premium. PSC has worked diligently to replace the employees lost as a result of the DHS audit and train the new workers, but the loss of such a significant numbers of experienced workers severely affected productivity. The DHS audit also precipitated the filing of a wage-and-hour class action lawsuit against PSC that required significant time and resources. The wage-and-hour class action lawsuit was settled in January, 2014 during mediation on the eve of trial. The company, however, was not in a financial position to immediately fund the settlement which necessitated the current Chapter 11 filing.

11. PSC has only one large secured creditor, Wells Fargo Bank, N.A. ("Wells Fargo"). Historically, Wells Fargo provided PSC with a line of credit to finance its day-to-day operations. Wells Fargo also provided the company with a term loan on the Berkeley real estate owned by the company. More recently, due to poor financial performance, Wells Fargo informed PSC that it would need to find an alternative source of financing.

12. Given all the challenges noted above, PSC sought protection under Chapter 11 of the Bankruptcy Code.

13.     PSC is currently negotiating debtor-in-possession financing that will satisfy its current secured lender and fund its operation during the case. PSC has been vigorously marketing its assets and expects to either enter into a global sale of its assets, or to confirm a conventional plan of reorganization that will allow it to continue its business.

**B.     PSC'S Workforce and Payroll**

14.     Of PSC's approximately 410 employees, 365 are paid on an hourly basis (the "Hourly Employees"), and the remainder are paid a salary (the "Salaried Employees").  The Hourly Employees and the Salaried Employees are paid on slightly different schedules. In order to have all of the employees paid for their work through March 10th (the "Petition Date"), PSC issued an early payroll to all employees (the "Interim Payroll") during the week of March 3rd. The Hourly Employees were paid for work performed from March 2nd through March 10th, and the Salaried Employees were paid for work performed from March 1st through Mach 10th.  The amounts paid in the Interim Payroll would normally have been made after March 10th.

15.     PSC uses the services of the ADP payroll service, which handles payroll tax, social security, other government withholding, as well as redirecting voluntary 401(k) retirement fund contributions (the "Ordinary Withholding").   As part of the regular payroll process, portions of certain employees' compensation are also redirected to pay wage-garnishment orders that have been served on the PSC.

16.     Most employees' wages are paid through direct deposit from ADP to the employee's bank. ADP is paid the sums from PSC that are needed to fund those direct deposits before the payroll is issued; thus it is expected that most employees will have been paid in full for services provided by Petition Date. Some employees, however, are paid with paper checks. It is possible that employees may not have deposited the paper checks or that the checks will be returned or otherwise not honored as a result of the bankruptcy having been filed.[2]  PSC,

---

[2]  As of March 7th, 2014, PSC's records showed fewer than 30 checks to employees were outstanding. These may be paid before the petition date. No employee holds payments totaling more than $2,000, except for one payment for $4,377.

therefore, further requests authorization to direct its bank to honor all checks issued after February 1, 2014 to pay for the services or benefits described in this motion, or to replace those checks if they are returned or remain un-cashed.

### C. Prepetition PTO

17. In the ordinary course of its business, PSC provides allotted PTO days (consisting of accrued vacation, sick time, and floating holiday time) to its employees. PSC requests authority to continue to honor PTO earned by current employees and to allow employees to use prepetition accrued PTO in the ordinary course of business.

18. PSC does not intend to "cash out" PTO benefits to current employees at this time, but only intends to honor such benefits by allowing employees to use PTO in the ordinary course of business. In the event of a post-petition termination of an employee, the employee will be entitled to an aggregate pre-petition priority claim for wages and benefits earned within 180 days of the bankruptcy filing of $12,475, with any balance over that total being a general unsecured claim. In any event, by this Motion, PSC seeks authority only to honor, and not to pay, vacation and PTO in the ordinary course.

### D. Expense Reimbursement

19. PSC customarily reimburses its employees for business expenses incurred in performing their duties such as for travel, meals, mileage, and telephone use. PSC believes there may be employees who will not have submitted outstanding prepetition expense reimbursement claims by the Petition Date, but expects that such expenses will not exceed a total amount of not more than $5,000. PSC seeks authority to pay such pre-petition business expenses in the ordinary course of business and to honor outstanding checks related thereto, if any.

### E. Health Care Insurance and Pension Contributions

20. PSC's Union Agreement requires it to make monthly contributions to the healthcare insurance plan of its Union Employees (the "Union Healthcare Plan"). PSC will be obligated to contribute $453,598.70 to the Union Healthcare Plan on March 14, 2014. This contribution relates to work performed between March 1, 2014 and March 31, 2014. The Union Agreement also requires PSC to make monthly contributions to the pension plan for its Union

MOTION FOR ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION EMPLOYEE COMPENSATION, BENEFITS AND UNION OBLIGATIONS

Employees (the "Union Pension Plan"). PSC must pay $ 92,574.55 to the Union Pension Plan by March 15, 2014. This contribution relates to work performed pre-petition, between February 1, 2014 and February 28, 2014. PSC's April contribution will also relate partially to pre-petition work as it covers work performed between March 1, 2014 and March 31, 2014. The exact amount of the contribution is not know as it is calculated based on the work performed, but it is expected to be approximately the same amount as the March payment.

21. PSC anticipates that most, if not all, of its current employees will remain as full-time employees. PSC's workforce is critical to its business operations and reorganization. Each of PSC's employees is essential not only to the continued, uninterrupted operation of the business, but to effectuating the orderly administration of PSC's Bankruptcy Case. Without a stable workforce, PSC's business will lose its going concern value, and its assets, including its customer relations, will be harmed.

22. Any amount owed to an employee above the statutory priority limit will not be paid, but will instead be treated as a general unsecured claim in the Bankruptcy Case.[3] PSC will pay all post-petition wages in the ordinary course of its business.

## II. MEMORANDUM OF POINTS AND AUTHORITIES

23. A debtor is authorized to use property of the estate other than in the ordinary course of business pursuant to section 363(b) (1) of the Bankruptcy Code. The bankruptcy court has discretion regarding section 363(b) motions requesting use, sale or lease of property of the estate outside the ordinary course of business. *See In re North Brand Partners*, 200 B.R. 653, 656 (9th Cir. BAP 1996). PSC is required to show that a sound business purpose justifies the use, sale or lease of property of the estate under section 363(b) (1). *See, e.g.*, *Stephens Indus., Inc., v. McClung*, 789 F.2d. 386, 389-90 (6th Cir. 1986); *Committee of Equity Sec. v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d. 1063, 1071 (2d Cir. 1983); *In re Lady H Coal Co., Inc.*, 193 B.R. 233,

---

[3] Section 507(a)(4) provides that an employee is entitled to priority to the extent of $12,475 earned within 180 days before the date of the filing of the petition or the date of the cessation of PSC's business, whichever occurs first, for wages, salaries, or commission, including vacation, severance, and sick leave pay earned by an individual.

243 (Bankr. S.D. W. Va. 1996); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-176 (D. Del. 1991).

24. PSC has the burden of demonstrating a valid use, sale or lease of property of the estate outside the ordinary course of business. *See In re Lionel Corp.*, 722 F.2d. at 1070-71. After PSC has articulated a rational business judgment, a presumption exists that the business decision was made on an informed basis, in good faith, and in the honest belief that the action was in the best interest of PSC. *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc., (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*citing Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). A party who objects to the use, sale or lease of the estate

25. It is generally recognized that the continuation of a stable employee base and harmonious employee relations in operating a chapter 11 case is critical to a successful reorganization. As the court noted in *In re Chateauguay Corporation*, "[e]mployee good will and contentment is an asset which is vital to the continuation of a debtor's business operations and its ability to effectively reorganize during the Chapter 11 process." *In re Chateauguay Corporation* 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990) (*citations omitted*).

26. Here, PSC believes that its failure to satisfy and honor outstanding obligations to its employees will create concern and discontent among its employees, and undermine PSC's ability to retain its employees. If PSC cannot promptly assure its employees that their wages and expenses will be paid and that their accrued PTO will be honored during the Bankruptcy Case, immediate and irreparable harm may result due to the employees' resigning..

27. If PSC fails to make the required contributions to the Union Healthcare and Pension Plans it will be in default under the Union Agreement. PSC is informed and believes that the liability resulting from that default would far exceed the contribution obligations. Losing the Union Agreement, of course, would be devastating to the company.

28. PSC's ability to pay its employees and allow them to take their accrued PTO, and to honor the Union Agreement are integral to maintaining continuity and order to PSC's business activities through the retention of its employees. At this critical state, PSC cannot risk a

significant disruption in its operations caused by low employee morale and the loss of its employees. PSC's employees have unique experience and expertise which are vital to PSC's operations.

29.    PSC believes that through the use of cash collateral as set forth in its budget, it will have sufficient operating cash to satisfy all obligations to employees, including pre-petition wages and expenses, Union obligations, and post-petition wages, as they come due in the ordinary course of PSC's business.  In addition, PSC submits that the relevant time periods for which payment to employees is requested fall within the 180 days prior of the Petition Date as required by section 507(a)(4). As its employees are necessary to maintain the value of PSC as a going concern, PSC believes that the relief requested herein is modest in light of the perceived benefit to the bankruptcy estate. Permitting PSC to satisfy its obligations to its employees by paying their wages (including expense reimbursements) and take accrued PTO and by honoring the Union Agreement  is grounded on sound business judgment consistent with sections 363, 1107 and 1108 of the Bankruptcy Code.

30.    To further maintain the continuity and preserve the morale of PSC's employees, and to maintain the viability of PSC's business pending consummation of a successful reorganization, PSC respectfully requests that this Court grant the relief requested herein.

31.    No previous request for relief sought in this Employee Obligations Motion has been made to this or any other court.

**WHEREFORE**, PSC respectfully requests that the Court enter its Order:

A.    Granting PSC's Employee Obligations Motion;

B.    Authorizing PSC, in its sole discretion, to pay outstanding Prepetition Wages (including expenses) earned within 180 days before the petition, up to a maximum of $12,475.00 per employee, and to honor, but not cash out, PTO accrued by its employees;

C.    Authorizing PSC to pay ordinary contributions to the Union Pension Fund and Union Healthcare Plan

D.      Authorizing PSC in its sole discretion to direct its bank to honor all checks issued after February 1, 2014 to pay for the services or benefits described in this motion, or to replace those checks if they are returned or remain un-cashed;

E.      Authorizing PSC, in its sole discretion, to allow its employees to use prepetition accrued PTO in the ordinary course of business;

F.      For such other relief as this Court deems just and proper.


Dated: March 10, 2014                          BINDER & MALTER, LLP


                                         By:    /s/ Wendy W. Smith
                                                Wendy W. Smith
                                                Proposed attorneys for Debtors and Debtors-
                                                in-Possession