MICHAEL W. MALTER, #96533
JULIE H. ROME-BANKS, #142364
WENDY W. SMITH, #133887
KRISTINA A. PARSON, #257840
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050
Telephone: (408)295-1700
Facsimile: (408) 295-1531
Email: michael@bindermalter.com
Email: julie@bindermalter.com
Email: wendy@bindermalter.com
Email: kristina@bindermalter.com

Attorneys for Debtor and Debtor-in-Possession
PACIFIC STEEL CASTING COMPANY and
BERKELEY PROPERTIES, LLC

The following constitutes
the order of the court. Signed April 11, 2014

Roger L. Efremsky
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>PACIFIC STEEL CASTING COMPANY,<br>a California corporation,<br><br>                    Debtor. | Case No. 14-41045-RLE<br>Case No. 14-41048-RLE<br><br>Chapter 11<br><br>Cases Jointly Administered |
| In re<br><br>BERKELEY PROPERTIES, LLC, a<br>California limited liability company,<br><br>                    Debtor. | Date: April 9, 2014<br>Time: 2:30 p.m.<br>Courtroom: 201<br>1300 Clay Street, Oakland, CA 94612 |

### FINAL ORDER (A) AUTHORIZING DEBTOR TO OBTAIN FINAL SENIOR SECURED POST-PETITION FINANCING AND GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105, 364(c), 364(d), AND 507(b); (B) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; AND (C) GRANTING OTHER RELIEF

Upon the motion (the "**Motion**"), dated March 12, 2014, of Pacific Steel Casting

Company, a California corporation ("**Pacific Steel**"), and Berkeley Properties, LLC, a California

limited liability company ("**Berkeley**", together with Pacific Steel, the "**Debtors**" and each a "**Debtor**"), as parties to the DIP Financing Documents (as defined below), each as a Debtor and Debtor-in-Possession in the above-captioned Chapter 11 cases (the "**Cases**"), pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507(b) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking, among other things:

(1)     authorization and approval for Debtors to obtain post-petition loans, advances and other financial accommodations (the "**DIP Facility**") on a final basis from Siena Lending Group LLC, as lender (the "**DIP Lender**"), in an amount up to $8,500,000 and otherwise in accordance with this Final Order, secured by first priority perfected security interests in and liens, senior and above all other liens upon all of the DIP Collateral (as defined below) pursuant to Sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code;

(2)     authorization for Debtor to enter into the Debtor in Possession Loan and Security Agreement[1] with the DIP Lender, substantially in the form filed in the Cases at Docket No. 136 (the "**DIP Credit Agreement**"), which shall reflect in all material respects the terms and conditions set forth in this Final Order (the DIP Credit Agreement, this Final Order and the Loan Documents (as defined in the DIP Credit Agreement) together with all other agreements, documents and instruments to be executed or delivered in connection therewith, collectively, the "**DIP Financing Documents**")[2], and to borrow upon entry of this Final Order, up to an

---

[1] Capitalized terms used but not otherwise defined in this Order shall have the respective meanings ascribed thereto in the DIP Credit Agreement.

140690.01009/22284481v.10

Case: 14-41045    Doc# 139    Filed: 04/11/14    Entered: 04/11/14 10:11:43    Page 2 of 34

aggregate principal amount not to exceed $8,500,000 to be used in part for working capital and the other uses set forth herein;

(3)    modification of the automatic stay to the extent hereinafter set forth and waiving the fourteen (14) day stay provisions of Federal Rule of Bankruptcy Procedure 6004(h); and

(4)    the grant to the DIP Lender of superpriority administrative claim status pursuant to Sections 364(c)(1) and 507(b) of the Bankruptcy Code in accordance with the terms of this Final Order in respect of all Obligations (as defined below) and as set forth below; and

Notice of the Motion (the "**Notice**"), the relief requested therein on a final basis (the "**Final Hearing**") having been served by Debtors in accordance with Rule 4001(c) on (i) the DIP Lender, (ii) the United States Trustee (the "**U.S. Trustee**"), (iii) the holders of the twenty (20) largest unsecured claims against Debtor's estates (the "**20 Largest Unsecured Creditors**"), (iv) the Debtors' prepetition secured creditors; (vi) the CTMA Pension Trust, CTMA Union (Local 164B) and the Pension Benefit Guaranty Corporation ("PBGC"); (vii) the United States Attorney; (viii) the Department of Homeland Security; (ix) the United States Department of Labor; (x) the Internal Revenue Service and all taxing authorities of states in which Debtor is doing business; and (xi) certain other parties identified in the certificates of service filed with the Court (collectively, the "**Noticed Parties**").

The hearing on the Motion having been held by this Court on April 9, 2014 (the "**Final Hearing**").

Upon the record made by Debtors at the Final Hearing, including the Motion, and the filings and pleadings in the Case, and good and sufficient cause appearing therefor;

140690.01009/22284481v.10

Case: 14-41045    Doc# 139    Filed: 04/11/14    Entered: 04/11/14 10:11:43    Page 3 of 34

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]:

      A.    <u>Petition</u>.  On March 10, 2014 (the "**Petition Date**"), each Debtor filed a voluntary petition (the "**Petition**") under Chapter 11 of the Bankruptcy Code.  Each Debtor continues to operate its businesses and manage its properties as a Debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

      B.    <u>Jurisdiction and Venue</u>.  The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.    <u>Notice</u>.  Under the circumstances, the Notice given by Debtor of the Motion, the Final Hearing and the relief granted under this Order complies with Bankruptcy Rule 4001(c).

      D.    <u>Preliminary Findings Regarding the DIP Facility</u>.

      (i)    <u>DIP Facility</u>.  Debtors have requested from the DIP Lender and the DIP Lender is willing to extend, certain loans, advances and other financial accommodations, as more particularly described, and on the terms and conditions set forth, in this Final Order and the DIP Financing Documents.

      (ii)    <u>Business Judgment</u>. The terms of the DIP Credit Agreement, the DIP Financing Documents, and the DIP Facility are fair and reasonable and reflect Debtors'

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P.7052. Any statements of the Court from the bench at the Final Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Final Order (defined below) to the extent not inconsistent herewith.

exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(iii)    Need for DIP Facility.  Debtors require sufficient available sources of working capital to operate their businesses in the ordinary course.  The initial advance under the DIP Facility will be used (a) to pay in full pre-petition obligations owing to Wells Fargo Bank, N.A. ("**Wells Fargo**"), (b) for working capital and (c) the payment of expenses due to DIP Lender and to give the Debtors the opportunity to fund an orderly 363 sale of their assets to maximize value for their respective estates.  Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees, and to otherwise fund their operations is essential to Debtors' continued viability.  The ability of Debtors to obtain sufficient working capital and liquidity through the proposed DIP Facility on the terms set forth in the DIP Financing Documents and this Final Order is vital to the preservation and maximization of the going concern value of Debtors' currently operating businesses and a successful reorganization. Accordingly, each Debtor has an immediate need to obtain the DIP Facility in order to, among other things, permit the orderly continuation of the operation of its operating businesses, preserve jobs for its employees, maintain vendor support and minimize the disruption of its business operations, manage and preserve the assets of such Debtor's bankruptcy estate (as defined under Section 541 of the Bankruptcy Code, the "**Estate**") in order to maximize the recoveries to creditors of each Estate.

(iv)    No Credit Available on More Favorable Terms.  Neither Debtor is able to procure financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, as an administrative expense under Section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to

140690.01009/22284481v.10

Section 364(c)(1) of the Bankruptcy Code, without the grant of liens on all or substantially all of each Debtor's assets pursuant to Section 364(c) and Section 364(d) of the Bankruptcy Code. Each Debtor has been unable to procure the necessary financing on terms more favorable than the financing offered by the DIP Lender pursuant to the DIP Financing Documents and this Final Order.

(v) <u>Budget</u>. Based on the record presented to the Court by the Debtors, the Debtors have prepared and delivered to the DIP Lender the Budget (as defined in the DIP Credit Agreement). A copy of the Budget is attached as **<u>Exhibit B</u>** to the Revised Declaration of Charles Bridges filed in support of this Motion at Docket No. 127. The Budget has been thoroughly reviewed by the Debtor and its management and sets forth, among other things, the projected cash receipts and disbursements for the periods covered thereby. The Debtors believe in good faith that the Budget is achievable and will allow the Debtors to operate in Chapter 11 and to pay current administrative expenses during the term of the Budget. The DIP Lender is relying upon the Debtors' compliance with the Budget in determining to consent to the DIP Financing for the limited purposes expressly set forth herein.

(vi) <u>Business Judgment and Good Faith Pursuant to Section 363(m) and 364(e)</u>. The terms of the DIP Financing Documents and this Order are fair, just, reasonable and appropriate under the circumstances, reflect Debtors' exercise of its prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the DIP Financing Documents and this Final Order have been negotiated in good faith and at arms' length by and among Debtors, on one hand, and the DIP Lender, on the other hand, with all parties being represented by counsel. Any

140690.01009/22284481v.10

Case: 14-41045   Doc# 139   Filed: 04/11/14   Entered: 04/11/14 10:11:43   Page 6 of 34

credit extended under the terms of this Final Order shall be deemed to have been extended in good faith by the DIP Lender as that term is used in Section 364(e) of the Bankruptcy Code.

(vii) <u>Good Cause</u>.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit each Debtor and its Estate, as its implementation will, among other things, provide each Debtor with the necessary liquidity to (a) minimize disruption to such Debtor's on-going businesses and on-going operations, (b) preserve and maximize the value of such Debtor's Estate, and (c) avoid immediate and irreparable harm to such Debtor, its businesses, its employees and its assets.

(viii) <u>No Responsible Person</u>. The DIP Lender shall not be deemed to be in control of the operations of any Debtor or to be acting as a "responsible person", "owner or operator" or part of any "control group" with respect to any Debtor or the management of the any Debtor by virtue of the financing of the Debtors' operations through the DIP Facility, in administering any loans, in approving any Budget, or in taking any actions permitted by this Final Order or the DIP Financing Documents.

(ix) <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2) and to the extent applicable Bankruptcy Rule 6003.  No party appearing in the Case has filed or made an objection to the relief sought in the Motion or the entry of this Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section 1.    <u>Authorization and Conditions to Financing</u>.

7

140690.01009/22284481v.10

1.1    <u>Motion Granted</u>.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Order.  This Order shall hereinafter be referred to as the "**<u>Final Order</u>**."

1.2    <u>Authorization to Borrow and Use of Loan Proceeds</u>.  Each Debtor is hereby authorized and empowered to immediately borrow and obtain Loans and to incur indebtedness and obligations owing to the DIP Lender on the terms and subject to the conditions set forth in the DIP Financing Documents up to the amount of $8,500,000 upon entry of this Final Order; in such amounts as may be made available to Debtors by DIP Lender in accordance with all of the lending formulae, sublimits, terms and conditions set forth in the DIP Financing Documents.  Debtors shall use the proceeds of the Loans and any other credit accommodations provided to Debtors pursuant to the terms and conditions of the DIP Financing Documents, this Final Order and in accordance with the Budget.  The Debtors are authorized to use the first draw under the DIP Credit Agreement to repay in full the obligations due and owing to Wells Fargo as the prepetition lender subject to Wells Fargo releasing all of its liens on all property of the Debtors and their Estates and all of Wells Fargo's liens and security interest granted on a pre and post petition basis shall be deemed terminated.

1.3    <u>Financing Documents</u>.

1.3.1    <u>Authorization</u>.  Each Debtor is hereby authorized and directed to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the DIP Financing Documents, including without limitation, the DIP Credit Agreement.

1.3.2    <u>Approval</u>.  The DIP Financing Documents and each term set forth therein are approved to the extent necessary to implement the terms and provisions

Case: 14-41045   Doc# 139   Filed: 04/11/14   Entered: 04/11/14 10:11:43   Page 8 of 34

of this Final Order. All of such terms, conditions and covenants shall be sufficient and conclusive evidence of the financing arrangements by and among Debtors and the DIP Lender, and of Debtors' assumption and adoption of all of the terms, conditions, and covenants of the DIP Financing Documents for all purposes, including, without limitation, to the extent applicable, the payment of all Obligations, including, without limitation, all principal, interest, commissions, closing fees, collateral monitoring fees, unused line fees, document and renewal fees and other fees and expenses, including, without limitation, all of the DIP Lender's consultant fees, professional fees, attorney fees and legal expenses, in accordance with and as more fully set forth in the DIP Financing Documents.

        1.3.3    <u>Amendment</u>. Subject to the terms and conditions of the DIP Financing Documents, Debtors and the DIP Lender may amend, modify, supplement or waive any provision of the DIP Financing Documents (an "**<u>Amendment</u>**") without further approval or order of the Court so long as (i) such Amendment is not material (for purposes hereof, a "material" Amendment shall mean, any Amendment that operates to increase the interest rate other than as currently provided in the DIP Credit Agreement, increase the Maximum Revolving Facility Amount (as defined in the DIP Credit Agreement), add specific new events of default or enlarge the nature and extent of default remedies available to the DIP Lender following an event of default) and is undertaken in good faith by Debtors and the DIP Lender; (ii) the Debtors provide prior written notice of the Amendment (the "**<u>Amendment Notice</u>**") to (x) the United States Trustee's office and (y) counsel to any official committee appointed in the Cases under Section 1102 of the Bankruptcy Code (collectively, the "**<u>Committee</u>**"); (iii) the Debtors file the Amendment Notice with the Court; and (iv) no objection to the Amendment is filed with the Court within two (2) business days

9

from the later of the date of the Amendment Notice is served or the date the Amendment Notice is filed with the Court in accordance with this Section.

      1.4    <u>Payments and Application of Payments</u>.  Each Debtor is authorized and directed to make all payments and transfers of such Debtor's Estate property to the DIP Lender as provided, permitted and/or required under the DIP Financing Documents, which payments and transfers, shall not be avoidable or recoverable from DIP Lender under Section 547, 548, 549, 550, 553 or any other Section of the Bankruptcy Code, or subject to any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise.  The DIP Lender shall apply the proceeds of the DIP Collateral  (as defined below), and any other amounts or payments received by the DIP Lender to the Obligations (as defined in the DIP Credit Agreement) in accordance with the DIP Financing Documents and this Final Order, until indefeasibly paid in full and completely satisfied and the DIP Facility has been terminated, in each case in such order and manner determined by DIP Lender.  Without limiting the generality of the foregoing, each Debtor is authorized and directed, without further order of this Court, to pay or reimburse the DIP Lender in accordance with the DIP Financing Documents, for all present and future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by the DIP Lender in connection with the financing transactions as provided in the DIP Financing Documents and this Final Order (whether incurred pre-petition or post-petition), all of which shall be and are included as part of the principal amount of the Obligations and secured by the DIP Collateral. DIP Lender has received, prior to the Petition Date, deposits for such costs and expenses in an amount equal to $200,000, of which DIP Lender has spent $38,620.70.  The remaining deposit will be applied to pay legal fees of DIP Lender's legal counsel through the date hereof, to pay a

140690.01009/22284481v.10

fee to Dominion Mortgage Corporation for real estate services in an amount equal to $17,000 (plus reimbursement of legal fees up to $10,000), and then, if any portion is remaining, to the Closing Fee (as defined below). In addition, the Debtors are hereby authorized to indemnify the DIP Lender (and each of its respective directors, officers, employees, agents, representatives, attorneys, consultants, advisors and controlling persons) against any liability arising in connection with the DIP Financing Documents, to the extent set forth in the DIP Financing Documents. All such indemnities of the DIP Lender shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the Obligations under this Final Order and the DIP Financing Documents.

   1.5 <u>Validity of DIP Loan Documents</u>. The DIP Financing Documents and the Obligations shall constitute, and are hereby deemed to be the legal, valid and binding obligations of the Debtors party thereto, enforceable against each Debtor, its Estate and any successors thereto, including without limitation, any trustee or other estate representative appointed or elected in either Case, in accordance with the terms of the DIP Financing Documents or this Final Order and not subject to subordination or avoidance for any purposes in either Case. Any Loans advanced under the DIP Credit Agreement will be made only (i) to repay in full the obligations due and owing to Wells Fargo as the prepetition lender, (ii) to fund the Debtors' working capital and general corporate needs, (ii) to fund current interest and fees under the DIP Facility, (iii) to fund any allowed administrative costs and expenses of the Cases, in each case, solely to the extent permitted or required to be paid pursuant to the DIP Credit Agreement and this Final Order and only to the extent used in accordance with the Budget. No obligation, payment, transfer or grant of security under the DIP Financing Documents or this Final Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under

140690.01009/22284481v.10

any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

1.6     <u>Obligations</u>.  The Obligations: (i) shall be evidenced by the books and records of the DIP Lender; (ii) shall bear interest in the amounts set forth in the DIP Credit Agreement; (iii) shall be secured in the manner specified in this Final Order; (iv) shall be payable in accordance with the terms of the DIP Financing Documents; and (v) shall otherwise be governed by the terms set forth herein and in the DIP Financing Documents.  The Obligations shall include all indemnification obligations of Debtors under the DIP Financing Documents.

1.7     <u>Interest and Fees Under the DIP Facility</u>.  The rate of interest to be charged for the Obligations pursuant to the DIP Credit Agreement shall be the rates set forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement.  The fees charged under the DIP Facility shall be those set forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement, including without limitation, payment of: (a) the closing fee in an amount of $125,000 (the "**<u>Closing Fee</u>**"), which fee is earned upon execution of the DIP Credit Agreement and payable upon entry of the Final Order, (b) a monthly collateral monitoring fee of $4,000 per month, (c) an unused line fee equal to 1.00% per annum on the unused portion of the DIP Facility, (d) a late document fee of $150 per document per calendar day for each day that certain financial information and/or reports are not delivered to DIP Lender, (e) a $150 monthly fee for use of, and access to,  certain of DIP Lender's computer programs, and (f) a renewal fee of $42,500 for each extension of the Maturity Date granted to Debtors by DIP Lender.   In addition, prior to the Petition Date, DIP Lender received from Debtors a commitment fee in an amount equal to $125,000.

1.8     <u>Cash Management Procedures</u>.

140690.01009/22284481v.10

1.8.1 Each of Debtors' existing depository and disbursement banks (collectively, the "Banks") is authorized to debit Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in any of Debtors' accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent Debtors were responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the cash management system.

1.8.2 Any of Debtors' Banks may rely on the representations of Debtors with respect to whether any check or other payment order drawn or issued by any Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by any Debtor as provided for herein.

1.8.3 All existing deposit agreements between Debtors and their Banks shall continue to govern the post-petition cash management relationship between Debtors and the Banks, and that all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect. Debtors and the Banks may, without further order of this Court, agree to and implement changes to the cash management systems and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts, including any collection and/or

13

deposit accounts and lockbox accounts to the extent required in connection with the DIP Financing Documents.

Section 2.       <u>Liens on all Assets and Superpriority Administrative Claim Status / Guaranty</u>.

      2.1.1       <u>DIP Liens</u>.  As security for the Obligations, the DIP Lender is hereby granted as of the Petition Date, valid, enforceable, binding, first priority and fully perfected security interests in and liens upon (such security interests and liens collectively, the "**<u>DIP Liens</u>**"), all present and after-acquired property of each Debtor of any nature whatsoever, including, without limitation, all accounts receivable, goods, inventory, general intangibles, chattel paper, real property, leaseholds, fixtures, instruments, documents, machinery and equipment, deposit accounts, cash and cash equivalents, investment property, letter of credit rights, all commercial tort claims whether now existing or hereafter arising, including without limitation those commercial tort claims set forth on Section 2 of the disclosure schedules to the DIP Credit Agreement, all deposit accounts (including the Carve-Out Reserve Account) and funds on deposit therein, patents, trademarks, trade names, copyrights, rights under license agreements and other intellectual property, all supporting obligations of the forgoing and all causes of action whether pursuant to federal or state law of each Debtor or its Estate, and any and all rents, issues, products, offspring, proceeds and profits generated by any of the foregoing (collectively, the "**<u>DIP Collateral</u>**").  The DIP Liens shall be:

      a.       <u>Liens on Unencumbered Assets</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, continuing valid, enforceable, first priority, fully-perfected liens on and security interests in all of each Debtor's right, title, and interest in, to and under all DIP Collateral that is not otherwise encumbered by a validly perfected security interest or lien on the Petition Date.

140690.01009/22284481v.10

b. <u>Liens on Encumbered Assets</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, a continuing valid, enforceable, second priority and fully perfected lien on and security interest in all of the Debtor's right, title, and interest in, to and under all DIP Collateral listed on Section 7(c) to the Disclosure Schedules to the DIP Credit Agreement, to the extent that such DIP Collateral is subject to, as of the Petition Date, a perfected lien and security interest.

c. <u>Priming Liens on Encumbered Assets</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, valid, enforceable, fully perfected first priority senior priming security interests in and senior priming liens upon all of the Debtor's right, title, and interest in, to and under all DIP Collateral (other than the DIP Collateral listed on Section 7(c) to the Disclosure Schedules to the DIP Credit Agreement).

d. <u>Liens Senior to Certain Other Liens</u>. Notwithstanding anything to the contrary contained in this Final Order, the DIP Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their Estate under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date.

2.1.2 <u>Post-Petition Lien Perfection</u>. This Final Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the DIP Collateral, or other act to validate or perfect such security interest, lien or mortgage, including without limitation, control agreements with any financial institution(s) holding any deposit account of Debtor (a

15

Case: 14-41045   Doc# 139   Filed: 04/11/14   Entered: 04/11/14 10:11:43   Page 15 of 34

"**Perfection Act**").  Notwithstanding the foregoing, if the DIP Lender shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, the DIP Lender is authorized at any time and from time to time to perform such act, and Debtors are authorized and directed to perform such act to the extent necessary or required by the DIP Lender, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Final Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  The DIP Lender may choose to file, record or present a certified copy of this Final Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Final Order in accordance with applicable law.  Should the DIP Lender so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Final Order.

   2.1.3  <u>Guaranty</u>.  As additional security for the Obligations, Tri-Pacific, Inc., who is the majority shareholder of Pacific Steel and the indirect parent of Berkeley, has agreed to guaranty all Obligations pursuant to that certain Guaranty and Suretyship Agreement dated on or around the date hereof.

   2.1.4  <u>Nullifying Pre-Petition Restrictions to DIP Facility</u>.  Notwithstanding anything to the contrary contained in any agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is

16

obligated, any provision that restricts, limits or impairs in any way any Debtor from granting the DIP Lender security interests in or liens upon any of such Debtor's assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which such Debtor is a party), or otherwise entering into and complying with all of the terms, conditions and provisions hereof, or the DIP Financing Documents shall not (i) be effective and/or enforceable against such Debtor, or the DIP Lender, or (ii) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to the DIP Lender pursuant to this Final Order, the DIP Financing Documents or otherwise, to the maximum extent permitted under the Bankruptcy Code and other applicable law.

2.2 <u>Superpriority Administrative Expense</u>. For all Obligations arising pursuant to this Final Order, the DIP Financing Documents or otherwise, the DIP Lender is granted an allowed superpriority administrative claim in each Debtor's Estate pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of such Debtor, whether now in existence or hereafter incurred by such Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to the Bankruptcy Code, including without limitation, <u>inter alia</u>, Sections 105, 326, 328, 330, 331, 364(c)(1), 365, 503, 506(c), 507, 546, 726, 1113 or 1114 of the Bankruptcy Code or otherwise including without limitation those arising from a conversion of the Case to Chapter 7 (the "**Superpriority Claim**").

2.3 <u>Carve Out</u>.

2.3.1 <u>Carve Out</u>. The DIP Liens and DIP Superpriority Claims shall be subject only to the right of payment of the following expenses (collectively, the **"Carve-Out"**):

Case: 14-41045    Doc# 139    Filed: 04/11/14    Entered: 04/11/14 10:11:43    Page 17 of 34

a. statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. §§ 1930(a)(6) with respect to the Debtors (the "**Statutory Fees**"); and

b. the reasonable fees and expenses actually incurred on or after the Petition Date, with respect to services performed solely with respect to Debtors that are allowed and payable by final order of the Court under Sections 328, 330, or 331 of the Bankruptcy Code and/or any interim compensation procedures order, as applicable (collectively, the "**Allowed Professional Fees**"), by attorneys, accountants and other professionals retained by the Debtors and any Committee(s) appointed for the Debtors in the Cases, under Section 327 or 1103(a) of the Bankruptcy Code (collectively, the "**Professionals**"), in a cumulative, aggregate sum of (i) for the period prior to the occurrence of an Event of Default, not to exceed the lesser of (A) the monthly amounts budgeted to be funded for each such Professional for such month in accordance with the Budget for the time period preceding the occurrence of an Event of Default (to the extent any Event of Default occurs mid-month, pro-rated for such month) and (B) the actual amount of such Allowed Professional Fees incurred on or after the Petition Date up through and including the occurrence of an Event of Default and (ii) for the time period following an Event of Default, an amount equal to, for counsel to the Debtors, the remaining monthly amounts budgeted to be funded for counsel for the Debtors in an amount not to exceed $50,000 and for any chapter 11 or chapter 7 trustee subsequently appointed in an amount not to exceed $50,000 (collectively, (i) and (ii) is the "**Carve-Out Cap**"). For the avoidance of doubt, the trustee fees permitted to be funded pursuant to (ii) above are the same, and not in addition to, the $50,000 of trustee fees permitted in Section 3.5(j) of the DIP Credit Agreement.

c. Subject to the terms of this Final Order, the Carve-Out Cap shall be allocated on a Professional by Professional basis based on the amounts budgeted to be funded

140690.01009/22284481v.10

for each Professional pursuant to the Budget. The Carve-Out Cap is in addition to any unpaid Statutory Fees.

2.4 <u>Excluded Professional Fees</u>. Notwithstanding anything to the contrary in this Final Order, neither the Carve-Out, nor the proceeds of any Loans or DIP Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following: (a) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of the Obligations or DIP Lender's liens on and security interests in the DIP Collateral, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Obligations or DIP Lender's liens on and security interests in the DIP Collateral, or (iii) preventing, hindering or delaying the DIP Lender's assertion or enforcement of any lien, claim, right or security interest or realization upon any in accordance with the terms and conditions of this Final Order, (b) a request to use the Cash Collateral (as such term is defined in Section 363 of the Bankruptcy Code) without the prior written consent of the DIP Lender, (c) a request for authorization to obtain Debtor-in-Possession financing or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code, other than from the DIP Lender without the prior written consent of the DIP Lender, (d) the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against the DIP Lender or any of its respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from the DIP Lender under Chapter 5 of the Bankruptcy Code.

2.5     Carve Out Reserve.  At the DIP Lender's Permitted Discretion, the DIP

Lender may at any time establish (and adjust) a reserve against the amount of Loans and other

credit accommodations that would otherwise be made available to the Debtors pursuant to the

lending formulae contained in the DIP Credit Agreement in respect of the Carve-Out and any

trustee fees.  Nothing contained herein shall limit, modify or restrict in any way the DIP Lender's

rights to establish (and adjust) any other reserves in accordance with the DIP Financing

Documents.

2.6     Payment of Carve Out.

2.6.1   The Debtors shall establish a separate, debtor in possession deposit

account for the payment of Allowed Professional Fees (the "**Carve-Out Reserve Account**")

which account shall be funded by or on behalf of the Debtors in accordance with the Budget on

a monthly basis until the occurrence of an Event of Default provided there is availability under

the DIP Credit Agreement. In the event there is no availability under the DIP Credit Agreement,

the Carve-Out shall be funded from the net proceeds at closing of the sale of substantially all of

the assets. After an Event of Default, the Carve-Out Reserve Account may continue to be

funded at the DIP Lender's option, up to the Carve-Out Cap.  From funds in the Carve-Out

Reserve Account, Debtor's counsel shall pay the Professionals the Allowed Professional Fees in

connection with the Carve-Out compensation and reimbursement of expenses that accrue

following the Petition Date in compliance with and subject to the Carve-Out provisions of

Section 2.3 as the same may be due and payable upon entry of one or more orders of the Court

approving compensation and expense reimbursement of said professionals; provided  however,

that to the extent that Allowed Professional Fees that have accrued from the Petition Date

through and including an Event of Default are less than the amounts funded into the Carve Out

140690.01009/22284481v.10

Case: 14-41045    Doc# 139    Filed: 04/11/14    Entered: 04/11/14 10:11:43    Page 20 of
34

Reserve Account, the excess amounts in the Carve Out Reserve Account shall be remitted to the DIP Lender to apply to reduce the Obligations at DIP Lender's sole discretion. For the avoidance of doubt, (a) in making payments from the Carve-Out Reserve Account, Debtors' counsel shall be entitled to rely upon written certifications of each Professional as to the amount such Professional is due and owing from the Carve-Out Reserve Account; and (b) in no circumstances shall Debtors' counsel be obligated to pay any Professional other than from funds held, from time to time, in the Carve-Out Reserve Account. Funds held in the Carve Out Reserve Account shall be applied to the Allowed Professional Fees that have been incurred following the Petition Date in the manner set forth in this Final Order in accordance with the procedures established in the Cases with the excess, if any, to be remitted to the DIP Lender as set forth in the preceding sentence. Once the carve-out has been funded as set forth above, all obligations of the DIP Lender with respect to the Carve-Out shall be terminated.

2.6.2 The Carve-Out Cap shall be reduced on a dollar-for-dollar basis on a weekly basis by the amounts actually funded into the Carve-Out Reserve Account. To the extent the Carve-Out Reserve Account has not been funded in accordance with the Budget prior to the occurrence of an Event of Default, the DIP Lender shall remit the difference from collateral proceeds. Payment of any amounts on account of the Carve-Out, whether by or on behalf of the DIP Lender shall not and shall not be deemed to reduce the Obligations, and shall not and shall not be deemed to subordinate any of the DIP Lender' liens and security interests in the DIP Collateral or its DIP Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party. The DIP Lender shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Case under any chapter of the Bankruptcy Code,

140690.01009/22284481v.10

and nothing in Sections 2.3, 2.4, 2.5 or 2.6.1 of this Final Order shall be construed to obligate the DIP Lender in any way to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

Section 3.    Default; Rights and Remedies; Relief from Stay.

3.1    Events of Default.  The occurrence of any Event of Default as defined and under the DIP Credit Agreement shall constitute an "**Event of Default**" under this Final Order:

3.2    Rights and Remedies Upon Event of Default. Upon the occurrence of and during the continuance of an Event of Default and without the need for any further Court Order unless specified herein: (i) Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Final Order and the DIP Financing Documents; (ii) the DIP Lender shall be entitled, upon notice to the Debtors and the Creditors Committee, to take any act or exercise any right or remedy as provided in this Final Order or the DIP Financing Documents, including, without limitation, (w) declaring all Obligations immediately due and payable, (v) immediately ceasing to extend Loans, (x) the DIP Lender shall be entitled to charge the default rate of interest under the DIP Credit Agreement and the DIP Financing Documents, (y) subject to Section 3.3 below, setting off any Obligations with DIP Collateral or proceeds in the DIP Lender's possession, and (z) subject to Section 3.3 below, enforcing any and all rights with respect to the DIP Collateral or under the DIP Financing Documents or this Final Order; and (iii) Debtor's right to use Cash Collateral shall terminate and cease five days after delivery of the notice referenced in clause (ii) above; provided however that during such five day period, Debtors shall be permitted to use Cash Collateral, and solely to the extent such Cash Collateral use is insufficient, DIP Lender shall lend, only during such five day period, an amount necessary to fund any payroll or critical vendor expenses included in the Budget for such five day period;

22

provided further that Debtors shall only be permitted to use Cash Collateral, and DIP Lender shall only be obligated to make Revolving Loans, in each case to the extent that the sum of the outstanding Revolving Loans plus Cash Collateral used by Debtors during such period, plus the amount of Revolving Loans requested during such five day period does not exceed the Borrowing Base. The DIP Lender shall have no obligation to lend or advance any additional funds to or on behalf of Debtors, or provide any other financial accommodations to any Debtor under any of the DIP Financing Documents, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

3.3 <u>Relief from Automatic Stay</u>. The automatic stay provisions of Section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit the DIP Lender to perform any act authorized or permitted under or by virtue of this Final Order or DIP Financing Documents, including, without limitation, (a) to implement the DIP Credit Agreement arrangements authorized by this Final Order and pursuant to the terms of the DIP Financing Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral, and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Obligations, including, without limitation, all interests, fees, costs and expenses under the DIP Financing Documents, and apply such payments to the Obligations pursuant to the DIP Financing Documents and this Final Order. In addition, and without limiting the foregoing, upon the occurrence and continuance of an Event of Default, and after providing five (5) business days' prior written notice thereof (the "**<u>Enforcement Notice</u>**") to counsel for Debtors, counsel for the Creditors'

140690.01009/22284481v.10

Case: 14-41045    Doc# 139    Filed: 04/11/14    Entered: 04/11/14 10:11:43    Page 23 of 34

Committee, and the U.S. Trustee, the DIP Lender shall be entitled to take any action and exercise all rights and remedies provided to it by this Final Order, DIP Financing Documents or applicable law as the DIP Lender may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the DIP Collateral or any other assets or properties of any Debtor's Estate upon which the DIP Lender has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Obligations. Notwithstanding the foregoing, prior to expiration of the Enforcement Notice period, the Debtors can cure an Event of Default (to the extent curable), and the Debtor and/or any Committee shall be entitled to seek and obtain an emergency hearing with the Court, at which the only issue the Debtors and/or any Committee shall be allowed to assert is whether an Event of Default actually occurred. To the extent applicable, the fourteen (14) day stay contained in Federal Rule of Bankruptcy Procedure 6004(h) and 4001(a)(3) is hereby waived.

3.4     The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under the DIP Financing Documents or otherwise.

3.5     Expiration of Commitment/Relief from Stay.  Upon the expiration of the Debtors' authority to borrow and obtain other credit accommodations from the DIP Lender pursuant to the terms of this Final Order (except if such authority shall be extended with the prior written consent of the DIP Lender, which consent shall not be implied or construed from any action, inaction or acquiescence by the DIP Lender) or upon the Maturity Date (as defined in the DIP Credit Agreement), unless an Event of Default occurs sooner and the automatic stay has been lifted or modified as provided herein, all of the Obligations shall immediately become due and payable and the DIP Lender shall be automatically and completely relieved from the effect

24

Case: 14-41045   Doc# 139   Filed: 04/11/14   Entered: 04/11/14 10:11:43   Page 24 of 34

of any stay under Section 362 of the Bankruptcy Code, any other restriction on the enforcement

of their liens upon and security interests in the DIP Collateral or any other rights granted to the

DIP Lender pursuant to the terms and conditions of the DIP Financing Documents or this Final

Order, and the DIP Lender shall be and is hereby authorized, in its sole discretion, to take any

and all actions and remedies provided to it in this Final Order, the DIP Financing Documents or

applicable law which the DIP Lender may deem appropriate and to proceed against and realize

upon the DIP Collateral or any other property of any Debtor's Estate.   Notwithstanding the

foregoing, nothing in this paragraph 3.5 shall prevent the Debtors or the Committee from seeking

an order of the Court extending the automatic stay for a period of not more than 20 days past the

Maturity Date in order to facilitate a sale of the Debtors' assets or a refinance of the DIP

Lender's loan; provided however that DIP Lender's obligation to make loans or advances shall

terminate on the Maturity Date and Debtors' right to use Cash Collateral shall terminate on the

Maturity Date.

Section 4.    Representations; Covenants; and Waivers.

4.1    Debtor's Waivers.  At all times during the Cases, and whether or not an

Event of Default has occurred, unless otherwise consented to by the DIP Lender in writing in

advance (and no such consent shall be implied from any other action, inaction or acquiescence

by the DIP Lender), each Debtor irrevocably waives any right that it may have to seek authority:

(i) to use Cash Collateral of the DIP Lender under Section 363 of the Bankruptcy Code except as

expressly set forth herein; (ii) to obtain post-petition loans or other financial accommodations

pursuant to Section 364(c) or (d) of the Bankruptcy Code, other than from the DIP Lender; (iii)

to propose or support a plan of reorganization that does not provide for the indefeasible payment

in full in cash and satisfaction of all Obligations on the effective date of such plan; or (iv) to seek

relief under the Bankruptcy Code, including without limitation, under Section 105 of the

25

Case: 14-41045   Doc# 139   Filed: 04/11/14   Entered: 04/11/14 10:11:43   Page 25 of 34

Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of the DIP Lender as provided in this Final Order or the DIP Financing Documents or the DIP Lender's exercise of such rights or remedies.

4.2     Section 506(c) Claims.   No costs or expenses of administration which have or may be incurred in the Cases at any time shall be charged against the DIP Lender, its respective claims or the DIP Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of the DIP Lender (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Lender) except for compensation and expense reimbursement (but not professional fees) of any appointed chapter 11 or chapter 7 bankruptcy trustee appointed after the date hereof in an amount not to exceed $50,000 in the aggregate.   For the avoidance of doubt, the trustee fees permitted to be funded pursuant to (ii) above are the same, and not in addition to, the $50,000 of trustee fees permitted in Section 3.5(j) of the DIP Credit Agreement and as referenced in the Carve-Out for any trustee.

4.3     Collateral Rights.   Until all of the Obligations shall have been indefeasibly paid and satisfied in full:

4.3.1     no other party shall foreclose or otherwise seek to enforce any junior lien or claim in any DIP Collateral; and

4.3.2     upon and after the occurrence of an Event of Default, and subject to the relief from the automatic stay as provided for herein, in connection with a liquidation of any of the DIP Collateral, the DIP Lender (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Debtors, to:  (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtor and

26

assemble, repossess, remove, sell or otherwise deal with any DIP Collateral, and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtor, which are owned by or subject to a lien of any third party and which are used by Debtor in its businesses.

Section 5.    Other Rights and Obligations.

5.1    No Modification or Stay of this Final Order.  Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Final Order, the DIP Financing Documents or any term hereunder or thereunder or (ii) the dismissal or conversion of either Case (each, a "**Subject Event**"), (x) the acts taken by the DIP Lender in accordance with this Final Order, and (y) the Obligations incurred or arising prior to the DIP Lender's actual receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Final Order, and the acts taken by the DIP Lender in accordance with this Final Order, and the liens and security interests granted to the DIP Lender in the DIP Collateral, and all other rights, remedies, privileges, and benefits in favor of the DIP Lender pursuant to this Final Order and the DIP Financing Documents shall remain valid and in full force and effect pursuant to Section 364(e) of the Bankruptcy Code.  For purposes of this Final Order, the term "appeal", as used in Section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Final Order by this Court or any other tribunal.

5.2    Power to Waive Rights; Duties to Third Parties.  The DIP Lender shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Final Order (the "**Lender Rights**") and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s).

27

Any waiver by the DIP Lender shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, subject the DIP Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by Debtors to the DIP Lender.

5.3 <u>Disposition of Collateral</u> No Debtor shall sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the DIP Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Lender or from any requirement in the DIP Credit Agreement that a sale of Debtors' business, or the filing of a motion to approve such sale, occur by a certain date) and an order of this Court, except for sales of Debtors' Inventory in the ordinary course of their business; provided that any sale approved by the Court and consented to by DIP Lender shall indefeasibly pay all Obligations in full in cash; and provided further that DIP Lender shall have the right to credit bid all or any portion of the Obligations with respect to any sale of any of the assets of the Debtors.

5.4 <u>Inventory</u>. No Debtor shall, without the prior written consent of the DIP Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Lender or any Lender), (a) enter into any agreement to return any inventory to any of its creditors for application against any pre-petition indebtedness under any applicable provision of Section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to Section 553(b)(l) of the Bankruptcy Code or otherwise.

140690.01009/22284481v.10

Case: 14-41045   Doc# 139   Filed: 04/11/14   Entered: 04/11/14 10:11:43   Page 28 of 34

5.5 <u>Reservation of Rights</u>. The terms, conditions and provisions of this Final Order are in addition to and without prejudice to the rights of the DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code, DIP Financing Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the DIP Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Debtors' Estates.

5.6 <u>Binding Effect</u>.

5.6.1 The provisions of this Final Order, the DIP Financing Documents, the Obligations, Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of the DIP Lender provided or acknowledged in this Final Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Final Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting either Case to any other chapter under the Bankruptcy Code, or dismissing of any Case.

5.6.2 Any order dismissing any Case under Section 1112 or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (a) the Superpriority Claim and the DIP Lender's liens on and security interests in the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full in cash, and (b)

140690.01009/22284481v.10

this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim and liens and security interests in the DIP Collateral.

5.6.3    In the event this Court modifies any of the provisions of this Final Order or the DIP Financing Documents following a Final Hearing, (a) such modifications shall not affect the rights or priorities of the DIP Lender pursuant to this Final Order with respect to the DIP Collateral or any portion of the Obligations which arises or is incurred or is advanced prior to such modifications and (b) this Final Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

5.6.4    This Final Order shall be binding upon each Debtor, all creditors and all other parties in interest in the Cases and their respective successors and assigns, including any trustee or other fiduciary (including any asbestos claimant representative hereafter appointed) in the Cases or any subsequently converted bankruptcy case of any Debtor.  This Final Order shall also inure to the benefit of the DIP Lender, Debtors and their respective successors and assigns.

5.7    Marshalling.  In no event shall the DIP Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral.

5.8    Term; Termination.  Notwithstanding any provision of this Final Order to the contrary, the term of the financing arrangements among Debtors and the DIP Lender authorized by this Final Order may be terminated pursuant to the terms of the DIP Financing Documents.  Each Debtors, on behalf of itself and its Estate is authorized to grant the releases provided for in the DIP Credit Agreement at the time the DIP Lender is requested to release its liens on the DIP Collateral upon indefeasible payment in full in cash.

30

5.9     Effect of this Final Order.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable nunc pro tunc to the applicable Petition Date immediately upon execution thereof.

5.10     Waiver of Bankruptcy Rule 4001(a)(3), 6003(b), 6004(a) and 6004(h).  To the extent applicable, the twenty one (21) day provision of Bankruptcy Rule 6003(b), the notice requirements of Bankruptcy Rule 6004(a) and the fourteen (14) day stay of 4001(a) and 6004(h) are hereby waived.

5.11     Retention of Jurisdiction.  The Court has and will retain exclusive jurisdiction to enforce this Final Order according to its terms.

5.12     Order Controls.  Unless the Final Order specifically provides otherwise, in the event of a conflict between the terms and provisions of the DIP Financing Documents and this Final Order, the terms and provisions of this Final Order shall govern, interpreted as most consistent with the terms and provisions of the DIP Financing Documents.

5.13     No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

5.14     No Proof of Claim Required.  Given that all Obligations are post-petition Obligations, DIP Lender shall not be required to file any proof of claim notwithstanding any subsequently entered Bar Date Order or deadline.  Any other by the Bankruptcy Court in relation to the establishment of a bar date in any of the Cases will so provide.

5.15     Notice of Final Order.  Each Debtor shall promptly mail copies of this Final Order to the Noticed Parties, and to any other party that has filed a request for notices with

140690.01009/22284481v.10

Case: 14-41045   Doc# 139   Filed: 04/11/14   Entered: 04/11/14 10:11:43   Page 31 of 34

this Court and to any Committee after same has been appointed, or Creditors' Committee counsel, if same shall have filed a request for notice.

       5.16   <u>Notices to Creditors' Committee Under DIP Loan Documents</u>.  All notices to be provided under the DIP Loan Documents by either the Debtors to the DIP Lender or the DIP Lender to the Debtors shall also be provided to the Creditors' Committee at the following address:

> Ori Katz, Esq.
> Michael Lauter, Esq.
> Sheppard Mullin Richter & Hampton LLP
> Four Embarcadero Center, 17th Floor
> San Francisco, CA 94111
> Email: okatz@sheppardmullin.com; mlauter@sheppardmullin.com

       Any notices to the Creditors Committee pursuant to this Section 5.16 may be delivered via email to the addresses set forth above.

**\*\*END OF ORDER\*\***

140690.01009/22284481v.10

**ACKNOWLEDGED AND AGREED**

**Dated: April 10, 2014**          **SHEPPARD MULLIN RICHTER & HAMPTON LLP**,

                    By:   /s/ Ori Katz
                          Ori Katz
                          Proposed counsel to the Official Unsecured
                          Creditors' Committee

# COURT SERVICE LIST

**NONE.**