ORI KATZ, Cal. Bar No. 209561
okatz@sheppardmullin.com
MICHAEL M. LAUTER, Cal. Bar No. 246048
mlauter@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:     (415) 434.9100
Facsimile:     (415) 434.3947

Attorneys for the Official Committee of
Unsecured Creditors

MICHAEL W. MALTER,
Cal. Bar No. 96533
michael@bindermalter.com
JULIE H. ROME-BANKS,
Cal. Bar No. 142364
julie@bindermalter.com
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
Telephone: (408) 295-1700
Facsimile: (408) 295-1531

Attorneys for the Debtors and Debtors-in-
Possession, SECOND STREET PROPERTIES
and BERKELEY PROPERTIES, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>SECOND STREET PROPERTIES, a California corporation, f/k/a PACIFIC STEEL CASTING COMPANY,<br><br>        Debtor. | Case No. 14-41045-RLE<br>Case No. 14-41048-RLE<br><br>Chapter 11<br><br>Cases Jointly Administered |
| In re<br><br>BERKELEY PROPERTIES, LLC, a California limited liability company,<br><br>        Debtor. | **DEBTORS' AND COMMITTEE'S SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED APRIL 30, 2015** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................... 1

II. DEFINITIONS AND INTERPRETATION ................................. 2

    A.   Definitions ........................................................... 3

    B.   Rules of Interpretation .......................................... 14

III. NO CONSOLIDATION OF THE DEBTORS' ESTATES; EFFECT OF PARENT-SUBSIDIARY RELATIONSHIP ............................................. 14

IV. TREATMENT OF UNCLASSIFIED CLAIMS ....................... 15

    A.   Administrative Expense Claims ................................ 15

        1.   Applicable Bar Dates for Administrative Expense Claims ............ 15

        2.   Professional Fees ........................................... 16

        3.   Statutory U.S. Trustee Fees .................................. 16

    C.   Priority Tax Claims ............................................. 16

V. CLASSIFICATION OF CLAIMS AND INTERESTS ................ 17

    A.   Summary of Classification. ..................................... 17

    B.   Classes Under the Plan. ........................................ 17

VI. TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ...... 18

    A.   Class 1 – Priority Non-Tax Claims. ............................ 18

        1.   Impairment and Voting. ...................................... 18

        2.   Treatment. ................................................. 18

    B.   Class 2 – Miscellaneous Secured Claims. ...................... 18

        1.   Impairment and Voting. ...................................... 18

        2.   Alternative Treatment. ...................................... 19

        3.   Unsecured Deficiency Claim. ................................. 19

    C.   Class 3 – Disputed CraneTech Claims. ......................... 20

        1.   Impairment and Voting. ...................................... 20

        2.   Initial Treatment of Claim. ................................. 20

        3.   Treatment if Claim is Allowed by a Final Order. .............. 20

    D.   Class 4 – Local 164B Claim. ................................... 21

        1.   Impairment and Voting. ...................................... 21

        2.   Treatment. ................................................. 21

    E.   Class 5 – General Unsecured Claims Against Berkeley Properties. .... 23

        1.   Impairment and Voting. ...................................... 23

        2.   Treatment. ................................................. 23

    F.   Class 6 – General Unsecured Claims Against Second Street Properties. .... 23

        1.   Impairment and Voting. ...................................... 23

        2.   Treatment. ................................................. 23

    G.   Class 7 – Interests in Second Street Properties ................ 24

Case 9:14-41045   Doc# 535   Filed: 04/30/15   Entered: 04/30/15 13:58:02   Page 2 of 61

JOINT CHAPTER 11 PLAN OF REORGANIZATION

|  |  |  |  |
|---|---|---|---|
|  | 1. | Impairment and Voting. | 24 |
|  | 2. | Treatment. | 24 |
| H. | Class 8 – Interests in Berkeley Properties | | 25 |
|  | 1. | Impairment and Voting. | 25 |
|  | 2. | Treatment. | 25 |
| **VII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES** | | | 25 |
| A. | Assumption or Rejection | | 25 |
| B. | Claims Arising Out of Rejection | | 26 |
| **VIII. IMPLEMENTATION AND EXECUTION OF THE PLAN** | | | 26 |
| A. | Funding the Plan | | 26 |
| B. | Corporate Action. | | 26 |
| C. | Revesting. | | 27 |
| D. | Plan Administrator. | | 27 |
|  | 1. | Appointment, Removal, Duration of Appointment. | 27 |
|  | 2. | Powers and Duties of the Plan Administrator. | 28 |
|  | 3. | Fees and Expenses | 30 |
|  | 4. | Retention of Professionals | 31 |
|  | 5. | No Recourse to Estate Representatives. | 31 |
|  | 6. | Indemnification of Plan Administrator | 32 |
|  | 7. | Reporting Requirements | 32 |
|  | 8. | Limitation of Powers. | 33 |
| E. | Post-Confirmation Committee | | 36 |
|  | 1. | Role of Post-Confirmation Committee | 36 |
|  | 2. | Powers and Duties | 36 |
|  | 3. | Committee Members | 36 |
|  | 4. | Termination | 37 |
|  | 5. | Limitation on Liability and Exculpation | 37 |
|  | 6. | Fees and Expenses of Members | 37 |
|  | 7. | Retention and Payment of Professionals | 38 |
| F. | Avoidance Actions and Other Causes of Action | | 38 |
| G. | Claim Objections and Estimation of Claims | | 38 |
| H. | Conflicts of Interest | | 40 |
| I. | Reserves | | 41 |
|  | 1. | Administrative Reserves | 41 |
|  | 2. | Disputed Claims Reserves | 41 |
|  | 3. | Tax Reserves | 42 |
| J. | Method of Distributions | | 42 |
|  | 1. | Disbursing Agent | 42 |
|  | 2. | Best Efforts to Make Distributions | 42 |

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 3 of
61

JOINT CHAPTER 11 PLAN OF
REORGANIZATION

| | | | |
|---|---|---|---|
| | 3. | De Minimus Distributions | 43 |
| | 4. | No Distribution in Excess of Allowed Amount of Claim | 43 |
| | 5. | Delivery of Distributions; Distribution to Class Claim | 43 |
| | 6. | Record Date | 43 |
| | 7. | Disputed Distributions | 44 |
| | 8. | Distributions of Cash | 44 |
| | 9. | Fractional Cents | 44 |
| | 10. | Withholding and Reporting Requirements | 44 |
| | 11. | Setoff | 45 |
| K. | | Unclaimed Distributions | 45 |
| L. | | Marketing and Sale of the Berkeley Real Estate | 46 |
| IX. EFFECT OF CONFIRMATION OF PLAN | | | 46 |
| A. | | Discharge | 46 |
| B. | | Confirmation Injunction | 46 |
| C. | | Binding Effect | 47 |
| D. | | Exculpation | 47 |
| E. | | Preservation of Insurance | 48 |
| X. EFFECTIVENESS OF THE PLAN | | | 49 |
| XI. RETENTION OF JURISDICTION | | | 49 |
| XII. MISCELLANEOUS PROVISIONS | | | 51 |
| A. | | Effectuating Documents and Further Transactions | 51 |
| B. | | Modification of Plan | 51 |
| C. | | Withdrawal or Revocation of Plan | 52 |
| D. | | Failure of Effective Date | 52 |
| E. | | Severability | 52 |
| F. | | Section 1146(c) Exemption | 52 |
| G. | | Exemption from Securities Laws | 53 |
| H. | | Preservation of Causes of Action | 53 |
| I. | | Nonconsensual ("Cramdown") Confirmation | 53 |
| J. | | Notices | 53 |
| K. | | Post-Effective Date Notices | 54 |
| L. | | Plan Controls | 54 |
| M. | | Applicable Law | 54 |
| N. | | Implementation Orders | 54 |

# I.

## INTRODUCTION

Debtors and debtors-in-possession Second Street Properties, f/k/a Pacific Steel Casting Company and Berkeley Properties, LLC ("Debtors") and the Official Committee of Unsecured Creditors of Second Street Properties and Berkeley Properties, LLC (the "Committee," and together with the Debtors, the "Proponents") propose the following chapter 11 plan of reorganization for the Debtors pursuant to section 1121 of the Bankruptcy Code. Capitalized terms used in this Plan have the meanings set forth in Section II, "Definitions and Interpretation." The Debtors and Committee are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan is a reorganization plan. It provides for the replacement of the Debtors' current management with new management led or selected by a Plan Administrator, for the continuation of the Debtors' business of owning and leasing certain real property located in Berkeley, California to the buyer of its former steel casting business, and for treatment of the outstanding Allowed Claims against and Interests in the Debtors. The Plan does not provide for any substantive consolidation of the Debtors' estates.

Under the Plan, distributions are intended to be made to Holders of Allowed Administrative Expense Claims (Unclassified), Allowed Priority Tax Claims (Unclassified), Allowed Priority Non-Tax Claims (Class 1), Allowed Miscellaneous Secured Claims (Class 2), and Allowed General Unsecured Claims against Berkeley Properties (Class 5) and Allowed General Unsecured Claims against Second Street Properties (Class 6). The Holder of the Disputed CraneTech Claims (Class 3) will receive one of the alternative forms of treatment set forth herein as a Secured Claim if and only if it obtains a Final Order in the CraneTech Adversary Proceeding providing that some or all of the Disputed CraneTech Claims are Allowed Secured Claims. Otherwise, the Disputed CraneTech Claims will be treated as a General Unsecured Claims Against Second Street Properties to the extent that they are Allowed. The Holder of the Local 164B Claim (Class 4) will not receive a distribution of Cash in the Plan, but will receive a deed of trust encumbering the real property owned by the Berkeley Properties pursuant to an agreement with the Proponents. Holders of Interests in Second Street Properties (Class 7) will receive new

Interests in Reorganized Second Street Properties.  Holders of Interests in Berkeley Properties (Class 8) will retain their Interests, which will be governed by a new Amended and Restated Operating Agreement.  Note that Second Street Properties is the Holder of 100% of the Interests in Berkeley Properties.

Until the Holders of Class 5 and Class 6 Claims are repaid in full with interest at the Legal Rate, the Debtors' businesses and their obligations under this Plan will be run primarily by a Plan Administrator to be identified in the notice of hearing on confirmation of this Plan (the "Confirmation Hearing Notice").  If the Plan Administrator is an individual, the Plan Administrator will be the sole officer and one of the three directors of Second Street Properties, and shall select the other two directors, whose identities will also be revealed in the Confirmation Hearing Notice.  If the Plan Administrator is a corporate entity, the Plan Administrator will select one of its members, officers, employees or agents to be the sole officer and one of three directors of Second Street Properties, and shall also select the other two directors, all of whose identities will be revealed in the Confirmation Hearing Notice.  The Plan Administrator will be subject to the oversight of the Post-Confirmation Committee as provided herein.  Also, until the Holders of Class 5 and Class 6 Claims are repaid in full with interest at the Legal Rate, the Interests in Reorganized Second Street Properties granted to Holders of Interests in Class 7 will be subject to an irrevocable proxy that gives all voting and approval rights to the Post-Confirmation Committee.  Once the Holders of Class 5 and Class 6 Claims are repaid in full with interest at the Legal Rate, the proxy shall terminate.

## II.

## DEFINITIONS AND INTERPRETATION

For purposes of this Plan and the Disclosure Statement, unless the context requires otherwise, the following terms shall have the respective meanings set forth below, whether or not inconsistent with the definitions contained in the Bankruptcy Code or Bankruptcy Rules.  Any term used in this Plan or the Disclosure Statement that is not defined herein, but that is defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

## A. Definitions

1. "*Administrative Expense Claim*" means any Claim for a cost or expense of administration under Bankruptcy Code sections 503(b) and 507(a)(2), including, without limitation: any actual and necessary costs and expenses of preserving and administering the Debtors' Estates, all allowances of compensation and reimbursement of costs and expenses to Professionals, as approved by a Final Order of the Bankruptcy Court, and any fees or charges assessed against the Debtors' Estates under section 1930 of Title 28 of the United States Code.

2. "*Administrative Reserve*" means, for each Estate, Cash reserved for the payment of Allowed Administrative Expense Claims to the Effective Date and for administration of the Debtors after the Effective Date, including payment of the reasonable and necessary projected costs to carry out the provisions of the Plan on and after the Effective Date, payment of professional fees and costs on and after the Effective Date, and payment of all other amounts required to pursue Causes of Action and manage and/or liquidate the Estate Assets on and after the Effective Date, including without limitation, such reserves for taxes, assessments and other expenses of administration of the Debtors as may be necessary and appropriate. The Administrative Reserve shall be in an amount to be determined by the Plan Administrator, in consultation with the Post-Confirmation Committee as provided under Section VIII.D.8 of the Plan.

3. "*Allowed*" when used in reference to a Claim means,

    a.    any Claim, proof of which was filed on or before the Bar Date, as to which no objection has been interposed;

    b.    any Claim as to which no proof has been filed, but that has been listed in the Debtors' Schedules (as such Schedules may be amended from time to time in accordance with the Bankruptcy Rules) as liquidated in amount in an amount greater than zero and not disputed or contingent, as to which no objection has been interposed;

    c.    any Claim as to which any objection has been interposed, to the extent such Claim has been allowed in whole or in part by a Final Order of the Bankruptcy Court; provided, however, that Claims allowed solely for the purpose of voting to accept or reject

SMRH:434670320.11

the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" Claims hereunder; or

d.      any Claim that is compromised, settled or otherwise resolved pursuant to authority granted by a Final Order of the Bankruptcy Court.

Unless otherwise specified herein, or by Final Order of the Bankruptcy Court, an "Allowed" Claim shall not include interest on such Claim for the period from and after the Petition Date.  Multiple Proofs of Claim of the same Class filed by a Claim Holder shall be aggregated and shall constitute a single Claim. Any portion of a Claim that is satisfied or released during the Bankruptcy Cases is not an Allowed Claim. Nothing in this Plan shall prevent the Debtors from objecting to Claims after the Effective Date.

4.      *"Amended and Restated Bylaws"* means the Amended and Restated Bylaws governing Reorganized Second Street Properties, to be attached to the Plan Supplement, and to become effective on the Effective Date pursuant to Section VIII.A of this Plan.

5.      *"Amended and Restated Operating Agreement"* means the Amended and Restated Operating Agreement governing Reorganized Berkeley Properties, to be attached to the Plan Supplement, and to become effective on the Effective Date pursuant to Section VIII.A of this Plan.

6.      "*Avoidance Actions*" means any actions commenced or that may be commenced before or after the Effective Date arising under Bankruptcy Code sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553, or under related state, federal, or foreign statutes and common law, including, without limitation fraudulent transfer laws, whether or not litigation is commenced to prosecute such actions.

7.      "*Bankruptcy Case(s)*" means the Chapter 11 bankruptcy cases of the Debtors, styled as *In re Second Street Properties, f/k/a Pacific Steel Casting Company,* Case No. 14-41045-RLE, and *In re Berkeley Properties, LLC,* Case No. 14-41048-RLE, which cases are jointly administered under Case No. 14-41045-RLE pursuant to the Order entered by the Bankruptcy Court on March 13, 2014.

8.      "*Bankruptcy Code*" means title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Case.

SMRH:434670320.11
00414541

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 8 of 61

9. "***Bankruptcy Court***" means the United States Bankruptcy Court for the Northern District of California having jurisdiction over the Bankruptcy Case or any other court with jurisdiction over the Bankruptcy Cases.

10. "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure and any Local Rules of the Bankruptcy Court, as amended from time to time, as applicable to the Bankruptcy Cases.

11. "***Bar Date***" means July 14, 2014, the last date for filing Proofs of Claim (other than Administrative Expense Claims and Claims by governmental units) against the Debtors as fixed by the notice disseminated by the Bankruptcy Court on March 27, 2014.

12. "***Berkeley Deed of Trust***" has the meaning ascribed to it in Section VI.D.2 of this Plan. As provided in said Section VI.D.2, the Berkeley Deed of Trust shall be in the form attached to the Plan Supplement.

13. "***Berkeley Properties***" means Berkeley Properties, LLC, a California limited liability company, debtor and debtor-in-possession in Bankruptcy Case No. 14-41048.

14. "***Berkeley Real Property***" means the real property owned by Berkeley Properties, LLC, commonly known as 640 Gilman Street, 1310 3rd Street, 1333 2nd Street, 1305 Eastshore Highway, 1314 2nd Street, 1320 2nd Street, 1401 Eastshore Highway, 1420 2nd Street, 1421 2nd Street, and 648 Page Street, Berkeley, CA, and as described in greater detail in the Berkeley Deed of Trust.

15. "***Business Day***" means any day that is not a Saturday, Sunday or legal holiday as identified in Bankruptcy Rule 9006.

16. "***Cash***" means legal tender of the United States of America and equivalents thereof, including without limitation, bank deposits, checks, and other similar items.

17. "***Causes of Action***" means, without limitation, any and all actions, causes of action, choses in action, controversies, liabilities, obligations, rights, suits, claims for rebates, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, agreements, promises, variances, trespasses, damages, judgments, claims, third-party claims, counter-claims, cross-claims and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or

SMRH:434670320.11
00474541.5

unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or otherwise which have been or may be commenced by the Debtors or the Debtors' Estates. "Causes of Action" include, but are not limited to, all objections to Claims, all adversary proceedings, all Avoidance Actions and any objection to or action to recharacterize or subordinate (whether by law or equity) any Claim. "Causes of Action" also include, without limitation, all Claims and Causes of Action against the Debtors' current and former directors, officers, employees, and management. "Causes of Action" also include, without limitation, all Claims and Avoidance Actions against any Person identified on the Statement of Financial Affairs of each of the Debtors as a recipient of a payment made or property transferred by or on behalf of one of the Debtors prior to the Petition Date.

18.     "*Claim*" means a claim, as that term is defined under Bankruptcy Code section 101(5), against either of the Debtors or their Estates.

19.     "*Claim Objection Deadline*" means one hundred and twenty (120) days after the Effective Date, provided however that the Bankruptcy Court may extend the Claim Objection Deadline for good cause upon a motion filed by the Plan Administrator, the Post-Confirmation Committee, or any Holder of Class 7 Interests in Second Street Properties before the currently applicable Claim Objection Deadline.  The filing of such a motion before the currently applicable Claim Objection Deadline shall have the effect of automatically extending the Claim Objection Deadline to a date that is 15 days after the entry of an order disposing of such a motion.

20.     "*Class*" means a category of substantially similar Allowed Claims or Interests as established pursuant to the Plan, as such term is used and described in Bankruptcy Code sections 1122 and 1123(a)(1).

21.     "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

22.     "*Confirmation Hearing Notice*" has the meaning ascribed to it in Section I of this Plan – *i.e.*, the notice of hearing on confirmation of this Plan.

23. "*Confirmation Order*" means the order of the Bankruptcy Court confirming and approving the Plan in accordance with the Bankruptcy Code and approving the actions contemplated herein.

24. "*CraneTech Adversary Proceeding*" means the adversary proceeding filed by Berkeley Properties against CraneTech, Inc. and United Rentals (North America) Inc., pending in the Bankruptcy Court as Adversary Proceeding No. 14-04032.

25. "*Debtors*" means, collectively, Second Street Properties and Berkeley Properties, debtors and debtors-in-possession in the Bankruptcy Cases.

26. "*Disbursing Agent*" means the Plan Administrator, or any Entities or Persons chosen by the Plan Administrator to make or facilitate distributions pursuant to the Plan.

27. "*Disclosure Statement*" means that certain disclosure statement relating to the Plan, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

28. "*Disputed*" means any Claim, other than an Administrative Expense Claim, as to which an objection has been filed and which objection has not been withdrawn or resolved by the entry of a Final Order.

29. "*Disputed Claims Reserve(s)*" means Cash reserved in each Estate to satisfy Disputed Claims in said Estate in the event that a Disputed Claim becomes an Allowed Claim entitled to distribution under the Plan. Except to the extent that the Bankruptcy Court shall have estimated under section 502(c) of the Bankruptcy Code or otherwise determined that a good and sufficient reserve for Disputed Claims is less than the full amount thereof, the Disputed Claims Reserve(s) shall be in an amount to be determined by the Plan Administrator, in consultation with the Post-Confirmation Committee as provided under Section VIII.D.8 of the Plan, which would have been distributed on account of all Disputed Claims if all Disputed Claims were allowed in the full amount claimed by the Holders thereof as of the Effective Date.

30. "*Disputed CraneTech Claims*" means, collectively, the Claims asserted by CraneTech, Inc. as Claim Nos. 189 and 190, and any other claims that may be filed by CraneTech.

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 11 of 61

31. "*Effective Date*" means the first (1st) Business Day following the date on which each of the conditions to effectiveness of the Plan set forth in Article X of this Plan have been satisfied or waived.

32. "*Estate*" or "*Estates*" means, individually or collectively, the Debtors' bankruptcy estates created upon commencement of the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code.

33. "*Estate Assets*" means all of the property of the Debtors and their respective Estates, including, without limitation (a) all tangible and intangible assets of every kind and nature, including Causes of Action, and all proceeds thereof, existing as of the Effective Date and thereafter, (b) all property treated by the Plan, and (c) all books and records of the Debtors, including any attorney-client privilege, work-product privilege or other privilege or immunity in connection therewith, which shall automatically vest in the Reorganized Debtors on the Effective Date pursuant to the terms of the Plan.

34. "*Entity*" means entity, as that term is defined under Bankruptcy Code section 101(15).

35. "*FEIN*" means federal tax identification number.

36. "*Final Order*" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) which has not been reversed, stayed, modified or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or *certiorari* has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) *provided* the appellant has posted a bond that is adequate to protect the interests of the Estate(s) pending the duration of any such appeal or petition, as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

37. "*General Unsecured Claim*" means any Claim against either of the Debtor's Estates that is not (a) an Administrative Expense Claim, (b) a Priority Tax Claim, (c) a Priority Non-Tax Claim, (d) the Disputed CraneTech Claims (unless the Disputed CraneTech Claims are Allowed as General Unsecured Claims against either Estate pursuant to a Final Order); (e) the

Local 164B Claim, or (f) otherwise classified and treated under this Plan. For the avoidance of doubt, the term "General Unsecured Claim" shall include, without limitation, any Claim against either of the Debtor's Estates arising under Section 502(h) of the Bankruptcy Code.

38. "*Holder*" means an Entity or Person holding a Claim or Interest.

39. "*Initial Distribution Date*" means a Business Day, as determined by the Plan Administrator, in consultation with the Post-Confirmation Committee as provided under Section VIII.D.8 of the Plan, as soon as reasonable and practicable after the Effective Date, but in any event, no later than ninety (90) calendar days after the Effective Date, for the distribution of the Initial Distributable Second Street Properties Cash and the Initial Distributable Berkeley Properties Cash to Holders of Allowed Claims against each Estate pursuant to the terms of the Plan.

40. "*Initial Distributable Cash*" means, for each of the Debtors' Estates, all of the Estate Assets of each Estate in the form of Cash, including (a) Cash held by each Debtor as of the Petition Date, (b) Cash realized from the sale or disposition of each Debtor's assets prior to the Effective Date, (c) the interest earned on invested funds, and (d) recoveries from any of the Causes of Action held by each Debtor or from any other source or otherwise prior to the Effective Date; *less* the amount of Cash estimated and reserved for the Administrative Reserve and the Disputed Claims Reserve established with respect to each Debtor's Estate. For the avoidance of doubt, the Speyside Sale Proceeds constitute Initial Distributable Cash for the Estate of Second Street Properties only, and do not constitute Initial Distributable Cash for the Estate of Berkeley Properties. Notwithstanding the foregoing, the security deposit held by Berkeley Properties under the lease of the Berkeley Real Property shall be reserved pursuant to the terms of said lease, and shall not constitute Initial Distributable Cash.

41. "*Insider*" means insider, as that term is defined under Bankruptcy Code section 101(31) and applicable case law.

42. "*Interest*" means any ownership interest in the Debtors, as of the Petition Date, including, but not limited to, an interest in any issued, unissued, authorized or outstanding shares

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 13 of 61

or stock and other equity security of the Debtors together with any warrants, options or contractual rights to purchase or acquire such interests at any time and all rights arising with respect thereto.

43. "*Legal Rate*" means the greater of: (a) the interest rate, as of the Effective Date, allowed on judgments entered in federal courts under 28 U.S.C. § 1961(a), which is the weekly average 1-year constant maturity (nominal) Treasury yield, as published by the Federal Reserve System, and which was .20%; as of the date of the filing of this Plan; or (b) the contractual rate of interest applicable to any Allowed Claim.

44. "*Local 164B*" means the CMTA – Glass, Molders, Pottery, Plastics & Allied Workers (Local 164B) Pension Trust.

45. "*Local 164B Claim*" means the contingent Claim in the amount of $26,702,858 filed by Local 164B for potential withdrawal liability as Claim No. 170 on the claims register in the Bankruptcy Cases.

46. "*Miscellaneous Secured Claim*" means a Secured Claim that has not been released or satisfied prior to the Effective Date.

47. "*New Pacific Steel*" means Pacific Steel Casting Company, LLC, the buyer and designee of Speyside in the Speyside Sale, and the entity operating Second Street Properties' former steel casting business.

48. "*Pacific Steel Lease*" means the lease of the Berkeley Real Property by Berkeley Properties to New Pacific Steel pursuant to that certain AIR Commercial Real Estate Association Standard Industrial/Commercial Single-Tenant Lease – Net, dated August 29, 2014, by and between Berkeley Properties and New Pacific Steel.

49. "*Person*" means person, as that term is defined under Bankruptcy Code section 101(41), including an individual, corporation, limited liability company, partnership or foreign business entity.

50. "*Petition Date*" means March 10, 2014.

51. "*Periodic Distribution Date(s)*" means the date(s) after the Initial Distribution Date which shall occur (a) after the first Business Day occurring ninety (90) calendar days after the immediately preceding distribution date or (b) on such other Business Day selected by the Plan

SMRH:434670320.11
JOINT CHAPTER 11 PLAN OF REORGANIZATION

Administrator, in consultation with the Post-Confirmation Committee as provided under Section VIII.D.8 of the Plan, for the distribution of Periodic Distributable Cash to Holders of Allowed Claims.

52. "*Periodic Distributable Cash*" means the net proceeds derived from the liquidation and monetization of all of the Estate Assets for each Debtor's Estate (including all Causes of Action), after (a) payment of Allowed Administrative Expense Claims and Priority Tax Claims pursuant to Section IV of the Plan; (b) payment of Allowed Class 1 Claims and partial payment of Allowed Class 5 and Class 6 Claims on the Initial Distribution Date pursuant to Section VI of the Plan; and (c) reserving funds for the Administrative Reserve and Disputed Claim Reserve in each Estate, in amounts to be determined by the Plan Administrator, in consultation with the Post-Confirmation Committee as provided under Section VIII.D.8 of the Plan.

53. "*Plan*" means this Chapter 11 Plan of Reorganization, including all exhibits and schedules attached hereto or otherwise incorporated herein, either in its present form or as it may be altered, amended, modified, revised or supplemented from time to time.

54. "*Plan Administrator*" means the Person appointed to fill the role of Plan Administrator Under the Plan, as described in Section VIII.D of the Plan.

55. "*Plan Supplement*" means the supplement to this Plan filed by the Proponents by May 29, 2015 that attaches the Amended and Restated Bylaws, the Amended and Restated Operating Agreement, and the Berkeley Deed of Trust.

56. "*Post-Confirmation Committee*" means the group of individuals, comprised of members of the Official Committee of Unsecured Creditors, who choose to serve on the Post-Confirmation Committee described in Section VIII.E of this Plan.

57. "*Priority Non-Tax Claim*" means a Claim (or portion of such Claim) entitled to priority under Bankruptcy Code section 507(a)(1), (a)(3), (a)(4), (a)(5), (a)(6), (a)(7), (a)(9), or (a)(10) of the Bankruptcy Code.

58. "*Priority Tax Claim*" means a Claim entitled to priority under Bankruptcy Code section 507(a)(8).

SMRH:434670320.11

JOINT CHAPTER 11 PLAN OF REORGANIZATION

59.     "*Professional*" means any professional retained, employed or to be compensated in the Bankruptcy Case pursuant to Bankruptcy Code sections 327, 328, 330, 331 and/or 1103.

60.     "*Proof of Claim*" means a proof of Claim filed against the Debtors in the Bankruptcy Cases.

61.     "*Pro Rata*" means proportionately so that the ratio of the amount of the distribution made on account of a particular Allowed Claim to the distributions made on account of all Allowed Claims of the Class in which the particular Allowed Claim is included is the same as the ratio of the amount of such particular Allowed Claim to the total amount of Allowed Claims of the Class of which such particular Allowed Claim is included.

62.     "*Record Date*" means the Confirmation Date.

63.     "*Reorganized Berkeley Properties*" shall mean Berkeley Properties, from and after the Effective Date, pursuant to the Amended and Restated Operating Agreement.  All references to Berkeley Properties after the Effective Date shall be deemed to be references to Reorganized Berkeley Properties unless the context requires otherwise or unless otherwise stated.

64.     "*Reorganized Debtors*" shall mean, collectively, Reorganized Berkeley Properties and Reorganized Second Street Properties.  All references to the Debtors after the Effective Date shall be deemed to be references to the Reorganized Debtors unless the context requires otherwise or unless otherwise stated.

65.     "*Reorganized Second Street Properties*" shall Second Street Properties, from and after the Effective Date, pursuant to the Amended and Restated Bylaws.  All references to Second Street Properties after the Effective Date shall be deemed to be references to Reorganized Second Street Properties unless the context requires otherwise or unless otherwise stated.

66.     "*Schedules*" means those certain schedules of assets and liabilities and the statements of financial affairs filed by each of the Debtors pursuant to Bankruptcy Code section 521 and Bankruptcy Rule 1007, including any supplements or amendments thereto.

67.     "*Second Street Properties*" means Second Street Properties, a California corporation, f/k/a Pacific Steel Casting Company, debtor and debtor-in-possession in Bankruptcy Case No. 14-41045.

SMRH:434670320.11

JOINT CHAPTER 11 PLAN OF REORGANIZATION

68.    *"Secured Claim"* means a Claim against either Debtor's Estate secured by a valid, perfected and enforceable lien that is not subject to avoidance under bankruptcy or non-bankruptcy law, equal to the lesser of: (a) the Allowed amount of such Claim; or (b) the value, as determined by the Bankruptcy Court pursuant to Sections 506(a) and 1129(b) of the Bankruptcy Code and Bankruptcy Rule 3012, of: (i) the interest of the holder of such Claim in the property of the relevant Estate securing such Claim, or (ii) the amount subject to setoff under Section 553 of the Bankruptcy Code.

69.    *"Speyside Sale"* means Bankruptcy Court-approved sale of substantially all of the operating assets of Second Street Properties to New Pacific Steel, the designee of Speyside Funding, LLC, which sale closed on August 29, 2014.

70.    *"Speyside Sale Proceeds"* means the proceeds paid to Second Street Properties pursuant to the Speyside Sale.

71.    *"SSN"* means social security number.

72.    *"Substantial Consummation"* means substantial consummation of the Plan under Section 1101(2) of the Bankruptcy Code, which shall occur once all of the following conditions are satisfied: (i) all adversary proceedings and claim objections are either consensually resolved or finally adjudicated; and (ii) the Plan Administrator has made an initial distribution to creditors under the terms of this Plan.

73.    *"Unclaimed Distributions"* means any distributions that are unclaimed one hundred and twenty (120) calendar days following the date of distribution, including checks (and the funds represented thereby) which have been returned as undeliverable.

74.    *"Unsecured Deficiency Claim"* means a Claim by a Person holding a Secured Claim to the extent the value of such Creditor's collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, is less than the Allowed amount of such Creditor's Claim as of the Petition Date, after taking into account any election made pursuant to Section 1111(b) of the Bankruptcy Code.

SMRH:434670320.11

JOINT CHAPTER 11 PLAN OF
REORGANIZATION

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 17 of
61

**B.      Rules of Interpretation**

The words "herein," "hereof," "hereto," and "hereunder" and other words of similar import refer to the Plan or Disclosure Statement as a whole and not to any particular section, subsection or clause contained in this Plan or Disclosure Statement, unless the context requires otherwise.

Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine and the neuter.

Any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

Any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it is or may be further amended, modified or supplemented. If the Plan's description of the terms of an exhibit is inconsistent with the terms of the exhibit, the terms of the exhibit shall control.

The section headings and captions to articles, sections and subsections herein are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan or the Disclosure Statement.

The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with any other provision in this subsection.

In computing any period of time prescribed or allowed by the Plan or Disclosure Statement, the provisions of Bankruptcy Rule 9006 shall apply.

**III.**

**NO CONSOLIDATION OF THE DEBTORS' ESTATES; EFFECT OF PARENT-SUBSIDIARY RELATIONSHIP**

This Plan does not provide for any substantive consolidation of the Debtors' Estates. Claims against Second Street Properties shall be satisfied by the assets of Second Street Properties, and Claims against Berkeley Properties shall be satisfied by the assets of Berkeley Properties.  Note however that because Berkeley Properties is a wholly owned subsidiary of

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 18 of
61

Second Street Properties, once the Claims against Berkeley Properties are satisfied, the proceeds produced by the assets of Berkeley Properties (including, without limitation, the rental payments made to Berkeley Properties for use of the Berkeley Real Estate) shall be distributed to Second Street Properties, as Holder of 100% of the Interests in Berkeley Properties, and sole member of Class 8. Once such proceeds are distributed to Second Street Properties, they shall become assets of the Second Street Properties Estate and shall be used to satisfy Claims against and Interests in Second Street Properties in the manner set forth in this Plan.

# IV.

## TREATMENT OF UNCLASSIFIED CLAIMS

**A.      Administrative Expense Claims**

As provided under Bankruptcy Code section 1123(a)(1), Administrative Expense Claims are not classified for purposes of voting on, or receiving distributions under, the Plan. Accordingly, holders of Administrative Expense Claims are not entitled to vote on this Plan.

To the extent that Allowed Administrative Expense Claims have not already been paid, satisfied or otherwise released prior to the Effective Date, and except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive Cash from either the Estate of Second Street Properties or the Estate of Berkeley Properties in an amount equal to such Allowed Claim, in full and final satisfaction, settlement and release and in exchange for such Claim, on the later of the Effective Date or the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim pursuant to a Final Order of the Bankruptcy Court, or as soon thereafter as reasonably practicable.

1.      Applicable Bar Dates for Administrative Expense Claims

Except for applications for payment by Professionals under the Bankruptcy Code and fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930, all requests for payment of outstanding Administrative Expense Claims incurred from the Petition Date through August 29, 2014 were required to be filed and served by no later than October 31, 2014, as set forth in the Order of the Bankruptcy Court entered on September 16, 2014 as Docket No. 329.

SMRH:434670320.11

JOINT CHAPTER 11 PLAN OF REORGANIZATION

Case: 14-41045      Doc# 535      Filed: 04/30/15      Entered: 04/30/15 13:58:02      Page 19 of 61

Except for applications for payment by Professionals under the Bankruptcy Code and fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930, and except for taxes that arise after the Petition Date (which shall be paid as and when they come due), all requests for payment of outstanding Administrative Expense Claims incurred from August 30, 2014 through the Effective Date shall be filed and served on the Plan Administrator no later than thirty (30) calendar days after the Effective Date.

2.    Professional Fees

All Professionals seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement for expenses incurred through and including the Effective Date in accordance with section 503(b) of the Bankruptcy Code, to the extent not already paid as a result of interim applications for such payment, shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than that date that is thirty (30) calendar days after the Effective Date or such other date as may be fixed by the Bankruptcy Court. Such Professional fee and expense Claims shall be paid in full in such amounts as are Allowed by the Bankruptcy Court (i) on the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable, or (ii) upon such other terms as may be mutually agreed upon by such Holder of an Administrative Expense Claim and the Plan Administrator.

3.    Statutory U.S. Trustee Fees

All United States Trustee fees payable by each Estate pursuant to 28 U.S.C. § 1930 shall be paid in full by each Estate in accordance with the Plan without the need for the Office of the United States Trustee to file any request for payment.

**C.    Priority Tax Claims**

As provided under Bankruptcy Code section 1123(a)(1), Priority Tax Claims are not classified for purposes of voting on, or receiving distributions under, the Plan. Accordingly, holders of Priority Tax Claims are not entitled to vote on this Plan.

To the extent that Allowed Priority Claims have not already been paid, satisfied or otherwise released prior to the Effective Date, and except to the extent that a Holder of an Allowed

Priority Tax Claim agrees to a different treatment, on the later of the Effective Date or the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is reasonably practicable, the Trustee shall pay to each Holder of an Allowed Priority Tax Claim, in full and final satisfaction, settlement and release and in exchange for such Claim, an amount in Cash equal to the unpaid amount of such Allowed Priority Tax Claim plus any interest that may be owing under Bankruptcy Code section 511, from either the assets of the Estate of Second Street Properties or the assets of the Estate of Berkeley Properties.

## V.

## CLASSIFICATION OF CLAIMS AND INTERESTS

**A.      Summary of Classification.**

This Plan is intended to address all Claims and Interests against the Debtors and any property or assets of the Debtors or their Estates, of whatever character. Claims and Interests, other than Administrative Expense Claims and Priority Tax Claims, are classified for all purposes including voting (unless otherwise specified), confirmation and distribution pursuant to the Plan as set forth below.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released or otherwise satisfied prior to the Effective Date. Multiple Proofs of Claim filed by a Claim Holder which qualify for inclusion within the same Class shall be aggregated, and if Allowed, shall constitute a single Allowed Claim.

**B.      Classes Under the Plan.**

| Class 1 | Priority Non-Tax Claims | Unimpaired, deemed to accept |
|---|---|---|
| Class 2 | Miscellaneous Secured Claims (each secured creditor in a separate class identified as Class 2A, 2B, etc.) | Unimpaired, deemed to accept |

SMRH:434670320.11
Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 21 of
61
JOINT CHAPTER 11 PLAN OF
REORGANIZATION

| Class 3 | Disputed CraneTech Claims | Unimpaired, deemed to accept |
| Class 4 | Local 164B Claim | Impaired, entitled to vote, but have consented to treatment by settlement |
| Class 5 | General Unsecured Claims Against Berkeley Properties | Impaired, entitled to vote |
| Class 6 | General Unsecured Claims Against Second Street Properties | Impaired, entitled to vote |
| Class 7 | Interests in Second Street Properties | Impaired, entitled to vote |
| Class 8 | Interests in Berkeley Properties | Unimpaired, not entitled to vote |

# VI.

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**A.    Class 1 – Priority Non-Tax Claims.**

1.    _Impairment and Voting._

Class 1 is unimpaired.  Holders of Priority Non-Tax Claims are deemed to have accepted this Plan under Bankruptcy Code section 1126(f) and are not entitled to vote on the Plan.

2.    _Treatment._

Each Holder of an Allowed Class 1 Claim, unless otherwise mutually agreed upon by the Holder of such Claim and the Debtor, will receive Cash in an amount equal to such Allowed Class 1 Claim on the later of (a) the Initial Distribution Date, or (b) the date such Claim becomes an Allowed Claim pursuant to a Final Order, or as soon thereafter as is practicable, from either the Estate of Second Street Properties or the Estate of Berkeley Properties, as applicable.

**B.    Class 2 – Miscellaneous Secured Claims.**

1.    _Impairment and Voting._

Class 2 is unimpaired under the Plan. Holders of Miscellaneous Secured Claims are deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.  For purposes of distributions under the Plan, each holder of a Miscellaneous Secured Claim in Class 2 is considered to be in its own separate subclass within Class 2, and each such subclass is deemed to be a separate Class for purposes of the Plan.

2.      Alternative Treatment.

On the Initial Distribution Date, the Plan Administrator shall select one of the following alternative treatments for each Allowed Miscellaneous Secured Claim in Class 2, which treatment shall be in full and final satisfaction, settlement, release, and discharge of, and exchange for, such Allowed Miscellaneous Secured Claim:

a.      *Abandonment or Surrender.*

The Plan Administrator will abandon or surrender to the holder of such Claim the property securing such Claim, in full satisfaction and release of such Claim.

b.      *Cash Payment.*

The Plan Administrator will pay to the holder of such Claim Cash equal to the amount of such Claim, or such lesser amount to which the holder of such Claim shall agree, in full satisfaction and release of such Claim, from either the assets of the Estate of Second Street Properties or the assets of the Estate of Berkeley Properties, as applicable.

c.      *Unimpairment.*

The Plan Administrator will leave the rights of the holder of such Claim unimpaired or provide for such other treatment as necessary to otherwise satisfy the requirements of the Bankruptcy Code.

3.      Unsecured Deficiency Claim.

Any Unsecured Deficiency Claim asserted by a Holder of an Allowed Miscellaneous Secured Claim in Class 2 shall be filed with the Bankruptcy Court within thirty (30) days following the date of the abandonment or surrender of such Creditor's collateral or such Creditor's receipt of its distribution under the Plan.  Any such Allowed Unsecured Deficiency Claim shall be treated as a Class 5 General Unsecured Claim against Berkeley Properties or a Class 6 General Unsecured Claim against Second Street Properties, as applicable.

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 23 of
61

**C.**     **Class 3 – Disputed CraneTech Claims.**

    1.    <u>Impairment and Voting.</u>

Class 3 is unimpaired under the Plan. The Holder of the Disputed CraneTech Claims is deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and is not entitled to vote on the Plan.

    2.    <u>Initial Treatment of Claim.</u>

The Class 3 Disputed CraneTech Claims are not Allowed as the validity and priority of their asserted status as secured claims is subject to the CraneTech Adversary Proceeding. Unless and until a Final Order is entered allowing the Disputed CraneTech Claims in any amount, the Plan Administrator shall reserve for the Disputed CraneTech Claims as if they were Class 5 General Unsecured Claims Against Berkeley Properties, as provided in Section VIII.I.2 of the Plan.

    3.    <u>Treatment if Claim is Allowed by a Final Order.</u>

If the Bankruptcy Court enters a Final Order allowing the Disputed CraneTech Claims as Secured Claims, then the Plan Administrator shall pay to the holder of such Claims Cash equal to the amount of such Claims, or such lesser amount to which the Holder of such Claims shall agree, in full satisfaction and release of such Claims, from either the assets of the Estate of Second Street Properties or the assets of the Estate of Berkeley Properties, as applicable.

If the Bankruptcy Court enters a Final Order allowing the Disputed CraneTech Claims but only as General Unsecured Claims against either or both Estates, then the Disputed CraneTech Claims shall receive the treatment provided in this Article VI of the Plan for an Allowed General Unsecured Claim against the relevant Estate or Estates.

If the Disputed CraneTech Claims are Allowed, either as Secured Claims or General Unsecured Claims, they shall be limited to one recovery from the Debtors' Estates. In other words, the same Claim asserted against each Estate shall receive a distribution from only one Estate.

SMRH:434670320.11

JOINT CHAPTER 11 PLAN OF
REORGANIZATION

Case: 14-41045   Doc# 535   Filed: 04/30/15   Entered: 04/30/15 13:58:02   Page 24 of
61

**D. Class 4 – Local 164B Claim.**

    **1.** <u>Impairment and Voting</u>.

Class 4, which is comprised of the Local 164B Claim, is impaired under the Plan. The Holder of the Local 164B Claim is entitled to vote on the Plan, however the Holder of the Local 164B Claim has consented to its Claim's treatment in this Plan as described below.

    **2.** <u>Treatment</u>.

The Proponents and Local 164B have reached an agreement on the treatment of the Local 164B Claim, which is as follows. On the Effective Date, the Plan Administrator on behalf of Berkeley Properties shall execute a deed of trust (the "Berkeley Deed of Trust") that encumbers the Berkeley Real Property and secures payment of the contingent Local 164B Claim in the full amount asserted by Local 164B – *i.e.*, $26,702,858. The Berkeley Deed of Trust shall be in the form attached to the Plan Supplement. If (a) New Pacific Steel has not completely or partially withdrawn from Local 164B before July 1, 2020, or (b) New Pacific Steel has completely or partially withdrawn from Local 164B before July 1, 2020, and has completely satisfied all resulting withdrawal liability obligations to Local 164B when and as due, then, no later than 60 days following the occurrence of either (a) or (b) above, Local 164B shall execute and deliver to the Plan Administrator a substitution of trustee and full reconveyance that reconveys the Berkeley Deed of Trust.

If New Pacific Steel completely or partially withdraws from Local 164B before July 1, 2020, then Local 164B shall promptly deliver written notice of the same to the Plan Administrator accompanied by notice of Local 164B's calculation of the amount of the withdrawal liability of Second Street Properties that may be triggered under ERISA § 4204, 29 U.S.C. §§ 1384 (and such notice shall satisfy any notice requirement to the Plan Administrator under ERISA § 4219(b), 29 U.S.C. § 1399(b)). Thereafter, the Plan Administrator may request review of and contest Local 164B's calculation of the amount of Second Street Properties' withdrawal liability that may be triggered in accordance with ERISA §§ 4219(b) and 4221, 29 U.S.C. §§ 1399(b) and 1401. Except as provided in the preceding sentence and notwithstanding any other provision hereof, neither the Plan Administrator, the Post-Confirmation Committee, nor any other party may, or

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 25 of 61

shall have standing to, file or prosecute any objection to, seek review or reconsideration of, or request estimation of the Local 164B Claim. If the withdrawal liability is uncontested and/or confirmed through the dispute resolution procedures of ERISA § 4221, 29 U.S.C. § 1401, then the Local 164B Claim shall be an Allowed Claim.

If New Pacific Steel, following a complete or partial withdrawal from Local 164B that occurs prior to July 1, 2020, fails to make any withdrawal liability payment when and as due, and such failure to pay is not cured by New Pacific Steel or the Plan Administrator in the 60-day period following receipt of written notification as provided in ERISA § 4219(c)(5)(A), 29 U.S.C. § 1399(c)(5); and the Plan Administrator subsequently fails to pay said Allowed Local 164B Claim as and when provided by law or the parties' agreement, then Local 164B shall become entitled to exercise any and all remedies available to it under the Berkeley Deed of Trust, including foreclosing on the Berkeley Real Property pursuant to the power of sale in the Berkeley Deed of Trust.

In the event that Local 164B conducts a non-judicial foreclosure on the Berkeley Real Property in order to collect on the Local 164B Claim, Local 164B shall not be entitled to any Claim against either Estate for any deficiency. Such a deficiency claim shall be deemed fully and finally waived as of the date title to the Berkeley Real Property passes pursuant to such a non-judicial foreclosure sale. The Berkeley Deed of Trust and the foregoing provisions regarding the Berkeley Deed of Trust shall constitute the sole source of recovery against either Estate for the Local 164B Claim. Local 164B also waives any and all existing or potential future claims for partial or complete withdrawal liability against the Class 7 Interest Holders, to the extent such claims may arise under applicable non-bankruptcy law. For clarification, the distribution of the Initial Distributable Cash and the Periodic Distributable Cash made to holders of allowed Claims pursuant to the Plan from the payment of rents and other monies received during the term of this Plan shall not trigger withdrawal liability under ERISA because the Berkeley Deed of Trust satisfies the requirement for the posting of a bond under 29 U.S.C. § 1384(a)(3) and Local 164B consents thereto.

SMRH:434670320.11

**E.     Class 5 – General Unsecured Claims Against Berkeley Properties.**

  1. <u>Impairment and Voting.</u>

  Class 5 is impaired under the Plan.  Holders of General Unsecured Claims against Berkeley Properties are entitled to vote on the Plan.

  2. <u>Treatment.</u>

  On or as soon as practicable following the Effective Date, each Holder of such an Allowed General Unsecured Claim against Berkeley Properties shall receive a Pro Rata share of the Initial Distributable Cash of the Berkeley Properties Estate on the Initial Distribution Date and a Pro Rata share of the Periodic Distributable Cash of the Berkeley Properties Estate on such Periodic Distribution Dates as are established by the Plan Administrator.  As set forth in the definition of Initial Distributable Cash, no part of the Speyside Sale Proceeds constitutes the Initial Distributable Cash of the Berkeley Properties Estate.  To the extent there are sufficient funds with which to pay it, Holders of Allowed General Unsecured Claims against Berkeley Properties are entitled to interest at the Legal Rate.

**F.     Class 6 – General Unsecured Claims Against Second Street Properties.**

  1. <u>Impairment and Voting.</u>

  Class 6 is impaired under the Plan.  Holders of General Unsecured Claims against Second Street Properties are entitled to vote on the Plan.

  2. <u>Treatment.</u>

  On or as soon as practicable following the Effective Date, each Holder of such an Allowed General Unsecured Claim against Second Street Properties shall receive a Pro Rata share of the Initial Distributable Cash of the Second Street Properties Estate on the Initial Distribution Date and a Pro Rata share of the Periodic Distributable Cash of the Second Street Properties Estate on such Periodic Distribution Dates as are established by the Plan Administrator.  To the extent there are sufficient funds with which to pay it, Holders of Allowed General Unsecured Claims against Second Street Properties are entitled to interest at the Legal Rate.

**G.      Class 7 – Interests in Second Street Properties**

1.      Impairment and Voting.

Class 7 is impaired under the Plan.  Holders of Interests in this Class are entitled to vote on the Plan.

2.      Treatment.

Holders of Class 7 Interests in Second Street Properties shall receive common stock in Reorganized Second Street Properties in an amount equal to the common stock held by such Interest Holders on the Petition Date, as follows:

| Interest Holder | Security Class | Number of Shares and % of Issued and Outstanding Shares |
|---|---|---|
| CAMLEE CORPORATION<br>89 Alvarado Road<br>Berkeley, CA 94705 | Common | 27,000 shares, or 6.522% |
| DAVI ASSOCIATES<br>129 Sunnyglen Drive<br>Vallejo, CA 94591 | Common | 29,000 shares, or 7.004% |
| EMMERICHS ASSOCIATES<br>1674 Glazier Drive<br>Concord, CA 94521 | Common | 9,000 shares, or 2.174% |
| TRI-PACIFIC, INC.<br>85 Lakeside Drive<br>Corte Madera, CA 94925-1037 | Common | 340,000 shares or 82.126% |
| WESTRIDGE CAPITAL<br>89 Alvarado Road<br>Berkeley, CA 94705 | Common | 9,000 shares or 2.174% |

Such newly issued common stock shall be represented by stock certificates issued by the Plan Administrator on behalf of Reorganized Second Street Properties on the Effective Date. Stock certificates representing the pre-petition Interests held by such Holders on the Petition Date shall be deemed cancelled as of the Effective Date of the Plan.

Holders of Class Interests shall also receive a Pro Rata share of the Periodic Distributable Cash, if any, remaining after payment of Class 5 General Unsecured Claims against Berkeley Properties and Class 6 General Unsecured Claims Against Second Street Properties in full with interest at the Legal Rate.  Such distributions, if any, shall be made by the Plan Administrator on such Periodic Distribution Dates as are established by the Plan Administrator.  Among other things, such distributions to Holders of Class 7 Interests may include distributions from the

SMRH:434670320.11

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 28 of
61

proceeds of a sale of the Berkeley Real Property after such proceeds are used to satisfy all Class 5 General Unsecured Claims against Berkeley Properties and Class 6 General Unsecured Claims Against Second Street Properties in full with interest at the Legal Rate. The Plan Administrator shall also give advance written notice to Holders of Allowed Class 7 Interests prior to listing the Berkeley Real Property for sale.

Holders of Class 7 Interests shall be deemed to grant to the Post-Confirmation an irrevocable proxy to exercise all voting and approval rights represented by the Interests under the Debtors' organizational documents until such time as all Holders of Allowed Claims in Classes 5 and 6 are repaid in full with interest at the Legal Rate. Upon such repayment, the proxy shall be automatically revoked.

## H. Class 8 – Interests in Berkeley Properties

### 1. Impairment and Voting.

Class 8 is unimpaired under the Plan. Holders of Interests in this Class are deemed to accept the Plan.

### 2. Treatment.

Holders of Class 8 Interests in Berkeley Properties shall retain their Interests in Reorganized Berkeley Properties, which will be governed by an Amended and Restated Operating Agreement to be attached to the Plan Supplement. As described in Article III of this Plan, the sole Holder of Interests in Berkeley Properties is Second Street Properties. Thus, after the proceeds produced by the assets of Berkeley Properties are used to pay Holders of Allowed Class 5 Claims against Berkeley Properties, said proceeds will be used to make distributions to Holders of Allowed Class 6 Claims against Second Street Properties and Class 7 Interests in Second Street Properties in the manner described above.

## VII.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A. Assumption or Rejection

Subject to Bankruptcy Code section 365, unless expressly assumed under the Plan, all unexpired leases and executory contracts not previously assumed, assigned or rejected pursuant to

Final Order of the Bankruptcy Court entered prior to the Effective Date or not subject to a pending motion to assume, assign or reject filed with the Bankruptcy Court prior to the Effective Date shall be deemed rejected as of the Effective Date. Notwithstanding the foregoing, none of the Debtors' pre-petition worker's compensation insurance policies shall be deemed rejected by this Section VII.A of the Plan.

**B.     Claims Arising Out of Rejection**

Any Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Bankruptcy Court by no later than thirty (30) calendar days after the Effective Date. If no Proof of Claim is filed within such time period, it shall be conclusively presumed that no such Claim exists and will be forever barred from receiving a distribution from the Plan Administrator or the Debtors. Potential Claims arising from rejection under this section will be considered Disputed Claims for purposes of Plan implementation and calculation of the Disputed Claims Reserve for each Estate.

**VIII.**

**IMPLEMENTATION AND EXECUTION OF THE PLAN**

**A.     Funding the Plan**

The Plan is a reorganizing plan and shall be funded with the Cash on hand in each Debtor's Estate as of the Effective Date, including the Speyside Sale Proceeds, Cash received from New Pacific Steel under the Pacific Steel Lease, any Cash obtained from a sale of the Berkeley Real Property following the reconveyance of the Berkeley Deed of Trust, and/or Claims that may be recovered for the benefit of the Estates by the Plan Administrator.

**B.     Corporate Action.**

On the Effective Date and automatically and without further action, (i) each existing member of the board of directors of Second Street Properties will be deemed to have resigned, (ii) the Plan Administrator shall be appointed as Plan Administrator under the Plan, (iii) one nominee of the Plan Administrator will be appointed to serve as the sole officer, chairman of the board, and one of three directors of Second Street Properties, with the identity of said individual set forth in the Confirmation Hearing Notice (iv) two additional nominees of the Plan

Administrator will be appointed to serve as the second and third directors of Second Street Properties, whose identities will be set forth in the Confirmation Hearing Notice, (v) the Amended and Restated Bylaws for Second Street Properties shall become effective, (vi) the Amended and Restated Operating Agreement for Berkeley Properties shall become effective, and (vii) pursuant to California law, the Debtors shall be authorized and empowered to take all such actions and measures necessary to implement and administer the terms and conditions of the Plan.

The Amended and Restated Bylaws and the Amended and Restated Operating Agreement will each incorporate the terms of the Plan as necessary or appropriate and prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code.

**C.      Revesting.**

Except as otherwise provided for in the Plan or the Confirmation Order, on the Effective Date, without any further action, the each of the Reorganized Debtors will be vested with all of the Estate Assets held by such Debtor prior to the Effective Date, free and clear of all Claims, liens, interests, and other encumbrances, and shall have all of the powers of a corporation and limited liability company, as applicable, under applicable law.  As of the Effective Date, and except as provided in this Plan, the Reorganized Debtors may operate their business and use, acquire and dispose of property and settle and compromise claims or interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**D.      Plan Administrator.**

1.      Appointment, Removal, Duration of Appointment.

The appointment of the initial Plan Administrator identified in the Confirmation Hearing Notice shall become effective on the Effective Date.  Any successor Plan Administrator shall be appointed by the Post-Confirmation Committee.

If the Plan Administrator is an individual, the Plan Administrator shall serve as the sole officer of Reorganized Second Street Properties, one of Reorganized Second Street Properties' three directors and its chairman of the board.  If the Plan Administrator is a corporate entity, the Plan Administrator shall appoint one of its members, officers, employees, or agents to be the sole officer, chairman of the board, and one of the three directors of Reorganized Second Street

Properties, in addition to appointing the other two directors of Reorganized Second Street Properties. The Plan Administrator shall have the duties with respect to both the Estates of Second Street Properties and Berkeley Properties as identified in this Plan, and described in more detail below.

The Plan Administrator may resign upon not less than thirty (30) calendar days' prior written notice to the Post-Confirmation Committee, provided that no such resignation shall be effective until the earlier of (i) the expiration of the thirty (30) calendar day notice period of the resignation, or (ii) the date the Plan Administrator receives the Post-Confirmation Committee's written acknowledgement of the resignation.

The Plan Administrator may be removed by the Post-Confirmation Committee in its sole and absolute discretion for any or no reason, which removal shall become effective upon the delivery to the removed Plan Administrator of a written notice of removal by the Post-Confirmation Committee.

Unless the Plan Administrator resigns, is removed, or otherwise is unable to continue, the Plan Administrator's term shall expire upon payment in full of all Holders of Class 5 and Class 6 Claims.

2.       <u>Powers and Duties of the Plan Administrator.</u>

The Plan Administrator shall administer the Reorganized Debtors' Estates, and the Estate Assets, and make distributions from the proceeds of the Estate Assets in accordance with the Plan, subject to the oversight of the Post-Confirmation Committee where specifically provided for herein. Subject to oversight by the Post-Confirmation Committee as to certain material transactions and other matters where specified herein, including matters described under Section VIII.D.8 the Plan Administrator shall be authorized, empowered and directed to take all actions on behalf of the Debtors necessary or desirable to comply with the Plan and fulfill the duties and obligations arising hereunder including, without limitation, to:

a)       Object to the allowance of Claims;

b)       Open, maintain and administer bank accounts;

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 32 of 61

c)     Engage employees and professional persons as necessary or desirable to assist in carrying out the provisions of and purposes underlying the Plan;

d)     Incur and pay reasonable fees, costs, and expenses in connection with administering the Estates and implementing the terms of the Plan, including the reasonable fees, costs and expenses of retained professionals and including the reasonable expenses of the members of the Post-Confirmation Committee, in accordance with the provisions of the Plan;

e)     Expend the Estate Assets as necessary to maintain the value of the Estate Assets during the Plan Administrator's term;

f)     Pay the reasonable and necessary expenses incurred by the Post-Confirmation Committee;

g)     Investigate, analyze, commence, prosecute, litigate, compromise and otherwise administer the Causes of Action, and take all other necessary and appropriate steps to collect, recover, settle, liquidate or otherwise reduce the Estate Assets to Cash;

h)     Approve compromises of the Causes of Action and all Claims and execute all necessary and appropriate documents to effectuate such settlements, without notice to any party and without further order of the Bankruptcy Court;

i)     Administer, sell, liquidate, encumber, or otherwise dispose of the Estate Assets in accordance with the terms of the Plan, including without limitation the sale or refinancing of the Berkeley Real Property;

j)     Represent the Reorganized Debtors before the Bankruptcy Court and other courts of competent jurisdiction, if necessary, with respect to matters regarding the administration of the Reorganized Debtors;

k)     Comply with any applicable orders of the Bankruptcy Court and any other court of competent jurisdiction, and all applicable laws and regulations, concerning the matters set forth herein;

l)     Maintain the Reorganized Debtors' books and records;

m)     Make all distributions to the Holders of Allowed Claims provided for, or contemplated by, the Plan;

SMRH:434670320.11
434670320.11
JOINT CHAPTER 11 PLAN OF
REORGANIZATION
Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 33 of 61

n)  Establish the Disputed Claims Reserve for each Estate;

o)  Establish the Administrative Reserve for each Estate;

p)  Make all tax withholdings, file tax information returns, make tax elections by and on behalf of the Reorganized Debtors and file tax returns for the Reorganized Debtors (including paying for the cost of preparation of all tax returns for the Reorganized Debtors).  To the extent that one or more of the Reorganized Debtors file tax returns on a consolidated basis with any Class 7 Interest Holder, the Reorganized Debtors shall work and cooperate in good faith to make all tax withholdings and file any tax returns including any obligation for payment;

q)  Pay any taxes imposed on the Reorganized Debtors or incurred or otherwise attributable to the Reorganized Debtors;

r)  Carry insurance coverage if the Plan Administrator deems such insurance necessary and appropriate in his sole and absolute discretion unless otherwise provided by this Plan;

s)  Exercise such other powers as may be vested in the Plan Administrator pursuant to the Plan, the Confirmation Order, or other Final Orders of the Bankruptcy Court;

t)  Execute any documents, instruments, contracts or agreements necessary or desirable to carry out the powers and duties of the Reorganized Debtors;

u)  Provide to the Post-Confirmation Committee and Class 7 Interest Holders such reports on the progress of the Plan as may be reasonably requested by the Post-Confirmation Committee or Class 7 Interest Holders, and file the reports on the progress of the Plan as provided in Section VIII.D.7 of this Plan; and

v)  Act as the authorized representative of the Reorganized Debtors and the Estates for all purposes consistent with the Plan.

3.  <u>Fees and Expenses</u>

Subject to and in accordance with the provisions of the Plan, the Confirmation Order, and any other Final Order of the Bankruptcy Court, the Plan Administrator shall be entitled to receive reasonable compensation for services rendered on behalf of the Debtors and reimbursement of reasonable and necessary expenses.  The compensation of the Plan Administrator shall be

SMRH:434670320.11

JOINT CHAPTER 11 PLAN OF REORGANIZATION

disclosed in a filing with the Bankruptcy Court. Compensation of the Plan Administration and other costs and expenses of administration of the Debtors, including, without limitation, the fees and expenses of retained counsel, accountants or other professionals, shall be paid out of the Estate Assets, specifically the Administrative Reserves.

The Plan Administrator shall not be required to file a fee application or otherwise seek approval of the Bankruptcy Court to receive compensation, including compensation for counsel for the Plan Administrator and other retained professionals, but such compensation shall be subject to the oversight of the Post-Confirmation Committee as follows: The fees, costs and expenses of the Plan Administrator, counsel for the Post-Confirmation Trustee and any other retained professionals, may be paid out of the Estate Assets not earlier than (a) ten (10) Business Days after written notice of the proposed action and service of the relevant invoices and/or other relevant documentation on the Post-Confirmation Committee and a majority of the Post-Confirmation Committee has not objected to such action in writing, or (b) in the event of objection by a majority of the Post-Confirmation Committee received by the Plan Administrator within such ten (10) day period, the date of approval by Final Order of the Bankruptcy Court.

4. Retention of Professionals

On or after the Effective Date, and subject to Section VIII.D.8, the Plan Administrator may retain such professionals (including, without limitation, attorneys and accountants) as may be deemed necessary or desirable by the Plan Administrator to assist in carrying out the provisions of and purposes underlying the Plan. The Plan Administrator may retain Professionals who represented parties in interest the Bankruptcy Case, including counsel retained by the Debtors or the Committee prior to the Effective Date. The Plan Administrator may retain such professionals without the need for Bankruptcy Court approval.

5. No Recourse to Estate Representatives

Notwithstanding that the Allowed amount of any particular Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which there is insufficient Cash in the relevant fund or reserve to provide a recovery equal to that received by other Holders of Allowed Claims in the relevant Class, no Claim Holder

SMRH:434670320.11
042115

JOINT CHAPTER 11 PLAN OF
REORGANIZATION

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 35 of
61

shall have recourse to the Debtors, the Debtors' Estates, the Plan Administrator, the Committee, the Post-Confirmation Committee, or any of their respective professionals, or their agents (including employees, officers and the like), successors or assigns, or the Holder of any other Claim, or any of their respective property. However, nothing in the Plan shall modify any right of a Holder of a Claim under section 502(c) of the Bankruptcy Code. Thus, the Bankruptcy Court's entry of an estimation order under Bankruptcy Code section 502(c) may limit the distribution to be made on Disputed Claims, regardless of the amount finally Allowed on account of such Disputed Claims.

6.      Indemnification of Plan Administrator

The Plan Administrator and his agents shall not be liable for actions taken or omitted in his or their capacity as the Plan Administrator, or on behalf of, the Plan Administrator, except those acts arising out of his or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of his or their actions or inactions in his or their capacity as Plan Administrator, or on behalf of, the Debtors, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts or breach of any duty imposed post-confirmation as officers, directors, or managers of the Debtors under applicable non-bankruptcy law. Any indemnification claim under this section shall be satisfied from the Estate Assets and any insurance coverages procured by the Plan Administrator on behalf of the Debtors. The Plan Administrator shall be entitled to rely, in good faith, on the advice of his retained professionals.

7.      Reporting Requirements

Within one hundred twenty (120) calendar days following the Effective Date, the Plan Administrator shall file a report with the Bankruptcy Court setting forth the status of implementation of the Plan, including the amount distributed to Holders of Allowed Claims on the Initial Distribution Date, a good faith valuation of the remaining Estate Assets, and amounts reserved for the Administrative Reserves and Disputed Claims Reserves. Further reports shall be

Case: 14-11045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 36 of
61

filed every one hundred twenty (120) calendar days setting forth the ongoing status of implementation of the Plan through the closing of the Bankruptcy Case.

8.     <u>Limitation of Powers</u>

a.     *Asset Disposition*

The Plan Administrator must obtain approval of the Post-Confirmation Committee concerning any sale or other disposition of any Estate Asset, or any release, modification or waiver of existing rights as to an asset of the Estates, if the asset at issue has a fair market value in excess of $50,000. The Post-Confirmation Committee shall be deemed to have approved any such sale or disposition if it fails to object thereto in a writing received by the Plan Administrator within ten (10) Business Days following written notification to the Post-Confirmation Committee by the Plan Administrator of the intended sale, disposition or other matter provided for in this subsection. For the avoidance of doubt, any proposed sale of the Berkeley Real Property shall require approval of the Post-Confirmation Committee under this Section.

b.     *Prosecution of Causes of Action*

The Plan Administrator must obtain approval of the Post-Confirmation Committee concerning the prosecution of any Causes of Action proposed by the Plan Administrator involving an amount in controversy in excess of $50,000. The Post-Confirmation Committee shall be deemed to have approved any such prosecution if it fails to object thereto in a writing received by the Plan Administrator within ten (10) Business Days following written notification to the Post-Confirmation Committee by the Plan Administrator of the intended prosecution.

c.     *Settlement and Compromise*

The Plan Administrator must obtain approval of the Post-Confirmation Committee concerning any compromise or settlement of Causes of Action proposed by the Plan Administrator involving Claims in excess of $50,000. The Post-Confirmation Committee shall be deemed to have approved any such compromise or settlement if it fails to object thereto in a writing received by the Plan Administrator within ten (10) Business Days following written notification to the Post-Confirmation Committee by the Plan Administrator of the intended compromise or settlement.

d.      *Retention of Professionals*

The Plan Administrator must obtain approval of the Post-Confirmation Committee concerning the retention by the Plan Administrator of professionals. The Post-Confirmation Committee shall be deemed to have approved any such retention if it fails to object thereto in a writing received by the Plan Administrator within ten (10) Business Days following written notification to the Post-Confirmation Committee by the Plan Administrator of the intended retention of the professional.

e.      *Approval by Post-Confirmation Committee*

Wherever the Plan provides for consultation with or approval or oversight by the Post-Confirmation Committee, the Plan Administrator shall provide the Post-Confirmation Committee with notice of the action(s) or inaction(s) the Plan Administrator proposes to take at least ten (10) Business Days in advance of any such proposed action; provided, however, that the Post-Confirmation Committee may waive the ten (10) day prior notice requirement by a vote of a majority of the members of the Post-Confirmation Committee.

Unless otherwise specifically stated in the Plan, the Plan Administrator shall not be required to obtain Bankruptcy Court approval with respect to any proposed action(s) or inaction(s) (a) authorized by the Plan, or (b) to which the Post-Confirmation Committee has approved. The Post-Confirmation Committee shall be deemed to have approved a proposed action or inaction if a majority of the Post-Confirmation Committee has not objected to such action or inaction within ten (10) Business Days of notice by the Plan Administrator. The Plan Administrator shall consult with, or obtain the prior approval of the Post-Confirmation Committee as expressly provided for in the Plan, and the Plan Administrator shall not act, or refrain from acting, without consultation with or obtaining prior approval of the Post-Confirmation Committee if such consultation or approval is required under the Plan.

The Plan Administrator shall not be empowered to seek review by the Bankruptcy Court or any other court of competent jurisdiction of the business judgment of the Post-Confirmation Committee exercised in discharging its oversight duties as set forth under the Plan; provided, however, the Plan Administrator shall be empowered, in his sole and absolute discretion, to seek

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 38 of
61

review by the Bankruptcy Court or other court of competent jurisdiction of any act taken or omitted by the Post-Confirmation Committee, its members in their capacity as such, its agents and professionals arising out of willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty or *ultra vires* acts.

Notwithstanding any provision herein to the contrary, the Plan Administrator and his agents and professionals may refuse to take any actions they determine, in their sole and absolute discretion, would violate their duties under this Plan.

With respect to any Cause of Action, Claim, transaction or other matter directly or indirectly involving any member of the Post-Confirmation Committee, such member(s) shall recuse himself or herself from any decision affecting such litigation, transaction or other matter. The Plan Administrator may seek recusal of any member of the Post-Confirmation Committee by agreement with a majority of the remaining members of the Post-Confirmation Committee.

f.      *Actions Affecting Interest Holders.*

The Plan Administrator must give at least thirty (30) Business Days' advance written notice to all Holders of Allowed Interests in Class 7 before doing any of the following:

(a)      Amend the bylaws or charter of Second Street Properties;

(b)      Dissolve Berkeley Properties;

(c)      Enter into any agreement to merge Second Street Properties with any other entity, including without limitation Berkeley Properties;

(d)      Sell, encumber or refinance the Berkeley Real Property; or

(e)      Change or revoke either of the Debtors' existing election to file income tax returns on a consolidated basis with Second Street Properties' majority shareholder, Tri-Pacific, Inc.  Nothing contained in the Plan shall limit or otherwise prevent Tri-Pacific, Inc. from any legal rights regarding its ability to make its own tax election including, but not limited to, discontinuing filing income tax returns on a consolidated basis with the Reorganized Debtors.

The Plan Administrator may not undertake any of the above actions unless either (a) a majority of the outstanding Interests in Second Street Properties approve the proposed action; or (b) the Bankruptcy Court approves the proposed action.  Failure of any Interest Holder to object to

any proposed action in the time provided in this subsection (f) will be deemed consent to the proposed action.

**E.    Post-Confirmation Committee**

      1.    <u>Role of Post-Confirmation Committee</u>

On the Effective Date, the Post-Confirmation Committee shall be established for the purpose of overseeing the Plan Administrator's implementation of the Plan, administration of the Estate Assets, and distributions on account of Allowed Claims under the Plan, as specifically provided for herein. Unless otherwise specified in this Plan, any vote to be taken by or approval given by the Post-Confirmation Committee shall require only a majority for approval.

      2.    <u>Powers and Duties</u>

The Post-Confirmation Committee will oversee certain decisions of the Plan Administrator and approve certain material transactions in connection with the administration of the Estate Assets, as specifically provided for herein.

The Post-Confirmation Committee shall meet and/or consult periodically with the Plan Administrator and keep itself apprised of the affairs of the Debtors.

In discharging their duties as members of the Post-Confirmation Committee, such members shall act in the best interests of creditors of the Debtors in the same manner as members of an official committee of creditors appointed pursuant to Bankruptcy Code section 1102 discharge their duties to the creditor constituents represented by such committee.

      3.    <u>Committee Members</u>

The Post-Confirmation Committee shall be comprised of no more than seven (7) members selected by the Committee from the present members of the Committee who are willing to serve on the Post-Confirmation Committee on and after the Effective Date.  The initial members of the Post-Confirmation Committee shall be disclosed in the Confirmation Hearing Notice.  In the event there is a voting deadlock on the matters that are subject to the Post-Confirmation Committee's consideration as provided herein, then to settle the deadlock a vote by the Plan Administrator shall be solicited and shall be determinative, except in situations involving a conflict of interest on the part of the Plan Administrator.

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 40 of
61

In the event of any change in the membership of the Post-Confirmation Committee, the Committee shall promptly provide written notice of such change to the Plan Administrator and all Holders of Interests in Class 7.

4.     Termination

The Post-Confirmation Committee will remain in existence until the completion of distributions to Holders of Allowed Class 5 and Class 6 Claims.

5.     Limitation on Liability and Exculpation

Neither the members of the Post-Confirmation Committee nor the representatives or agents of such members shall be liable for actions taken or omitted in their capacity as, or on behalf of, the Post-Confirmation Committee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Post-Confirmation Committee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts.  Any indemnification claim under this section shall be satisfied from the Estate Assets and any insurance coverages procured by the Plan Administrator on behalf of the Debtors.  The Post-Confirmation Committee shall be entitled to rely, in good faith, on the advice of its retained professionals.

6.     Fees and Expenses of Members

Subject to and in accordance with the provisions of the Plan, the Confirmation Order, and any other Final Order of the Bankruptcy Court, each member of the Post-Confirmation Committee shall be entitled to reimbursement of reasonable and necessary expenses incurred in carrying out their duties as members of the Post-Confirmation Committee, which shall be paid out of the Estate Assets, specifically the Administrative Reserves.

The members of the Post-Confirmation Committee shall not be required to file a fee application or otherwise seek approval of the Bankruptcy Court to receive such reimbursement.

7.    Retention and Payment of Professionals

On or after the Effective Date, the Post-Confirmation Committee may retain such professionals (including, without limitation, attorneys and accountants) as may be deemed necessary or desirable by the Post-Confirmation Committee to assist and advise the Post-Confirmation Committee for purposes of carrying out the Post-Confirmation Committee's oversight duties as specified under the Plan. The Post-Confirmation Committee may retain Professionals who represented parties in interest the Bankruptcy Case, including counsel retained by the Committee prior to the Effective Date.

The Post-Confirmation Committee shall not be required to file a fee application or otherwise seek approval of the Bankruptcy Court to receive compensation for the reasonable fees, costs and expenses of retained professionals.

**F.    Avoidance Actions and Other Causes of Action**

On the Effective Date, the Reorganized Debtors shall be vested with the right to pursue the Avoidance Actions, the Causes of Action, and any other causes of action, defenses, requests for subordination or recharacterization, or requests for any other equitable or legal relief that was or could have been asserted pre-petition by the Debtors against any party, with the exception of all claims released pursuant to the Plan and Confirmation Order.  The Plan Administrator on behalf of the Reorganized Debtors may pursue, settle or release all such actions in accordance with the best interest of and for the benefit of the holders of Allowed Claims and Interests, subject to the oversight of the Post-Confirmation Committee as provided in Section VIII.D.8 of this Plan..

**G.    Claim Objections and Estimation of Claims**

On and after the Effective Date, the Plan Administrator may file objections to Claims at any time prior to the Claim Objection Deadline; provided, however, that as to Administrative Expense Claims, the Plan Administrator, the Post-Confirmation Committee and other parties in interest may object within thirty (30) calendar days of their filing.  As to any Claims arising from the rejection of an executory contract or unexpired lease pursuant to Section VII of the Plan, the Plan Administrator may object within thirty (30) calendar days of the filing of any such Claims. As to Claims arising from the recovery of an avoidable transfer under chapter 5 of the Bankruptcy

SMRH:434670320.11

JOINT CHAPTER 11 PLAN OF REORGANIZATION

Code, the Plan Administrator may object within thirty (30) calendar days of the filing of any such Claims.

In addition to the Plan Administrator's standing to object to Claims above, any Holder of an Allowed Class 7 Interest in Second Street Properties may object to (x) the portion of any Claim in Class 5 or Class 6 comprised of interest at the Legal Rate, and (y) any Claim held by a member of the Post-Confirmation Committee, provided, however, that the objecting party shall bear all costs and expenses associated with any objection filed pursuant to this paragraph.

No distribution shall be made under the Plan with respect to all or any portion of a Disputed Claim until (a) that Claim becomes an Allowed Claim by agreement of the parties to any Claim dispute or by Final Order of the Bankruptcy Court; and (b) the Holder of the Allowed Claim delivers applicable tax information, including a FEIN or SSN, to the Plan Administrator. As soon as reasonably practicable after the Allowed Claim is established by agreement or Final Order and the Plan Administrator is in possession of all required tax information of the Holder of the Allowed Claim, the Plan Administrator shall pay to the Holder of such Allowed Claim in the manner and amount provided in the Plan pursuant to Section IV or Section VI, as the case may be, including any catch-up on prior distributions. Such distribution is to be paid from the Administrative Reserves or Disputed Claims Reserves, as appropriate. Pending resolution, the Holder of a Disputed Claim will not receive interest on its Claim.

From and after the Effective Date, and subject only to the approval of the Post-Confirmation Committee if required under Section VIII.D.8 of the Plan, the Plan Administrator shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims, including without limitation, any objections to Claims filed by the Debtors prior to the Effective Date. The Plan Administrator expressly reserves the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

In addition, the Plan Administrator may, at any time request that the Bankruptcy Court estimate, pursuant to section 502(c) of the Bankruptcy Code, any Claim that is contingent or unliquidated, regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain

SMRH:434670320.11

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 43 of
61

jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount of such estimation will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Administrative Expense and Priority Tax Claims may be estimated and thereafter resolved by any mechanism permitted under the Bankruptcy Code or the Plan.

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made.

**H.      Conflicts of Interest**

In the event that the Plan Administrator has a conflict of interest relating to the matters addressed in Section VIII.F and Section VIII.G herein, the Plan Administrator shall recuse himself from such matter. If the Plan Administrator does not voluntarily recuse himself as provided in this Section, the Post-Confirmation Committee may seek recusal of the Plan Administrator by a majority vote of the Post-Confirmation Committee. In the event of recusal of the Plan Administrator pursuant to this Section, the Post-Confirmation Committee shall be empowered to designate an additional Plan Administrator solely for purposes of the conflicted matter. The Post-Confirmation Committee may, in its sole and absolute discretion, appoint a member of the Post-Confirmation Committee to act as Plan Administrator for purposes of the conflicted matter. The Post-Confirmation Committee shall act with only its remaining members for purposes of the conflicted matter.

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 44 of
61

**I. Reserves**

    1.    Administrative Reserves

The Administrative Reserves, as defined herein, shall be used for the payment of Allowed Administrative Expense Claims in each Estate up to the Effective Date and for the expenses incurred by the Plan Administrator and Post-Confirmation Committee on and after the Effective Date, including, without limitation, for payment of fees and costs of professionals retained by the Plan Administrator and by the Post-Confirmation Committee, compensation of the Plan Administrator, and other fees and expenses incurred in the pursuit of the Causes of Action. The amount of the Administrative Reserves is to be determined by the Plan Administrator in his or her discretion, subject to the oversight of the Post-Confirmation Committee, with reference to the funding sources of the Plan, both present and future. Any amount of the Administrative Reserves that are not used for such purposes shall, as determined by the Plan Administrator, subject to oversight by the Post-Confirmation Committee as provided under Section VIII.D.8 of the Plan, be distributed to Holders of Allowed Class 5 and Class 6 Claims on a Pro Rata basis as provided for under the Plan. The Plan Administrator, subject to oversight by the Post-Confirmation Committee as provided under Section VIII.D.8 of the Plan, may determine that the Administrative Reserves are not adequate for continued administration of the Debtors' Estates after the Effective Date and may reserve additional reasonable amounts.

    2.    Disputed Claims Reserves

The Disputed Claims Reserves, as defined herein, shall be used for the payment of all or part of a Disputed Claim in either Estate that becomes an Allowed Claim entitled to distribution under the Plan after the Initial Distribution Date. If any Disputed Claims are not Allowed in whole or in part, or are subordinated to Class 5 or Class 6 Claims in whole or in part, then the Plan Administrator may, subject to oversight by the Post-Confirmation Committee as provided under Section VIII.D.8 of the Plan, distribute all or a portion of the Disputed Claims Reserves to the Holders of Allowed Class 5 or Class 6 Claims on a Pro Rata basis as provided for under the Plan.

Notwithstanding any other provision of the Plan to the contrary, and for the sake of clarity, no distribution shall be made on account of any Claim or portion thereof that (a) has been satisfied

SMRH:434670320.11

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 45 of 61

prior to the Effective Date, or (b) is listed in the Schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely filed.

### 3. Tax Reserves

The Plan Administrator shall establish a reserve for any and all taxes and similar levies incurred on behalf of the Reorganized Debtors.

## J. Method of Distributions

### 1. Disbursing Agent

The Plan Administrator, or such other Disbursing Agent as the Plan Administrator may appoint, subject to oversight by the Post-Confirmation Committee as provided under Section VIII.D.8 of the Plan, shall make all distributions in accordance with the terms of the Plan. If any distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such distribution or performance of such act may be completed on the next Business Day, without interest, and shall be deemed to have been completed as of the required date.

### 2. Best Efforts to Make Distributions

Notwithstanding anything to the contrary in this Plan, under no circumstances shall the Reorganized Debtors receive or retain Cash in excess of a reasonable amount to meet Claims and contingent liabilities or to maintain the value of the Estate Assets during the term of the Plan Administrator's appointment. The Plan Administrator shall be required to distribute at least annually to Holders of Allowed Claims qualifying for distribution under the Plan, all Cash held by the Debtors; provided, however, that the Plan Administrator may retain such amounts reasonably necessary to maintain the value of the Estate Assets or meet Claims and contingent liabilities including to fund the Administrative Reserves, Tax Reserves, and the Disputed Claims Reserves; and provided, further, however, that the Plan Administrator shall not be obligated to make a distribution if it is reasonably expected that the cost of such distribution would exceed the amount of Cash on hand. The Plan Administrator shall make continuing efforts to administer the Estate Assets, make timely distributions, and shall not unduly prolong the duration of the Plan Administrator's appointment.

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 46 of 61

### 3. De Minimus Distributions

If a distribution to be made to a given Holder of an Allowed Claim on the Initial Distribution Date or any subsequent Periodic Distribution Date would be $100.00 or less in the aggregate, notwithstanding any contrary provision of the Plan, no such distribution will be made to such Holder unless a request therefore is made in writing to the Plan Administrator no later than thirty (30) calendar days after such distribution date.

### 4. No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall receive in respect of such Claim any distribution (in the aggregate) in excess of the Allowed amount of such Claim.

### 5. Delivery of Distributions; Distribution to Class Claim

Any distributions or notices which a Claim Holder, Interest Holder or other Person or Entity is or becomes entitled to receive pursuant to the Plan may be delivered by first class mail, postage prepaid, in an envelope addressed to that Claim Holder, Interest Holder or other Person or Entity, as the case may be, or an authorized agent of any of the foregoing at the address indicated on the latest notice of appearance or the latest Proof of Claim or other paper filed by any of the foregoing in the Bankruptcy Court. Absent any such filing, the address set forth in the relevant Schedules may be used. Distributions made in accordance with this provision shall be deemed delivered to such Claim Holder, Interest Holder or other Person or Entity regardless of whether such is actually received by that Claim Holder, Interest Holder or other Person or Entity.

As to any Allowed Claim comprised of a class action judgment or settlement, including without limitation Claim No. 1 filed by Roberto Rodriguez, the Plan Administrator or Disbursing Agent is authorized to make the distribution to the class action claim administrator approved by the non-bankruptcy court with jurisdiction over the underlying suit. In the case of Claim No. 1, such claim administrator is Gilardi & Co.

### 6. Record Date

On the Record Date, the claims register and other various transfer registers shall be closed, and there shall be no further changes in the record holders of any Claim or Interest. The Plan

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 47 of
61

Administrator, or such other Disbursing Agent as may be appointed under Section VIII.J.1 of the Plan, shall have no obligation to recognize any transfer of any Claim or Interest occurring after the Record Date. The Plan Administrator shall be entitled to recognize and deal for all purposes hereunder only with those Holders stated on the claims register or any other transfer register as of the close of business on the Record Date.

### 7. Disputed Distributions

If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any distribution, the Plan Administrator may, in lieu of making such distribution to such Holder, make such distribution into a segregated fund until the disposition thereof shall be determined by Bankruptcy Court order or by written agreement among the interested parties to such dispute.

### 8. Distributions of Cash

Any payment of Cash made by the Plan Administrator, or other Disbursing Agent, pursuant to the Plan may be made either by check drawn on a domestic bank or by wire transfer, at the discretion of the Plan Administrator or other Disbursing Agent.

### 9. Fractional Cents

Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment will reflect rounding of such fraction to the nearest whole cent (.5 will be rounded up).

### 10. Withholding and Reporting Requirements

Any foreign, federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from any distributions hereunder. All Holders of Claims shall be required to provide any information necessary to effect the withholding of such taxes, including provision of a Holder's FEIN or SSN to the Plan Administrator, and the Plan Administrator shall be authorized to withhold distribution on such Claims until the requisite information is received. If such information is not received within one hundred and twenty (120) calendar days after the relevant distribution date, the Unclaimed Distributions provisions of Section VIII.K shall apply. In such event, such Claim Holder will not be entitled to receive such

Case: 14-41045   Doc# 535   Filed: 04/30/15   Entered: 04/30/15 13:58:02   Page 48 of
61

distribution. All distributions under the Plan shall be net of the actual and reasonable costs of making such distributions and of any allocable fees or other charges relating thereto.

11. Setoff

Except as otherwise provided in the Plan, the Confirmation Order or in agreements previously approved by Final Order of the Bankruptcy Court, the Plan Administrator on behalf of the Debtors may, pursuant to applicable law, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made and before any distribution is made on account of such Claim), any and all of the Claims, rights and other Causes of Action of any nature that the Debtors or their Estates may hold against the Holder of such Claim.

Neither the failure to effect such a setoff, the Allowance of any Claim hereunder, any other action or omission of the Debtors or the Plan Administrator, nor any provision of the Plan shall constitute a waiver or release by the Debtors or the Plan Administrator of any such Claims, rights and other Causes of Action that the Debtors, the Debtors' Estates, or the Plan Administrator may possess against such Holder. To the extent the Plan Administrator fails to setoff against a Claim Holder and seeks to collect on a Claim from such Holder after a distribution to such Holder pursuant to the Plan, the Plan Administrator, if successful in asserting such Claim, shall be entitled to full recovery against such Holder. The Plan Administrator may seek periodic Bankruptcy Court approval for any such setoff or setoffs.

**K.    Unclaimed Distributions**

If any distribution remains unclaimed for a period of one hundred and twenty (120) calendar days after the relevant distribution date, or any distribution check remains uncashed for one hundred and twenty (120) calendar days after its issuance, by the Holder of an Allowed Claim entitled thereto, the distribution shall constitute an Unclaimed Distribution, any such uncashed check shall be void, and the Holder shall no longer be entitled to that distribution. Pursuant to Bankruptcy Code section 347(b), all right, title and interest in and to Unclaimed Distributions shall immediately vest in the Reorganized Debtors and be administered by the Plan Administrator pursuant to the terms of this Plan.

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 49 of
61

## L. Marketing and Sale of the Berkeley Real Estate

Following the reconveyance of the Berkeley Deed of Trust as provided in Section VI.D of this Plan, the Plan Administrator shall seek to market the Berkeley Real Property for sale for the highest and best value. The Plan Administrator shall consult with the Post-Confirmation Committee and with holders of Allowed Interests in Class 7 regarding the broker to be retained, the listing price, and the other details of the marketing of the Berkeley Real Property, which shall be reasonable and appropriate in light of the type and use of the property. However, all decisions regarding the marketing of the Berkeley Real Property shall be the ultimate responsibility of the Plan Administrator, who shall retain sole authority over the making of such decisions.

## IX.

## EFFECT OF CONFIRMATION OF PLAN

## A. Discharge

Except as otherwise provided for in the Plan or in the Confirmation Order, in accordance with section 1141(d) of the Bankruptcy Code, entry of the Confirmation Order acts as a discharge effective as of the Effective Date of all debts, Claims against, liens and encumbrances on, and Interests in the Debtors and the Estate Assets, which debts, Claims, liens, encumbrances, and Interests arose at any time before the entry of the Confirmation Order. The discharge of the Debtors shall be effective as to each such debt, Claim, lien, encumbrance, and Interest, regardless of whether a proof of Claim or Interest was filed or whether the Claim or Interest was Allowed or whether the holder of the Claim or Interest votes to accept the Plan. On the Effective Date, as to each and every discharged debt, Claim, lien, encumbrance, and Interest, any Holder of such debt, Claim, lien, encumbrance, or Interest shall be precluded from asserting such debt, Claim, lien, encumbrance, or Interest against the Reorganized Debtors, the Estate Assets, or any other property of the Debtors.

## B. Confirmation Injunction

On and after the Confirmation Date, except to enforce the terms and conditions of the Plan before the Bankruptcy Court or to implement the terms of the Plan applicable to the Local 164B Claim, all Persons or Entities who have held, hold or may hold any debt, Claim, lien, encumbrance

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 50 of
61

against or Interest in either of the Debtors are permanently enjoined from and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against either of the Reorganized Debtors, the Estate Assets, or either of the Debtors' property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or Entities (collectively, the "Protected Parties"); (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, against any of the Protected Parties of any judgment, award, decree or order; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against any of the Protected Parties; (d) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due to any of the Protected Parties; and (e) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan.

## C. Binding Effect

Except as otherwise expressly provided in the Plan, as of the Effective Date, the provisions of the Plan, the Confirmation Order, and any associated findings of fact or conclusions of law shall bind the Debtors, the Plan Administrator, and all Holders of Claims and Interests against the Debtors, regardless of whether such Holders are Impaired under the Plan or voted to accept the Plan.

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

## D. Exculpation

To the fullest extent permissible under 11 U.S.C. §§524(e), 1103(c), 1125(e), and where not in conflict with *Resorts International, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394 (9th Cir. 1995), on and after the Confirmation Date, the Debtors, the officers, directors, and/or managers of the Debtors, the Class 7 Interest Holders, the Committee, and their agents (together,

Case: 14-41045   Doc# 535   Filed: 04/30/15   Entered: 04/30/15 13:58:02   Page 51 of
61

the "Exculpated Parties") shall not have or incur any liability for, and are expressly exculpated and released from, any claims (including without limitation, any claims whether known or unknown, foreseen or unforeseen, then existing or thereafter existing in law, equity or otherwise), by any Person or Entity for any act or omission occurring on or prior to the Confirmation Date in connection with or arising out of action or inaction taken or omitted to be taken in connection with or related to the Bankruptcy Cases; the formulation, preparation, dissemination, implementation, confirmation or Substantial Consummation of the Plan or any other document created or entered into in connection with the Plan; or any other act taken or omitted to be taken in connection with or in contemplation of the filing of the Bankruptcy Cases, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts. Any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under this Plan or related to the Bankruptcy Cases. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of section 1125(e) of the Bankruptcy Code and principles of judicial immunity, where applicable. No provision of this Plan shall be deemed to act to or release any Claims, Causes of Action, or liabilities that the Plan Administrator or the Debtors' Estates may have against any Entity or Person for any act, omission, or failure to act that occurred prior to the Petition Date, nor shall any provision of this Plan be deemed to act to release any Cause of Action.

**E.      Preservation of Insurance**

This Plan shall not diminish or impair the enforceability of any insurance policy, right or claim that may cover Claims against the Debtors (including, without limitation, its officers or directors) or any other person or entity. Likewise, the Plan and Confirmation Order shall not impair any insurance carrier's rights, claims, defenses or disputes under any policy and shall not act to increase or extend any rights of the Debtors or the carriers. The insurance policies maintained by the Debtors shall be maintained as an expense of the Debtors until the later of (a) expiration of such policies or (b) such later dates as the Debtors may deem appropriate. Without limiting the foregoing, the Plan Administrator shall keep the current director's and

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 52 of
61

officer's liability policy, director's and officer's liability run off policy, fiduciary run off policy and commercial general liability policy in place, and shall maintain the extended reporting period currently in place under the existing "tail" coverage for the director's and officer's liability policy for a period of six years or Termination, whichever is earlier.

## X.

## EFFECTIVENESS OF THE PLAN

The following are conditions precedent to the Effective Date of the Plan:

       (a)      The Bankruptcy Court shall have entered the Confirmation Order which shall be in a form and substance satisfactory to the Proponents;

       (b)      No stay of the Confirmation Order shall then be effect at the time the other conditions set forth in this section are satisfied or waived; and

       (c)      All documents, instruments and agreements, in form and substance satisfactory to the Proponents, provided for under or necessary to implement the Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby.

The foregoing conditions may be waived, in whole or in part, by agreement of the Proponents, in writing, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of the Plan.

## XI.

## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case subsequent to the Confirmation Date to the fullest extent permitted by law, including, without limitation, for the following purposes:

       (a)      To determine any and all proceedings related to allowance of Claims or objections to the allowance of Claims, including objections to the classification of any Claim and including, on an appropriate motion pursuant to Bankruptcy Rule 3008, reconsidering Claims that have been Allowed or not Allowed prior to the Confirmation Date;

Case: 14-41045   Doc# 535   Filed: 04/30/15   Entered: 04/30/15 13:58:02   Page 53 of 61

(b)     To determine any and all fee applications of Professionals and any other fees and expenses authorized to be paid or reimbursed in accordance with the Bankruptcy Code or the Plan;

(c)     To determine any and all Causes of Action, whether pending before the Bankruptcy Court on the Confirmation Date or filed or instituted after the Confirmation Date, including, without limitation, proceedings under the Bankruptcy Code or other applicable law seeking to avoid and recover any transfer of an interest of the Debtors in property or of obligations incurred by the Debtors, or to exercise any rights pursuant to Bankruptcy Code sections 544-550;

(d)     To modify the Plan or the Disclosure Statement, or to remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court (including the Confirmation Order), the Plan, or the Disclosure Statement in such manner as may be necessary to carry out the purposes and effects of the Plan;

(e)     To determine disputes regarding title of the property claimed to be property of the Debtors;

(f)     To ensure that the Distributions to Holders of Allowed Claims are accomplished in accordance with the provisions of the Plan;

(g)     To enter such orders as may be necessary to consummate and effectuate the operative provisions of the Plan, including actions to enjoin enforcement of Claims inconsistent with the terms of the Plan;

(h)     To hear and determine disputes concerning any event of default or alleged event of default under the Plan, as well as disputes concerning remedies upon any event of default under the Plan;

(i)     To hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

(j)     To enter a final decree closing the Debtors' Bankruptcy Cases;

(k)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

(l)     To hear and determine such other matters as may arise in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

(m)     To hear and determine any dispute between the Plan Administrator and the Post-Confirmation Committee;

(n)     To issue temporary restraining orders and preliminary injunctions;

(o)     To hear and determinate any dispute over the amount of any contingent liability of either Estate; and

(p)     To hear and determine all disputes arising out of or in connection with the Berkeley Deed of Trust, and to issue any order implementing necessary or appropriate to implement the terms of the Berkeley Deed of Trust, except to the extent that such disputes concern a determination made by Local 164B under Sections 4201 through 4219 of ERISA, 29 U.S.C. §§ 1381-1399, which shall be resolved in accordance with the dispute resolution procedures of ERISA Section 4221, 29 U.S.C. § 1401.

## XII.

## MISCELLANEOUS PROVISIONS

### A.     Effectuating Documents and Further Transactions

Upon entry of the Confirmation Order, the Debtors, the Committee, the Plan Administrator, and the Post-Confirmation Committee shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and to take such actions as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

Each of the matters provided for under the Plan involving the corporate structure of the Reorganized Debtors or corporate action to be taken by or required of the Reorganized Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by the Plan Administrator, the Post-Confirmation Committee, Holders of Claims or Interests, directors or officers of the Reorganized Debtors or any other Persons or Entities.

### B.     Modification of Plan

The Proponents reserve the right, in accordance with the Bankruptcy Code and Bankruptcy Rules, to amend or modify the Plan at any time prior to entry of the Confirmation Order. After

entry of the Confirmation Order but prior to the Effective Date, the Proponents may seek an order of the Bankruptcy Court to amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. On and after the Effective Date, the Plan Administrator, subject to oversight by the Post-Confirmation Committee as provided under Section VIII.D.8 of the Plan, may seek an order of the Bankruptcy Court to amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. The Holder of an Allowed Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the modification does not materially and adversely change the treatment of the Claim of such Holder.

**C.      Withdrawal or Revocation of Plan**

The Proponents may withdraw or revoke the Plan at any time prior to the Confirmation Date. If the Proponents revoke or withdraw the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtors or any other Person or Entity or to prejudice in any manner the rights of the Debtors or any other Person or Entity in any further proceedings involving the Debtors.

**D.      Failure of Effective Date**

In the event the Effective Date does not occur, nothing in this Plan, shall be binding on the Debtors, the Debtors' Estates, or any other Person or Entity, or otherwise be of any force or effect.

**E.      Severability**

Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision(s) of this Plan.

**F.      Section 1146(c) Exemption**

Pursuant to Bankruptcy Code section 1146(a): (a) the issuance, transfer, or exchange of notes or equity securities under the Plan; (b) the creation of any mortgage, deed of trust, lien,

pledge, or other security interest; (c) the making or assignment of any contract, lease or sublease; or (d) the making or delivery of any deed or other instrument of transfer under, in the furtherance of, or in connection with, the Plan, including, without limitation, any merger agreements, agreements of consolidation, restructuring, disposition, liquidation, or dissolution, stock purchase agreements, stockholders agreements or stockholders rights agreements; deeds, bills of sale, or transfers of tangible property will not be subject to any stamp tax, or other similar tax or any tax held to be a stamp tax or other similar tax by applicable law.

**G.     Exemption from Securities Laws**

The issuance of securities under the Plan satisfies the requirements of Bankruptcy Code section 1145 and, therefore, any such issuance is exempt from registration.

**H.     Preservation of Causes of Action**

For avoidance of any doubt, any and all claims and other Causes of Action accruing to the Debtors or their Estates shall be preserved and retained by the Reorganized Debtors after the Confirmation Date, and the Plan Administrator on behalf of the Reorganized Debtors shall have the exclusive right and standing to enforce any such Causes of Action.

**I.     Nonconsensual ("Cramdown") Confirmation**

The Proponents request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to any Class that is deemed to reject the Plan and any Class the fails to accept the Plan.

**J.     Notices**

Except as otherwise provided in the Plan, any notice or other communication required or permitted under the Plan will be in writing and deemed to have been validly served, given, delivered, and received upon the earlier of: (a) the first Business Day after transmission by facsimile or hand delivery or deposit with an overnight express service or overnight mail delivery service or by electronic means with consent of the recipient; or (b) the third calendar day after deposit in the United States mail, with proper first class postage prepaid. Contact information relevant to providing notice to the Plan Administrator or the Post-Confirmation Committee will be disclosed in the Plan Supplement.

SMRH:434670320.11
032151

JOINT CHAPTER 11 PLAN OF
REORGANIZATION

Case: 14-41045   Doc# 535   Filed: 04/30/15   Entered: 04/30/15 13:58:02   Page 57 of
61

## K.    Post-Effective Date Notices

Except as otherwise provided in the Plan, upon and after the Effective Date, notices will be served only on the Office of the United States Trustee, the Plan Administrator, the Post-Confirmation Committee, and those Persons who file with the Bankruptcy Court and serve upon the Plan Administrator a request, which includes the Person's name, contact individual, address, telephone number and facsimile number, that such Person receive notice of post-Effective Date matters.  Persons who had previously filed with the Bankruptcy Court requests for special notice of the proceedings and other filings in the Bankruptcy Cases will not receive notice of post-Effective Date matters unless such Persons file a new request in accordance with this Section. Without limiting the foregoing, Holders of Allowed Interests in Class 7 who file and serve a request for notice under this paragraph shall be entitled to receive notice of all proposed actions by the Plan Administrator that the Post-Confirmation Committee is entitled to receive in Section VIII.D.8 of this Plan.

## L.    Plan Controls

To the extent the terms of the Plan are inconsistent with the Disclosure Statement or any document implementing the Plan, the terms of the Plan shall be controlling.

## M.    Applicable Law

The Plan is to be governed by and construed under the Bankruptcy Code and the laws of the State of California as they may be applicable.

## N.    Implementation Orders

The Bankruptcy Court may, at any time, make such orders and give such directions as appropriate for consummation of the Plan pursuant to Bankruptcy Code section 1142.

Dated:  April 29, 2015          SECOND STREET PROPERTIES, a California corporation

By     _Catherine Delsol_____

Catherine Delsol, Chief Executive Officer, Director, Responsible Individual

| 1 | Dated: April 29, 2015 | BERKELEY PROPERTIES, LLC, a California limited liability company |
| 2 | | |
| 3 | | By _____ *Catherine Delsol* |
| 4 | | Catherine Delsol, Chief Executive Officer, Director, Responsible Individual |
| 5 | | |
| 6 | Dated: April __, 2015 | OFFICIAL COMMITTEE OF UNSECURED CREDITORS |
| 7 | | |
| 8 | | By _____ |
| 9 | | Dawn White, its Chair |

SUBMITTED BY:

Dated: April __, 2015

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____ */s/ Michael M. Lauter*
MICHAEL M. LAUTER

Attorneys for the
Official Committee of Unsecured Creditors

Dated: April __, 2015

BINDER & MALTER, LLP

By _____ */s/ Julie Rome-Banks*
JULIE ROME-BANKS

Attorneys for the Debtors and Debtors-in-Possession,
SECOND STREET PROPERTIES and BERKELEY
PROPERTIES, LLC

| | |
|---|---|
| 1 | Dated: April __, 2015 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | Dated: April 28 2015 |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | Dated: April __, 2015 |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Dated: April __, 2015

BERKELEY PROPERTIES, LLC, a California limited liability company

By _____
Catherine Delsol, Chief Executive Officer, Director, Responsible Individual

Dated: April 28 2015

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By _____
Dawn White, its Chair

SUBMITTED BY:

Dated: April __, 2015

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
/s/ Michael M. Lauter
MICHAEL M. LAUTER

Attorneys for the
Official Committee of Unsecured Creditors

Dated: April __, 2015

BINDER & MALTER, LLP

By _____
/s/ Julie Rome-Banks
JULIE ROME-BANKS

Attorneys for the Debtors and Debtors-in-Possession,
SECOND STREET PROPERTIES and BERKELEY
PROPERTIES, LLC

Case: 14-41045   Doc# 535   Filed: 04/30/15   Entered: 04/30/15 13:58:02   Page 60 of
61

Dated: April 30, 2015

BERKELEY PROPERTIES, LLC, a California limited liability company

By _____
Catherine Delsol, Chief Executive Officer, Director, Responsible Individual

Dated: April 30, 2015

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By _____
Dawn White, its Chair

SUBMITTED BY:

Dated: April 30, 2015

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____*/s/ Michael M. Lauter*_____
MICHAEL M. LAUTER

Attorneys for the
Official Committee of Unsecured Creditors

Dated: April 30, 2015

BINDER & MALTER, LLP

By _____*/s/ Julie Rome-Banks*_____
JULIE ROME-BANKS

Attorneys for the Debtors and Debtors-in-Possession, SECOND STREET PROPERTIES and BERKELEY PROPERTIES, LLC

Case: 14-41045    Doc# 535    Filed: 04/30/15    Entered: 04/30/15 13:58:02    Page 61 of 61